UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DAVID WETCH, | CIV: 17-5033 |
| Plaintiff, | |
| vs. | COMPLAINT |
| CRUM & FORSTER COMMERCIAL INS.; and | |
| NORTH RIVER INSURANCE COMPANY, and | FILED<br>APR 2 8 2017 |
| UNITED STATES FIRE INSURANCE COMPANY | |
| Defendants. | |

Comes now the Plaintiff, David Wetch, by and through his attorneys of record, and for his Complaint and cause of action against the above-name Defendants, states and alleges as follows:

## INTRODUCTION

David Wetch was injured at work in 1991. He suffered a significant injury to his spinal cord. At that time, the Defendants delayed payment for medical care. Wetch petitioned for his workers' compensation benefits before the South Dakota Department of Labor, and sued in bad faith in the Federal Court. Ultimately, these claims were resolved and Defendants agreed to pay for future medical care.

Years later, Defendants decided they were not going to honor their agreement and denied payment for benefits, unless Wetch paid for his medical care first. Defendants held Wetch's medical care hostage and only agreed to pay 50%, if at all. The prior agreement was never

1

stayed or altered. Defendants had no basis for their denials. They were 100% responsible for the care and treatment.

Wetch again brought these issues to the Department of Labor, which ordered Defendants to provide medical care, based on the earlier agreement and order. The Department of Labor entered repeated orders to provide care after Defendants ignored prior orders. Defendants were held in contempt by the Seventh Judicial Circuit Court of South Dakota for failing to provide medical care and treatment to Plaintiff. Defendants continue to deny and delay Wetch's care.

Plaintiff brings claims for a second time to the Federal Court and seeks punitive damages for these extreme and outrageous actions.

## **PARTIES**

1. Plaintiff David Wetch ("Wetch") is a resident of Rapid City, South Dakota.
2. Defendant Crum & Forster Commercial Insurance is domiciled in the State of Delaware and doing business in the State of South Dakota.
3. The name "Crum & Forster" is a trademark owned by Defendant United States Fire Insurance Company.
4. Defendant United States Fire Insurance Company is domiciled in the State of Delaware and doing business in the State of South Dakota.
5. Defendant United States Fire Insurance Company is the parent-company of Crum & Forster Commercial Insurance.
6. Defendant North River Insurance Company is domiciled in the State of New Jersey and doing business in the State of South Dakota.
7. The circumstances which are the subject matter of this Complaint occurred in the State of South Dakota, and the amount in controversy exceeds $75,000, exclusive of costs and

interest.

8. Jurisdiction is proper based upon diversity of citizenship pursuant to 28 U.S.C.§ 1332.

9. At all times material herein, Wetch was employed by Midcontinent Media, Inc. ("Employer").

10. At all times material herein, Defendants were the workers' compensation insurer for Employer.

11. At all times material herein, Defendants had a duty under South Dakota law to ensure and provide workers' compensation benefits to injured employees and to ensure these benefits are timely provided.

## FACTS

12. On July 30, 1991, Wetch was the employee of Employer and suffered a work injury to his spinal cord.

13. Wetch's spinal cord was permanently damaged as a result of the work injury.

14. Employer was insured under the Worker's Compensation Laws of the State of South Dakota at the time of the July 1991 injury.

15. Defendants were Employer's workers' compensation insurer at the time of Wetch's 1991 work injury.

16. In September 1992, Wetch sued Defendants North River Insurance Company and Crum & Forster Commercial Insurance for the bad faith failure to pay for medical care and treatment for his work injury.

17. The parties resolved their legal disputes at that time by various agreements.

18. Employer, Defendants, and Wetch entered into a Stipulated Agreement as to Compensation for Permanent and Total Disability ("Agreement"). *See* Attachment A (Stipulated Agreement

as to Compensation for Permanent and Total Disability, dated November 8, 1994).

19. The Agreement was approved by the Department of Labor on November 8, 1994. *Id.*

20. Because the Agreement was approved by the Department of labor, it has the same force and effect as an adjudicated Order of workers' compensation benefits. SDCL § 62-7-5.

21. In the Agreement of November 8, 1994, Defendants agreed to provide medical care for Mr. Wetch's spinal cord injury under SDCL § 62-4-1.  Attachment A, ¶9.

22. Under the law and the Agreement, if Wetch's injury was "a contributing factor" to his medical care and treatment, then Defendants are required to pay for it in full. SDCL § 62-4-1.

23. Wetch continued to receive medical care and treatment for his spinal cord injury.

24. On August 1, 2011, Wetch's treating physician wrote Defendants stating that Wetch's chronic neck pain and paralysis resulting from the work injury continued. Attachment B (Letter of Dr. Michael C. Goodhope to Crum-Forster, dated August 1, 2011).

25. Wetch's physician explained that to control Wetch's pain, resulting from the work injury, he needed "Soma, lidocaine cream and aspirin, physical therapy, a walker, car hand controls and a pull bar, TENS unit and a lift chair." *Id.*

26. Defendants asked Wetch to see a doctor of Defendants' choosing.

27. Wetch saw Defendants' doctor, Dr. Randal Wojciehoski.

28. Dr. Wojciehoski reported that Wetch's work injury was 50% responsible for his medical needs.

29. Dr. Wojciehoski attributed the remaining 50% to Wetch's pre-existing cerebral palsy.

30. Wetch's cerebral palsy was known by Defendants when they accepted the Agreement to provide medical care.

31. Dr. Wojciehoski's opinion established that Wetch's work injury was "a contributing factor" to his medical needs.

32. Defendants were required to pay for Wetch's medical bills, in full, because his work injury was "a contributing factor" to his medical needs.

33. Dr. Wojciehoski's opinions provided no basis to deny, delay, or reduce Defendants' obligation to provide medical care.

34. On April 5, 2012, Defendants denied responsibility for paying the full amount of Wetch's medical care. Attachment C (Defendants' Letter to Wetch, dated April 5, 2012, excluding attachment).

35. The denial letter of April 5, 2012 identifies Crum & Forster, United States Fire Insurance Company, and The North River Insurance Company in the letterhead. *Id.*

36. Defendants chose to reduce or alter their obligation to Wetch.

37. Defendants proposed that Wetch pay for his medical care, in full, produce a receipt, and then they would "reimburse" him fifty percent of what he had paid. *Id.* ("As you obtain the items above please send the cash receipt to me so I can reimburse you the fifty percent we owe.")

38. Defendants knew, based on past experience and medical records, that Wetch experiences severe emotional distress and damage when he does not receive medical care.

39. Defendants knew their handling of workers' compensation benefits caused Wetch mental distress and their actions were a focus of his distress. Attachment D (Notes of Dr. John Bowar, M.D., dated March 30, 1993); Attachment E (Abbott Northwestern Hospital – Sister Kenney Institute Medical Notes, dated April 14, 1993, SSA 160).

40. Defendants knew Wetch had attempted suicide as a result of his depression, secondary to his work injury. Attachment F (Letter of Dr. Milt Williams, M.D. to Insurer, dated February 19,

1996) (DEF 000146) ("I definitely feel there was a causal relationship between Mr. Wetch's depression and suicide attempt and the neck injury he sustained while working on July 30, 1991…. He has felt increasingly dependent upon others for both physical and financial assistance which has led to feelings of guilt, hopelessness, helplessness, worthlessness and increasing depression that culminated in his recent suicide attempt.").

41. Defendants know when they deny or delay medical benefits, Wetch is forced to depend on others for physical and financial assistance.

42. Defendants know their denials and delays result in significant emotional distress to Wetch.

43. Defendants agreed Wetch is permanently and totally disabled.

44. Defendants knew Wetch's income is limited by his injury.

45. Defendants knew or should have known Wetch was unable to pay for medical care on his own.

46. Wetch depended on friends and family to help pay for medical care, when denied.

47. Defendants knew Wetch was receiving Medicare benefits.

48. Defendants knew Medicare would pay for some of benefits denied by Defendants.

49. For example, physical therapy costs were paid by Medicare.

50. On November 6, 2013, Mr. Wetch, through his power of attorney, Alanna Turnbaugh, wrote Defendants asking for reimbursements.  Attachment G (Letter of Turnbaugh, dated November 6, 2013, including attachments).

51. On December 3, 2013, Defendants reimbursed Mr. Wetch $361.99.  Attachment H.

52. On January 24, 2014, Mr. Wetch, through Ms. Turnbaugh, submitted receipts and prescriptions to Defendants, including Dr. Goodhope's prescriptions for exercise equipment, lift chair, portable hand controls, and a Life Assessment for Wetch's evaluation and

treatment recommendations.  Attachment I (Letter of Turnbaugh, dated January 24, 2014, including attachments).

53. On February 10, 2014, Defendants again denied their obligation to Wetch.  Attachment J (Letter of Defendants to Wetch, dated February 10, 2014).

54. Defendants ignored Dr. Goodhope's prescribed care, provided in the January 24, 2014 letter. *Id.*

55. On March 6, 2014, Mr. Wetch, through Ms. Turnbaugh, asked Defendants to reimburse the lift chair, paid by family, and included a receipt for the purchase, totaling $1,271.93. Attachment K (Letter of Turnbaugh to Defendants, dated March 6, 2014, including attachments).

56. On March 14, 2014, Defendants sent a check to Mr. Wetch in the amount of $635.97 (50% of the total cost of the lift chair).  Attachment L.

57. Defendants did not pay for Wetch's Soma prescriptions, until years later.

58. Pursuant to SDCL § 62-4-1 and the Agreement, Defendants were required to pay 100% of benefits prescribed and the remaining 50% of reimbursed medical bills.

59. On March 25, 2014, Wetch petitioned the Department of Labor.

60. Following the prescription of Dr. Goodhope, dated January 13, 2014, Wetch obtained a Life Assessment Evaluation from Nurse Linda Graham, R.N., M.A., C.L.C.P., Certified Nurse Life Care Planner.  Attachment M (Life Assessment Evaluation from Nurse Linda Graham, R.N., M.A., C.L.C.P., Certified Nurse Life Care Planner, dated July 8, 2015).

61. On August 17, 2015, Dr. Goodhope signed the Home Health Certification and Plan of Care, Form 485, reflecting the course of treatment discussed and summarized in the Graham

7

Report. Attachment N (Home Health Certification and Plan of Care, Form 485, signed by Dr. Goodhope, dated August 17, 2015).

62. Since at least November 6, 2015, Defendants have admitted that they are required to pay 100% of the costs of the lift chair, pull bars, soma, and walker. Attachment O, (Employer and Insurer's Response to Claimant's Motion for Partial Summary Judgment, dated November 6, 2015), p. 10. ("That being said, Employer and Insurer admit to the compensability of those expenses/treatments identified as being 50% work related by Dr. Wojciehoski during his June 20, 2012, IME. Employer and Insurer acknowledge that they are responsible for 100% of those expenses.").

63. After their admission of responsibility, Defendants still did not pay these benefits.

64. On January 28, 2016, the South Dakota Department of Labor and Regulation approved Dr. Goodhope's Home Health Certification and Plan of Care, Form 485, and ordered Defendants to provide 100% of the care and treatment approved by Wetch's physicians. Attachment P (South Dakota Department of Labor and Regulation, Letter Decision and Order, dated January 28, 2016), pp. 6-7.

65. The Department of Labor stated, "Employer and Insurer, in this matter have no basis to assert a 50% reduction of the expenses and treatment identified as related to the work injury and are responsible for 100% of those expenses." *Id.* p. 6.

66. The Department of Labor found no basis for the Defendants' failure to provide any of the care prescribed by Wetch's physicians. *Id.*

67. The Department of Labor stated, "Prior to denying medical benefits, failing to pay medical bills, or not authorizing treatments, Employer and Insurer must prove a change of condition under SDCL § 62-7-33. Until such time, the settlement agreement signed by the parties and

approved by the Department on November 8, 1994, and the facts contained therein, are considered to be the Order of the Department." *Id.*

68. All of the medical expenses submitted by Wetch were approved and ordered by the Department of Labor. *Id.* pp. 5-6.

69. Defendants were never relieved of their obligation to provide benefits under the November 1994 Order and Agreement of the parties.

70. Defendants had an ongoing, affirmative duty to provide medical benefits.

71. Defendants breached this duty.

72. Defendants caused Wetch damages by not providing medical care and treatment.

73. Defendants unilaterally and knowingly reduced or terminated their obligations under the 1994 Order and Agreement of the parties.

74. Defendants' reduction and termination of benefits unreasonably delayed or denied treatment.

75. Defendants have no authority to approve or deny treatment approved by Wetch's physicians.

76. After receiving the Letter Decision and Order of January 28, 2016, Defendants did not reimburse the remaining 50% of the lift chair, pull bars, and walker.

77. After receiving the Letter Decision and Order of January 28, 2016, Defendants did not pay for Wetch's Soma medication.

78. After receiving the Letter Decision and Order of January 28, 2016, Defendants did not pay or provide the medical care and treatment prescribed by Wetch's physician.

79. On November 16, 2016, the South Dakota Department of Labor entered its Third Motion for Partial Summary Judgment Letter Decision and Order. Attachment Q (South Dakota Department of Labor and Regulation, Third Motion for Partial Summary Judgment Letter Decision and Order, dated November 16, 2016) ("November 16, 2016 Order").

80. In the November 16, 2016 Order, the Department of Labor relied on and accepted the stipulation/representation that Defendants will pay for Wetch's medical care. *Id.* ¶3.

81. In the November 16, 2016 Order, the Department of Labor noted that the insurer had not actually provided the care the Department ordered in January 2016. *Id.* ¶4.

82. The November 16, 2016 Order found that the Defendants admitted that they had not provided the treatment previously ordered. *Id.*

83. In paragraph 4 of the November 16, 2016 Order, the Department of Labor found:

> Employer and Insurer do not deny they have not provided the care the Department ordered in January. The Department ordered Employer and Insurer to provide a case manager, wheelchair, vehicle with hand controls, supervised living accommodations, and other home care services. Dr. Goodhope approved a care plan recommended by Linda Graham in July, 2015 (referred to as the "Form 485" plan) and none of the items or services recommended in that plan have been implemented. Nor have Employer and Insurer reimbursed Claimant for his approved expenses, such as physical therapy and hydrotherapy.
>
> Employer and Insurer argue Claimant's Petition should be dismissed because there is no argument about its responsibility, rendering the petition moot. They do not dispute, however, that none of the care associated with that has actually been provided or reimbursed since the Department ordered it ten months ago. The right Employer and Insurer have to reassess their responsibility under a 62-7-33 change of condition is strictly prospective; that right does not affect their obligation to provide whatever care Claimant's physicians have currently determined is appropriate, or to affirmatively prove it is not appropriate. They have not met this obligation…

84. The November 16, 2016 Order again required that the medical care and treatment prescribed by Wetch's physicians be paid or provided by Defendants.

85. As of today's date, Defendants still have not provided all of the medical care and treatment prescribed by Wetch's treating physicians and ordered by the South Dakota Department of Labor.

86. As recently as April 20, 2017, Defendants failure to provide a handicapped accessible van and/or provide for transportation for Wetch, led to the cancelation of a post-surgical medical appointment with his treating neurosurgeon.

87. On August 1, 2016, the Seventh Judicial Circuit Court of the State of South Dakota signed its Judgment on SDCL 62-7-31. Attachment R (Judgement on SDCL 62-7-31, dated August 1, 2016).

88. At a November 14, 2016, hearing on an Order to Show Cause for Contempt, the Seventh Judicial Circuit Court held Defendant Crum & Forster in contempt of the Judgment on SDCL 62-7-31, for failing to pay for the lift chair, pull bars, soma, and walker.

89. On December 29, 2016, the Seventh Judicial Circuit Court entered its Order of Contempt. Attachment S (Order of Contempt, dated December 29, 2016).

90. Defendants knew of the Seventh Judicial Circuit Court's Judgment and the Agreement. *Id.*, ¶7.

91. Defendants had the ability to comply with the Seventh Judicial Circuit Court's Judgment and the Agreement. *Id.*, ¶8.

92. Defendants were aware of these prescriptions and their obligation to pay for the lift chair, pull bars, soma, and walker. *Id.*, ¶10.

93. Defendants' reduction or alteration of 50% for these treatments, continuing failure to pay the remaining 50%, and continuing failure to pay for Soma was willful. *Id.*, ¶16.

94. Defendants' reduction or alteration of 50% of its responsibility for these treatments, continuing failure to pay the remaining 50%, and continuing failure to pay for Soma was unsupported and unreasonable. *Id.*

95. Defendants knew the reduction or alteration of 50% for these treatments, continuing failure to pay the remaining 50%, and continuing failure to pay for Soma was without a reasonable basis. *Id.*, ¶15.

96. Wetch is suffering physical damage, deterioration, and severe emotional distress as a result of Defendants' failure to provide timely medical care as ordered by Wetch's treating physician.

97. Defendants' actions are reckless and/or intentional, causing further emotional and physical harm.

98. Defendants' denials and delays of medical treatment illustrate a willful, wanton, or reckless disregard of Wetch's rights.

99. Defendants' denials and delays of medical treatment, and purposeful avoidance of the law, illustrate malice toward Wetch and his rights.

## COUNT I – BAD FAITH

100. Plaintiff realleges paragraphs 1 through 99 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

101. Defendants unreasonably denied and delayed providing medical worker's compensation benefits to Wetch, as required by law and contract.

102. Defendants knew or should have known that it had no reasonable basis to deny Wetch's worker's compensation benefits.

103. Defendants failed to perform a reasonable and good faith investigation before denying or unreasonably delaying Wetch's workers' compensation benefits.

104. Defendants knew or should have known that there was no reasonable basis to deny Wetch's medical workers' compensation benefits, or were recklessly indifferent to, or

recklessly disregarded, the facts and proofs submitted or known to it when it withheld, denied, or delayed such workers' compensation benefits.

105. Defendants failed to give equal consideration to the interests of Wetch.

106. Defendants have otherwise breached its duty of good faith and fair dealing with Wetch.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107. Plaintiff realleges paragraphs 1 through 106 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

108. Defendants' actions are extreme and outrageous.

109. Defendants know their failure to provide medical care and treatment results in severe emotional distress to Wetch.

110. Defendants intend to cause Wetch severe emotional distress by denying or delaying his medical care and treatment.

111. Defendants recklessly disregarded the rights of Wetch to his prescribed medical treatment.

112. Defendants' failure to provide medical care and treatment results in further injury to Wetch.

113. Defendants' intentional failure to obey lawful orders illustrates their intent to disregard their obligations to Wetch without regard to consequences.

114. Wetch continues to suffer extreme disability emotional responses to Defendants' conduct, including recent suicidal ideation.

115. Wetch continues to suffer physical damages as a result of delayed medical treatment.

## COUNT III – MEDICARE SECONDARY PAYER ACT PRIVATE CAUSE OF ACTION

116. Plaintiff realleges paragraphs 1 through 115 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

117. 42 U.S.C. 1395y(b)(3)(A) provides a private cause of action for the recovery of payments made by Medicare, which should have been made by Defendants.

118. Defendants are barred from relitigating the issues resolved by the South Dakota Department of Labor under this cause of action.

119. Defendants are responsible for double the amount of payments incorrectly made by Medicare, resulting from Defendants' failure to pay workers' compensation benefits.

## COUNT III – CONVERSION

120. Plaintiff realleges paragraphs 1 through 119 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

121. Defendants exerted unauthorized control or dominion over the property of Wetch, by the above described actions, in a way that rejected and denied Wetch's right to these funds, or in a manner inconsistent with Wetch's rights.

122. Wetch has an interest in the funds required to pay for his medical care and treatment.

123. Wetch's interest in the funds is superior to Defendants'.

124. Defendants exerted dominion or control over, or seriously interfered with, Wetch's interest in these funds.

125. Defendants converted the reasonable value of the medical care and services ordered by the treating physician, including the labor of his family and friends, and other

expenses Wetch has and will incur in unwarranted legal proceedings to recover or force Defendants to provide his wrongfully withheld property.

## COUNT IV – EXEMPLARY AND PUNITIVE DAMAGES

126. Plaintiff realleges paragraphs 1 through 125 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

127. As a result of Defendants' actions, Wetch has been harmed as follows:

   A. He experienced emotional upset, frustration, embarrassment, and annoyance;

   B. He endured delay and obstruction of his medical care and loss of use of his benefits, causing him unnecessary pain and suffering.

128. Defendants acted with malice, oppression, and deliberate and reckless disregard for the rights of Wetch.

129. Defendants acted in a willful and wanton disregard of the legal duties imposed on them and the rights of Wetch.

130. Wetch is entitled to an award of exemplary and punitive damages as the only way to deter workers' compensation insurers from continuing to employ the same methods against other injured employees.

**WHEREFORE,** Plaintiff requests an award of compensatory damages, including both economic and non-economic losses, exemplary and punitive damages, prejudgment interest as allowed by law, attorney's fees and costs, and such other further relief as the court or jury deems appropriate, necessary, just, and equitable under the circumstances.

Dated this 28th day of April, 2017.

BY: _____
G. Verne Goodsell

David S. Barari  
GOODSELL QUINN, LLP  
246 Founders Park Dr., Suite 201  
P.O. Box 9249  
Rapid City, SD 57709-9249  
Tel: (605) 343-3000  
Fax: (605) 343-3251  

and  

Wm. Jason Groves  
GROVES LAW OFFICE  
P.O. Box 8417  
Rapid City, SD 57709-8417  
Tel: (605) 341-4747  
Fax: (605) 341-1115  


Attorneys for Plaintiff  

TRIAL BY JURY IS HEREBY DEMANDED  

_____  
David S. Barari