UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAVID WETCH,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CRUM & FORSTER COMMERCIAL INS., NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, CRUM & FORSTER HOLDINGS CORP.,<br><br>                    Defendants. | 5:17-CV-05033-JLV<br><br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is pending before the court on plaintiff David Wetch's amended complaint alleging claims arising out of benefits he alleges defendants owe him under a policy of worker's compensation insurance issued to Mr. Wetch's then-employer, Midcontinent Media, Inc. ("Midcontinent"), for a work-related injury that occurred in July, 1991. See Docket No. 44. Jurisdiction is premised on diverse citizenship between Mr. Wetch and the defendants and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. Now pending is a motion for partial summary judgment by Mr. Wetch. See Docket No. 59. Defendants oppose the motion. See Docket No. 97. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B), the October 16, 2014, standing order, and

the order of referral of the Honorable Jeffrey L. Viken, Chief United States

District Judge dated November 1, 2018.  See Docket No. 75.

## FACTS

Mr. Wetch filed a ten-page statement of undisputed material facts.  See

Docket No. 62.  Defendants filed a 74-page response thereto.  See Docket

No. 98.  The court finds many of defendants' "disputes" of plaintiff's factual

assertions to be specious and disingenuous.  For example, plaintiff's first

statement of fact is the straightforward assertion that Mr. Wetch suffered a

work injury to his spinal cord on July 30, 1991.  See Docket No. 62 at p. 1, ¶1.

Defendants dispute this as incomplete and insert an entire paragraph

explaining how Mr. Wetch was injured, how long he continued to work, his

activities, his diagnosis, his course of treatment, and when defendants first

became aware of his injury.  See Docket No. 98 at p. 2, ¶1.  The extraneous

information is neither helpful nor relevant in view of the fact defendants later

stipulated that Mr. Wetch was permanently and totally disabled and was

entitled to worker's compensation benefits for this injury.

This court will not belabor this opinion by pointing out over and over

which extraneous facts asserted by defendants are irrelevant.  Instead, the

court sets forth the following statement of facts which are statements asserted

by plaintiff and admitted by defendants, either in a straightforward admission

or indirectly.  Defendants are entitled to provide additional facts for context.

Where the court finds such additional facts to be relevant, they are included

herein.  True disputes of fact are noted.

## A.    Events Leading to and Including the 1994 Stipulation

Mr. Wetch suffered a work-related injury to his spinal cord July 30, 1991.  His spinal cord was permanently damaged as a result of this work-related injury.  Mr. Wetch had a pre-existing cerebral palsy disability which resulted in a 20% whole person disability.  The work injury, also permanent, added an additional 20% whole person disability, with the result Mr. Wetch was 40% disabled.  Half of his whole person disability was attributable to his work injury.

On November 8, 1994, Mr. Wetch, his employer, and defendants entered into a stipulated agreement, stipulating that Mr. Wetch was permanently and totally disabled and that defendants would pay workers compensation benefits on account of Mr. Wetch's work injury.  See Docket No. 44-1.  The parties agreed that instead of periodic payments for 45.1 years (Mr. Wetch's additional life expectancy at the time of the agreement as per mortality tables), defendants would pay Mr. Wetch a lump sum total of his future benefits, reduced to present value.  Id.  The parties' stipulation was approved by the South Dakota Department of Labor ("DOL") on November 8, 1994.  Id.

The money paid under this stipulation represented lost wages/earnings and diminishment in employability due to Mr. Wetch's work injury as provided for under SDCL §§ 62-4-3, -5, -5.1, -6, -7, and Cozine v. Midwest Coast Transport, Inc., 454 N.W.2d 548 (S.D. 1990).  See Docket No. 44-1 at p. 2.  The agreement did not provide for payment of medical expenses, but instead provided Mr. Wetch's entitlement to pursue payment of such expenses from

defendants in the future was not impaired by the stipulation.  Id. at p. 3, ¶ 9 (referencing SDCL § 62-4-1, providing for payment of medical and hospital expenses for work-related injuries) (p. 2 of the agreement).[1]  Pursuant to SDCL § 62-7-31, the South Dakota Circuit Court for the Seventh Judicial Circuit entered judgment on the stipulated agreement 22 years later on August 1, 2016.[2]  See Docket No. 44-18 at p.2.

## B.    Events Between 1994 and March 25, 2014

### 1.    Defendants' Closing of Mr. Wetch's Claim

Although the stipulated agreement did not specifically address Mr. Wetch's entitlement to payment for medical expenses, there is evidence in the record that between November 8, 1994, and March 9, 2011, Mr. Wetch submitted to defendants for payment a number of medical expenses which defendants duly paid.  Defendants' expert asserts defendants made over 200 discrete medical expense payments on Mr. Wetch's behalf between 1991 and

---

[1] Each of plaintiff's exhibits is prefaced by a cover sheet, blank but for the identification of the exhibit letter.  See, e.g. Docket No. 44-1 at p.1 ("Attachment A").  This has the effect of making the first page of the actual exhibit page 2 in the court's docket numbering system, a confusing circumstance.  Throughout this opinion, the court cites to the page number of the court's docket.  Occasionally, where it seems important to do so, the court has inserted parenthetically the page number of the actual document.

[2] Section 62-7-31 allows a party to present a stipulated agreement to a circuit court for issuance of a judgment if no party has appealed from or petitioned for review of the stipulated agreement and the time for appealing or petitioning for review has expired.  See SDCL § 62-7-31.  The statute also applies to any portion of an order or decision of the DOL.  Id.  The judgment thus entered has the same force and effect as any other judgment issued by a circuit court except that no appeal can be taken from the judgment as to questions of fact. Id.

2018 totaling $664,575.65.  See Docket No. 99-1 at p. 5.  Defendants assert on March 9, 2011, they closed Mr. Wetch's claim because Mr. Wetch had not submitted any medical expenses since October, 2006.  See Docket No. 98 at p. 3, ¶2; Docket No. 100 at pp. 2-3.

### 2.    Dr. Goodhope's August, 2011, Opinion

In response to defendants closing Mr. Wetch's file, Mr. Wetch's physician, Dr. Michael Goodhope, submitted a letter to defendants August 1, 2011, asking that they reopen Mr. Wetch's file.  See Docket No. 44-2.  Dr. Goodhope explained Mr. Wetch continued to have chronic neck pain and paralysis on his right side following his work injury (described as a fractured neck at C6-C7).  Id.  Dr. Goodhope explained Mr. Wetch needed pain medications including Soma,[3] lidocaine cream, and aspirin, as well as physical therapy, a walker, car hand controls, a pull bar, a TENS unit and a lift chair to address this pain and paralysis.  Id.

### 3.    Dr. Wojciehoski's Independent Medical Exam (IME)

Defendants requested Mr. Wetch submit to an IME.  An IME was conducted by Dr. Randal Wojciehoski on January 20, 2012.  See Docket No. 100-7.  Dr. Wojciehoski opined that Mr. Wetch did need Soma, a walker, a pull bar, and a lift chair, and that each of these items was necessitated 50% by his work injury and 50% by his pre-existing condition of cerebral palsy.  Id. at

---

[3] Soma (carisoprodol) is a muscle relaxer that is also a schedule IV narcotic as of 2012.  See https://www.webmd.com/drugs/2/drug-12153/soma-oral/details (last checked April 12, 2019); 21 C.F.R. § 1308.14.

pp. 6-7.  Dr. Wojciehoski opined Mr. Wetch did not need a TENS unit, hand controls, or physical therapy.  Id.

### 4.    Actions Between the Parties After the IME

Following receipt of Dr. Wojciehoski's opinion, defendants notified Mr. Wetch they would pay 50% of the cost of each of the four items found to be necessary and related to the work injury (Soma, a walker, a pull bar, and a lift chair).  See Docket No. 44-3.

Dr. Goodhope and Dr. Wojciehoski were unaware at the time they wrote their opinions that Mr. Wetch had fallen down the stairs in his apartment in April, 2010, striking his head and requiring emergency medical treatment.  See Docket No. 112-5, -6.  Mr. Wetch argues defendants knew or should have known of this event because they received Mr. Wetch's relevant medical records as of October 5, 2017 (i.e. after the date of filing of the instant bad faith complaint herein).  See Docket No. 111 at p. 22.  Mr. Wetch argues if defendants did not have the documents prior to October 5, 2017, it is defendants' own fault because they failed to request discovery from Mr. Wetch in DOL proceedings.

Defendants assert they never learned of this injury until Mr. Wetch filed the instant bad faith complaint and provided discovery in connection with this civil action.  This is borne out by Mr. Wetch's own description of events above.

Mr. Wetch obtained a walker on May 18, 2011, at a cost of $225.00.  See Docket No. 44-7 at p. 4.  Mr. Wetch purchased pull/grab bars and had them installed as of July 8, 2011, at a total cost of $498.97.  See Docket No. 44-7 at

p. 8.   Apparently, Mr. Wetch's sister and power of attorney Alanna Turnbaugh submitted receipts for reimbursement for these items to defendants sometime after July 8, 2011.  See Docket No. 44-7 at p.2.  When defendants did not tender to Mr. Wetch the 50% reimbursement for these items which defendants represented they would pay, Ms. Turnbaugh sent defendants the receipts again on November 6, 2013, and again asked defendants to reimburse Mr. Wetch for these items.  Id.   Defendants paid Mr. Wetch 50% of the cost of these items on December 3, 2013.  See Docket No. 44-8 at p. 2.

On January 24, 2014, Ms. Turnbaugh sent defendants billing statements for Mr. Wetch for 80 physical therapy sessions stemming from May 2, 2011, through December 16, 2013, totaling $8,893.00, and requested defendants to make payment.  See Docket No. 44-9 at pp. 5-10.[4]  Ms. Turnbaugh included a referral from Dr. Goodhope dated September 5, 2013—after the date the majority of the physical therapy had already been rendered.  Id. at pp. 3-4.  It is unclear to whom Dr. Goodhope was making the referral.  Id.  The referral was for evaluation and treatment of neck and right shoulder pain, cerebral palsy, and chronic pain.  Id. at p. 4.

In the same letter, Ms. Turnbaugh requested reimbursement for a home treadmill at a cost of $203.49, a home gym at a cost of $377.51 installed, and a

---

[4] The billing statement had four columns to reflect payments:  Guarantor Payment, Ins 1, Ins 2, and Ins 3.  See Docket No. 44-9 at pp. 5-10.  There are partial payments noted in the Guarantor column and in the Ins 1 column.  Id. The parties do not state in briefing whether defendants paid any money toward this physical therapy prior to January 24, 2014.  According to Ms. Turnbaugh's letter, Mr. Wetch had made partial payment for this treatment.  Id. at p. 2.

7

lift chair in an unspecified amount.  Id. at p. 2.  Ms. Turnbaugh included with her letter prescription forms from Dr. Goodhope for these items, as well as for portable hand controls, and a life assessment.  Id. at pp. 11-13.

On February 10, 2014, defendants responded to Ms. Turnbaugh's letter by reiterating the four items Dr. Wojciehoski indicated were medically necessary and 50% related to Mr. Wetch's work injury.  See Docket No. 44-10 at p. 2.  Of the items Ms. Turnbaugh was requesting reimbursement for in her January 24 letter, only the lift chair had been recognized by Dr. Wojciehoski as medically necessary and 50% related to the work injury.  Id.  Defendants, through their claim director Linda Hanke, directed Ms. Turnbaugh to contact One Call Care Management at a specified 1-800 number and to give One Call Care Management Mr. Wetch's claim number and Ms. Hanke's name in order to arrange the purchase of the lift chair.  Id.

On March 5, 2014, Mr. Wetch purchased a lift chair at a cost of $1,271.93.  See Docket No. 44-11 at p. 3.  Ms. Turnbaugh submitted that receipt to defendants for reimbursement on March 6, 2014.  Id. at p. 2.  Defendants sent Mr. Wetch a check for 50% of that amount, $636.97, on March 14, 2014.  See Docket No. 44-12 at p.2.

## C.    Events Before the DOL

### 1.    Mr. Wetch Files a Petition for Hearing March 25, 2014

On March 25, 2014, Mr. Wetch filed a petition before the DOL "for the purpose of determining or reviewing all medical benefits made or to be made by Employer and Insurer under SDCL § 62-4-1 [providing for payment of medical

and hospital expenses], from the date of the [1994 stipulated] Agreement onward, pursuant to SDCL § 62-7-12 and SDCL § 62-7-33." [5]  See Docket No. 99-14 at p. 3, ¶ 21.  Mr. Wetch requested the DOL to make an award against defendants for payment of all past and present medical benefits owed under SDCL § 62-4-1.  Id. at p. 3.

On April 28, 2014, defendants filed an answer to the petition.  See Docket No. 61-2.  The defendants wrote that they "admit that Employer and Insurer agreed to pay to Claimant benefits in conformance with SDCL 62-4-1 pursuant to the terms of the Stipulated Agreement."  See Docket No. 61-2 at p. 2, ¶3.  Defendants concurred that the DOL should hold a hearing to determine what medical benefits, if any, defendants owed to Mr. Wetch under South Dakota's workers compensation scheme.  Id. at p. 4.

Mr. Wetch's current counsel contacted Linda Graham, a registered nurse, and retained her to prepare a life care plan for Mr. Wetch.  See Docket No. 99-12 at p. 3 (Graham depo. at CM/ECF page 3, depo pp. 3-5).  Counsel made contact with Ms. Graham sometime between Dr. Goodhope's January 13, 2014, prescription for a life care plan (Docket No. 44-9 at p. 12), and July, 2014.  See Docket No. 44-13 at p. 2 (Graham report).  Ms. Graham did not produce her report until a year later, on July 8, 2015.  Id.

---

[5] Section 62-7-12 allows either party to petition the DOL for a hearing if the parties cannot reach an agreement in regard to compensation owed under South Dakota's worker's compensation scheme.  See SDCL § 62-7-12.  Section 62-7-33 allows either party to request the DOL to review any payments due under the scheme if there has been a change in condition of the employee that warrants such action.  See SDCL § 62-7-33.

The South Dakota Supreme Court decided the <u>Hayes</u> case on August 27,

2014.[6]  <u>See</u> <u>Hayes v. Rosenbaum Signs & Outdoor Advertising, Inc.</u>, 2014 S.D.

64, 853 N.W.2d 878 (2014).  In that case, the court held an employer/insurer

to be judicially estopped from contesting an employee's entitlement to medical

expenses under worker's compensation law where employer/insurer had

previously procured an IME and, at least in part on the basis of that IME,

admitted the employee had shown entitlement to medical expense benefits and,

based on that admission, the DOL entered an order.  <u>Id.</u> at ¶¶12-23, 853

N.W.2d at 882 -84.

The court held the employee bears the initial burden to demonstrate a

compensable injury.  <u>Id.</u> at ¶¶24-27, 853 N.W.2d at 884-85.  Once an employee

has carried his or her initial burden, the court held that if the

employer/insurer later believed the employee was no longer entitled to medical

benefits (because, *inter alia*, the work injury no longer remained a major

contributing cause to the employee's need for treatment), the

employer/insurer's sole recourse was to petition the DOL for a hearing

pursuant to SDCL § 62-7-33 based on a change in condition.  <u>Id.</u> at ¶¶28-30,

853 N.W.2d at 885-86.  At such a hearing, it would be the employer/insurer's

burden to demonstrate the change in condition.  <u>Id.</u> at ¶29, 853 N.W.2d at

886-87.

---

[6] The court's discussion of the <u>Hayes</u> case is, of course, a discussion of the law,
not the facts.  However, the court inserts the case and its holdings here,
chronologically in the statement of the facts of this case, because <u>Hayes</u> figures
pivotally in the discussion of the legal issues.  Specifically, the chronology of
what was established law and when is important to the issues discussed below.

On August 17, 2015, Dr. Goodhope reviewed Ms. Graham's lifecare plan and signed a Form 485.[7] See Docket No. 44-14 at pp. 2-3.

### 2.    Mr. Wetch's First Motion for Partial Summary Judgment

Mr. Wetch filed a motion for partial summary judgment before the DOL on September 15, 2015. See Docket No. 99-19. On November 6, 2015, defendants filed a response to Mr. Wetch's motion for summary judgment. See Docket No. 44-15. In the brief, defendants argued that although the 1994 settlement bound them to pay for any of Mr. Wetch's medical expenses prescribed and paid pre-settlement, it did not bind them to pay for all medical expenses prescribed post-settlement, or prescribed pre-settlement and not paid pre-settlement. Id. at pp. 9-12 (pp. 8-11 of the brief). As to the latter two categories, defendants maintained they could still decline to pay for medical expenses that were not related to the work injury or which were not necessary, suitable and proper. Id. at p. 10 (p. 9 of brief).

Defendants asserted they had received little in the way of discovery of Mr. Wetch's medical records and bills, making it difficult for defendants to determine the compensability of the expenses requested. Id. However, defendants did "admit to the compensability of those expenses/treatments identified as being 50% work related by Dr. Wojciehoski during his June 20,

---

[7] The parties do not define the term "Form 485," but it appears to be a form from the Health Care Finance Administration agency, part of the federal Department of Health and Human Services, that is tasked with administering Medicare and Medicaid. A Form 485 is a certification and plan of care for home health care.

2012, IME.  Employer and Insurer acknowledge that they are responsible for

100% of those expenses."[8]  Id. at p. 11 (p. 10 of brief).

Citing Hayes, the DOL issued an order January 28, 2016, granting

partial summary judgment to Mr. Wetch.  See Docket No. 44-16.  The DOL

held:

> 1) The doctrine of res judicata bars Employer and Insurer from
> denying benefits regardless of the fact they procured an IME that
> stated Claimant's current condition and need for treatment is only
> 50% related to Claimants [sic] work-related injury.  Res Judicata
> applies to the settlement and all foreseen consequences as it is an
> Order of the Department, thus medical care determined to be
> reasonable and appropriate **prior to the settlement agreement** is
> compensable; 2) Employer and Insurer are responsible for paying
> 100% of the medical care and treatment approved by
> Dr. Wojciehoski; 3) Employer and Insurer are instructed to approve
> and pay for the medical necessities that Claimant's treating
> physician indicates are related to the work-related injury.  **The
> question of what is "related" and what is not "related" may**

---

[8] Under current South Dakota law, an employee has the initial burden to show that, if his or her work injury combines with a preexisting condition "to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable" under worker's compensation law if the work related "injury is and remains a major contributing cause of the disability, impairment, or need for treatment." See SDCL § 62-1-1(7)(b).  Under the law which existed when Mr. Wetch was injured in 1991, the burden was much lighter:  Mr. Wetch only had to show that his work injury was a "contributing factor" to his need for medical treatment.  Caldwell v. John Morrell & Co., 489 N.W.2d 353, 357-58 (S.D. 1992).  Under the new standard, if an employee produces a physician's opinion that the employee's work related activities were 50% responsible for his need for treatment, the employee has met his burden to prove by a preponderance of the evidence that his work-related activities are a major contributing cause of his medical expenses.  Hayes, at ¶27, 853 N.W.2d at 885 (citing Orth v. Stoebner & Permann Const., Inc., 2006 S.D. 99, ¶¶ 42-49, 724 N.W.2d 586, 596-97).  Of course, that would also satisfy the earlier, easier  "contributing cause" standard.  Because Dr. Wojciehoski opined that Mr. Wetch's need for Soma, pull bars, a lift chair and a walker were necessitated 50% by his work-related injury and 50% by his preexisting cerebral palsy, this was sufficient to demonstrate the work related injury is a "major contributing cause" or a "contributing cause" for the need for these treatments, thereby requiring defendants to pay 100% of the expenses.

> ***only be answered by the Claimant's treating physician or if the settlement is reopened due to change of condition [pursuant to SDCL 62-7-33]. 4) Employer/Insurer are required to follow SDCL 62-7-33 and show a change in condition in order to end or diminish medical benefits.***

<u>See</u> Docket No. 44-16 at p. 8 (emphasis added).

The DOL order specifically acknowledged that defendants were entitled to obtain an IME pursuant to SDCL § 62-7-1, but that IME did not entitle defendants to reduce payments. <u>Id.</u> at p. 7. Instead, the DOL told defendants the *only* way to assert that the work injury was no longer a major contributing cause of the need for treatment was to assert a change in condition under SDCL § 62-7-33. <u>Id.</u> (citing <u>Hayes</u>, 2014 S.D. 64 at ¶29, 853 N.W.2d at 878; <u>Owens v. F.E.M. Elec. Ass'n. Inc.</u>, 2005 S.D. 35, ¶ 18, 694 N.W.2d 274, 280; and <u>Sopko v. C & R Transfer Co., Inc.</u>, 1998 SD 8 at ¶12, 575 N.W.2d 225, 231 ("<u>Sopko I</u>").

Mr. Wetch asserts the DOL order approved and ordered defendants to pay "all of the medical expenses submitted by Wetch." <u>See</u> Docket No. 62 at p. 5. Defendants dispute this. The order makes clear three things: (1) defendants must immediately pay 100% of the items approved by Dr. Wojciehoski; (2) defendants must pay for any medical necessities identified by Mr. Wetch's treating physician as being related to the work-related injury; and (3) if defendants wished to dispute a medical expense as not being related to the work-related injury, they must reopen the settlement agreement pursuant to SDCL § 62-7-33 based on a showing of a change in condition. Docket No. 44-16 at p. 8.

13

### 3.     Mr. Wetch's Second Motion for Partial Summary Judgment

Mr. Wetch filed a second motion for partial summary judgment before the DOL which the DOL dismissed on September 16, 2016.  See Docket No. 44-17 at p. 3.  The DOL retained continuing jurisdiction over Mr. Wetch's medical claim "to ensure treatment consistent with its previous orders in this matter is provided."  Id.

### 4.     Mr. Wetch's Third Motion for Partial Summary Judgment

On August 5, 2016, Mr. Wetch filed a third motion for partial summary judgment before the DOL.  See Docket No. 99-16.  Defendants' response to that motion, as recited by the DOL, was to stipulate that they would pay "for all necessary and reasonable care prescribed by [Mr. Wetch's] treating physician, where [Mr. Wetch's] July 30, 1991 work injury is a contributing cause. Employer and Insurer acknowledges in their response that the care referenced in [Mr. Wetch's] latest motion is their responsibility."  See Docket No. 44-17 at p. 3, ¶ 3.  The DOL order went on to recite defendants admitted they had not provided the care the DOL ordered in January.  Specifically, the DOL stated it had ordered defendants to provide "a case manager, wheelchair, vehicle with hand controls, supervised living accommodations, and other home care services" based on the life care plan recommended by Ms. Graham and approved by Dr. Goodhope.  Id. at ¶4.  The DOL noted none of those items had

been implemented and defendants had not reimbursed Mr. Wetch for the cost of physical therapy and hydrotherapy.[9]  Id.

In an order dated November 16, 2016, the DOL granted Mr. Wetch's third motion for summary judgment and reminded defendants that their right "to reassess their responsibility [for Mr. Wetch's medical expenses] under a [SDCL §] 62-7-33 change of condition is strictly prospective; that right does not affect their obligation to provide whatever care Claimant's physicians have currently determined is appropriate, or to affirmatively prove it is not appropriate.  They have not met this obligation. . ."  Id.

### 5.    Contempt Proceedings in Circuit Court

On November 14, 2016, two days *before* the DOL issued its opinion discussed immediately above, the circuit court held a hearing at which the court concluded defendants were in contempt of the 2016 circuit court judgment entered on the 1994 stipulated agreement.  See Docket No. 44-19. The basis for the court's holding was defendants' failure to pay 100% of the cost of Mr. Wetch's prescribed Soma, his walker, his pull bars, and his lift chair.  Id. at pp. 4-5 (pp. 3-4 of the order).  The court specifically declined to exercise jurisdiction over any other treatments or prescriptions of Mr. Wetch's

---

[9] Defendants point out that Dr. Goodhope was no longer prescribing hydrotherapy at the time Mr. Wetch filed his third motion for partial summary judgment with the DOL asking the DOL to require defendants to pay for hydrotherapy.  Defendants characterize this as intentional fraud.  However, the only proof for this assertion is that in a laundry list of prescribed items written by Dr. Goodhope, the item "hydrotherapy" is no longer on the list.  That is weak evidence for impugning a fellow lawyer with the allegation of intentional fraud.

because those issues were still pending before the DOL and had not reached finality. Id. at p. 4 (p. 3 of the order). The court's order based on the November 14, 2016, hearing was signed on December 29, 2016. Id. at p. 5 (p. 4 of the order).

On December 10, 2016, and January 31, 2017, defendants paid Mr. Wetch the remaining 50% they owed on the cost of the walker, pull bars with installation, and lift chair. See Docket No. 99-8 at pp. 14-15. As to the remaining 50% defendants owed on Mr. Wetch's Soma prescriptions, they initially tendered a check for this item January 19, 2017. See Docket No. 99-9. However, counsel for Mr. Wetch held the check without cashing it due to a dispute as to the amount owed. See Docket No. 99-11. Eventually the parties reached agreement as to the amount and on September 17, 2018, defendants tendered a check in the amount of $1,039.68 to Mr. Wetch for the other 50% of his Soma expenses plus interest on that amount. See Docket No. 99-13.

### 6. Mr. Wetch's Fourth Motion for Partial Summary Judgment

On February 2, 2018, Mr. Wetch made a fourth motion for partial summary judgment before the DOL. See Docket No. 44-20 at p. 2. A hearing was held before the DOL Administrative Law Judge (ALJ) on April 18, 2018. Id. at p. 3. The issue presented by the motion was "whether Employer/Insurer are obligated to pay 100 percent of the cost of Claimant's medical care for a work related [sic] pursuant to a 1994 agreement." Id. The ALJ issued a decision

May 7, 2018.[10]  Id. at p. 2.  In its decision, the ALJ held Mr. Wetch was entitled to summary judgment, but that this was a "hollow victory" as defendants' conduct demonstrated the DOL did not have the power to force defendants to comply with their legal duty.  Id. at p. 6.  The ALJ declined to sanction defendants because the DOL did not have the power to do so.  Id. at p. 7.  In conclusion, the ALJ suggested Mr. Wetch dismiss his petition before the DOL so as to allow the circuit court to assume jurisdiction as the circuit court would have the power to compel defendants' performance under South Dakota's workers compensation scheme.  Id. at p. 8.

### 7.    Defendants' Motion for Factual Determination

On September 17, 2018, defendants made a motion before the DOL for a factual determination that two items of care it had already provided to Mr. Wetch constituted necessary and proper care under SDCL § 62-4-1.  See Docket No. 99-15 at p.1.  The DOL declined to issue a substantive order deciding this matter.  Id. at p. 5.

The DOL noted that if the case proceeded to hearing on Mr. Wetch's petition, defendants would "have every opportunity to argue that the care it provided Claimant was adequate."  Id.  If, however, Mr. Wetch was to dismiss his petition, defendants' sole vehicle for challenging his care as necessary and proper would be to allege a change in condition under SDCL § 62-7-33.  Id. The DOL instructed the parties that if a hearing was held on Mr. Wetch's

---

[10] The letter opinion is dated May 7, *2015*, but the parties agree this was a typographical error and should have read "2018."

17

petition, the DOL would consider at that time the reasonableness of any care provided by defendants.  Id. at p. 6.

Defendants assert none of the DOL's decisions ruling on Mr. Wetch's four motions for partial summary judgment are final and appealable.  Defendants assert it was their intention to appeal these rulings once a final order was entered by the DOL.  See Docket No. 99-20.

Mr. Wetch's motion for partial summary judgment in this court seeks a ruling that defendants have committed bad faith for failure to provide workers compensation insurance benefits.  Should the court grant the motion, the defendants' bad faith would be conclusively determined.  The jury trial in this matter would be held for the sole purpose of calculating Mr. Wetch's damages. Defendants oppose the motion.

## DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam).  Summary judgment will not lie

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

## B.    The Law of Bad Faith in South Dakota

Jurisdiction in this matter is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. In diversity cases, the substantive law of the state—here, South Dakota law—applies to determine the rights and obligations of the parties while federal rules of procedure are applied. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938); In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010).

To prove a bad faith cause of action against defendants, Mr. Wetch must show (1) defendants had no reasonable basis for denying his claim for insurance benefits, and (2) defendants acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits. See Bertelsen v. Allstate Ins. Co., 2013 S.D. 44, ¶17, 833 N.W.2d 545, 554 ("Bertelsen III");[11] Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶18,

---

[11] Bertlesen III was abrogated on other grounds in Manger v. Brinkman, 2016 S.D. 50, ¶12 & n.7, 883 N.W.2d 74, 80. The ground for abrogation was the appropriate standard of review on appeal of a circuit court's grant or denial of a motion for judgment as a matter of law at the conclusion of a trial. Id.

619 N.W.2d 644, 649.  "However, an insurance company may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis."  Bertelsen III, at ¶17, 833 N.W.2d at 554 (cleaned up).  Whether the insurer acted in bad faith is based on "the facts and law available to [the insurer] at the time it made the decision to deny coverage."  Id. (quoting Dakota, Minnesota & Eastern R.R. Corp. v. Acuity, 2009 S.D. 69, ¶17, 771 N.W.2d 623, 629).  Bad faith is usually an issue of fact for the jury.  Bertelsen III, at ¶17, 833 N.W.2d at 554; Dakota, Minnesota & Eastern R.R. Corp., at ¶19, 771 N.W.2d at 629-30; Isaac v. State Farm Mutual Auto. Ins. Co., 522 N.W.2d 752, 758 (S.D. 1994).

When an issue of first impression as to the interpretation of an insurance contract is presented in South Dakota, the South Dakota Supreme Court has held that there was no bad faith as a matter of law in denying the plaintiff's claim where that claim was "fairly debatable" under the law.  See Mudlin v. Hills Materials Co., 2007 S.D. 118, ¶¶ 7-15, 742 N.W.2d 49, 51-54 (interpreting a coming-and-going scenario under a worker's compensation insurance policy).  However, the South Dakota Supreme Court has also held that bad faith claims may be compensable, even when an issue of first impression is presented, if the plaintiff's claim was not "fairly debatable" because the language of the statute mandating coverage was clear.  Bertelsen v. Allstate Ins. Co., 2009 S.D. 21, ¶¶ 20-21, 764 N.W.2d 495, 500 (Bertelsen I) (interpreting a worker's compensation statute providing that if an employer

denied a claim as nonwork related, any other insurer covering bodily injury "shall pay" according to its policy provisions and applying that statute against an automobile insurer under its medical benefits provision); <u>Isaac</u>, 522 N.W.2d at 758 (holding that a jury question was created by plaintiff's bad faith claim even though there was no South Dakota law on point as to whether a worker's compensation set-off provision in the insurance policy was valid or void).

In addition, the fact that an insurance company may have been unaware of applicable law will not shield the insurer from liability as a matter of law. <u>Bertelsen III</u>, at ¶ 20, 833 N.W.2d at 555. The gravamen of the above cases is, given the state of the law at the time, was defendants' denial of insurance benefits "fairly debatable"? If the defendants' claim decision was fairly debatable either in fact or in law, defendants cannot be said to have denied or delayed the claim in bad faith. <u>Dakota, Minnesota & Eastern R.R. Corp.</u>, at ¶20, 771 N.W.2d at 630.

## C.    South Dakota's Workers Compensation Scheme

The South Dakota worker's compensation scheme limits the right of employees to sue for personal injury for work-related injuries to only those instances in which injury is brought about by an intentional tort. <u>See</u> SDCL § 62-3-2. All other injuries are covered by the workers compensation scheme. <u>Id.</u>

The public policy behind the scheme is to provide a "remedy which is both expeditious and *independent of proof of fault*." <u>Steinberg v. S.D. Dept. of Military and Veterans Affairs</u>, 2000 S.D. 36, ¶27, 607 N.W.2d 596, 605

22

(emphasis in original).  The scheme represents a quid pro quo under "which the employer gives up normal defenses and assumes automatic liability while the employee gives up the right to common law verdicts."  Id. (quoting 2 Larson's Worker's Compensation Law § 72.22, at 14-152).  The scheme accomplishes its goal by providing a sure source of payment for injured workers for work-related injuries, both to compensate employees for the injury itself and for loss of income occasioned by their injury.  Thomas v. Custer State Hosp., 511 N.W.2d 576, 579 (S.D. 1994).  To that end, the worker's compensation statutes are to be liberally construed in favor of injured employees.  Id.  The scheme is "purely statutory and the rights of the parties and the manner of procedure under the law must be determined by" those statutes.  Sopko v. C & R Transfer Co., Inc., 2003 S.D. 69, ¶10, 665 N.W.2d 94, 97 ("Sopko II").

If a covered employee suffers a work-related injury, he or she is entitled to have his necessary, suitable and proper medical and hospital expenses paid by the employer or the employer's workers compensation insurer.  See SDCL § 62-4-1.  Medical services or treatment is defined as "any procedure, operation, consultation, supply, or product provided for the purposes of curing or relieving an employee of the effects of a compensable injury or disability." See ARSD 47:03:04:01(9).  An employee's medical expenses are paid as they are incurred; there is no provision for payment of future medical expenses in a present lump sum of money.  Stukey v. Sturgis Pizza Ranch, 2011 S.D. 1, ¶27, 794 N.W.2d 378, 389.

With regard to medical expenses, it is the treating physician's "province to determine what is necessary or suitable and proper.  When a disagreement arises as to the treatment rendered or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper." Streeter v. Canton Sch. Dist., 2004 S.D. 30, ¶25, 677 N.W.2d 221, 226; Hanson v. Penrod, 425 N.W.2d 396, 399 (S.D. 1988).

An injured employee is also entitled to payment of permanent and total disability to the extent the injury affects his or her ability to work.  See SDCL §§ 62-4-2 through -7.1.  This includes a schedule of payments for injuries resulting in the loss of specified body parts.  See SDCL § 62-4-6. Compensation for injury resulting in death of the employee is also covered.  See SDCL §§ 62-4-8 through -22.

If an employer is covered by the workers compensation scheme, it must secure the payment of compensation for its employees for work-related injuries in any of several specified ways, the most common of which is the purchase of workers compensation insurance.  See SDCL ch. 62-5.

The South Dakota DOL is a fully-formed forum for litigating workers compensation claims.  A case is initiated by filing a written petition for hearing. ARSD 47:03:01:02 & 47:03:01:01.01.  An adverse party may assert a counterclaim or claim for setoff.  ARSD 47:03:01:20.  Thereafter, discovery including depositions are available.  ARSD 47:03:01:05.01.  Motions practice including motions for default, to dismiss, and for summary judgment are available to the parties.  ARSD 47:03:01:09 & -:08; see also SDCL § 1-26-18(1).

24

The DOL can issue subpoenas for witnesses and documents.  See SDCL § 62-2-6.

The DOL may require the parties to attend a pre-hearing conference. ARSD 47:03:01:11.  The topics that may be discussed at the conference include the necessity or desirability of amending the pleadings, statements and simplification of the issues, the elimination of frivolous claims or defenses, the possible stipulation to facts or admission of evidence, and the avoidance of unnecessary or cumulative evidence.  ARSD 47:03:01:13.  Following such a hearing the DOL enters an order reciting the action taken and this order controls the course of the hearing unless modified subsequently.  ARSD 47:03:01:15.

The rules of evidence apply at contested hearings unless agency rules provide otherwise (no DOL rule appears contrary to this).  SDCL § 1-26-19(1). Cross-examination of witnesses can be conducted.  Id. at (2).  And the ALJ may take judicial notice of judicially cognizable facts.  Id. at (3).

An employer can require an employee to undergo a compulsory IME with a medical professional of the employer's choosing.  See SDCL § 62-7-1.  If the employee wishes, he or she can have their own medical professional present during the IME.  See SDCL § 62-7-2.

The parties can arrive at an agreement as to compensation owed under the workers compensation scheme.  See SDCL § 62-7-5.  They can then submit their agreement to the DOL which may approve it.  Id.  If the DOL approves the agreement, it becomes enforceable for all purposes under the workers

25

compensation scheme.  Id.  If the parties cannot agree on compensation owed under the scheme, either party may file a petition with the DOL to request a hearing.  See SDCL § 62-7-12.

DOL hearings are conducted by licensed attorneys.  See SDCL § 62-07-12.1.  The hearings are recorded.  See SDCL § 62-7-13.  Following a hearing, the DOL ALJ "shall file its decision, its findings of fact, and conclusions of law and shall serve the same on the parties forthwith by dispatching a copy addressed to each party or the party's attorney by mail, postage paid."  Id.

Following a hearing, any party may petition the secretary of the DOL for review within 10 days of receipt of the ALJ's decision described in § 62-7-13.  See SDCL § 62-7-16.  If a petition for review is filed with the secretary, there is no final appealable agency decision until the secretary issues its final determination on the petition.  See SDCL § 62-7-18.

Alternatively, a party may elect to treat the ALJ's decision described in § 62-7-13 as the final decision of the DOL and appeal directly from that decision to the state circuit court.  See SDCL § 62-7-17.  Once an appeal to the circuit court is taken, the court may review not only the final order or decision of the DOL but also any intermediate orders or decisions affecting substantial rights.  See SDCL § 62-7-19.  The DOL decision must constitute a final agency decision before appeal to the circuit court can be pursued, unless other review is provided for by law.  SDCL § 1-26-30.

A final decision or order of an agency in a contested case must be in writing or stated in the record.  SDCL § 1-26-25.  The decision may affirm, modify, or nullify previous action taken in the case.  Id.  The final agency action "shall include findings of fact and conclusions of law, separately stated."  Id.  The failure by an agency to make findings of fact and conclusions of law is a violation of § 1-26-25.  State Dept. of Pub. Safety v. Eastman, 273 N.W.2d 159, 160 (S.D. 1978).  If a party attempts to appeal from a contested agency decision that does not contain findings of fact and conclusions of law, the circuit court must remand to the agency for the making of such findings and conclusions.  Id. at 161.  See also Johnson v. Skelly Oil Co., 359 N.W.2d 130, 134 (S.D. 1984) (stating DOL was required to make factual findings as to whether injured employee's acquisition of a special van constituted "other suitable and proper care" under worker's compensation statute SDCL § 62-4-1).

Once the DOL signs a document containing its findings of fact and conclusions of law deciding all issues before it, the agency's decision is final and, thus, appealable to circuit court.  Sudbeck v. Dale Electronics, Inc. 519 N.W.2d 63, 66 (S.D. 1994).  An aggrieved party has 30 days within which to appeal once the DOL has served its notice of its final decision.  Id. (citing SDCL § 1-26-31).

Because the DOL can decide issues presented in a petition piecemeal, generally an aggrieved party has no right to appeal until all issues presented in a petition are decided.  Baier v. Dean Kurtz Const., Inc., 2009 S.D. 7, 761 N.W.2d 601.  In the Baier case, an employee worked for the same employer

from 1987 until 2005.  Id. at ¶¶2-5, 761 N.W.2d at 602-03.  He suffered a low back injury in 1999 and recovered and returned to work.  Id.  Then in 2004 it was discovered that he needed both hips replaced.  Id.  The employer had been insured for workers compensation benefits by two different companies, one at the time of the 1999 injury and a different insurance company in 2004.  Id.

The employee filed a petition before the DOL for workers compensation benefits for his hips.  Id. at ¶5, 761 N.W.2d at 603.  Among the issues to be decided were (1) causation for the hip condition (i.e. whether it was work-related), (2) what medical expenses were recoverable, (3) whether the employee was entitled to temporary total disability, (4) which insurer was liable for the medical expenses associated with the hip condition, and (5) apportionment.  Id. at ¶6, 761 N.W.2d at 603.

The 2004 insurance company filed a motion for (partial) summary judgment on the issue of which insurer was responsible for the hip condition.  Id. at ¶7, 761 N.W.2d at 603.  The DOL issued a written decision with findings of fact and conclusions of law holding the 2004 insurer responsible for the employee's hip condition.  Id. at ¶¶8 & 9, 761 N.W.2d at 603-04.

Approximately 16 months later, the DOL entered another order with findings of fact and conclusions of law deciding the remaining issues on the employee's petition.  Id. at ¶10, 761 N.W.2d at 604.  The 2004 insurer timely appealed from the last order, seeking judicial review of all the DOL's orders, including the order holding it and not the 1999 insurer liable.  Id. at ¶11, 761 N.W.2d at 604.

28

Before the circuit court, the employee argued the insurer's appeal of the DOL decision holding the 2004 insurer, and not the 1999 insurer, liable was not timely and should not be considered because more than 30 days had elapsed between the notice of appeal and the DOL decision in question.  Id. at ¶13, 761 N.W.2d at 605.  The court held the 2004 insurer's appeal was timely because it was taken within 30 days of the final DOL decision deciding the remaining issues; the earlier DOL decision deciding only which insurer was liable was not a final appealable decision because that written decision did not dispose of all the issues in the case.  Id. at ¶¶14-15, 761 N.W.2d at 605.  The court noted when the DOL issued its first decision, it specifically retained jurisdiction to determine the other issues.  Id.

As seen in Mr. Wetch's case, any party may also present a memorandum of agreement approved by the DOL to a circuit court after the time for appeal or petition has passed with neither an appeal nor a petition for review being filed. See SDCL § 62-7-31.  The circuit court will then enter a judgment memorializing the agreement, order or decision.  Id.  Such a judgment, once entered, has the same force and effect as any other circuit court judgment except that no appeal may be made on questions of fact.  Id.  If the DOL later issues a decision ending, diminishing, or increasing any payment to be made under the workers compensation scheme, the circuit court must revoke or modify its previous judgment to conform to the DOL decision.  See SDCL § 62-7-32.

29

Where an administrative agency has taken action in a matter, the aggrieved party must generally exhaust administrative remedies before appealing to the circuit court.  Dan Nelson, Automotive, Inc. v. Viken, 2005 S.D. 109, ¶11, 706 N.W.2d 239, 243.  The exhaustion doctrine determines *when* a circuit court can review agency action.  Id. at ¶7, 706 N.W.2d at 242. In South Dakota state court, failure of an injured employee to first exhaust his workers compensation administrative remedies before the DOL deprives a state circuit court of jurisdiction to entertain claims by the employee of bad faith failure to pay workers compensation benefits.  Zuke v. Presentation Sisters, Inc., 1999 S.D. 41, ¶22, 589 N.W.2d 925.

However, Zuke does not operate to deprive a federal district court of jurisdiction under circumstances where the employee has not yet exhausted administrative remedies before the DOL.  Lagler v. Zurich Amer. Ins. Co., 2012 WL 3264906 at *2 (D.S.D. Aug. 10, 2012) (citing Smith v. MCI Telecomm. Corp., 124 F.R.D. 665, 681 n.14 (D. Kan. 1989)).  Nevertheless, federal courts may stay their hand or decline to accept jurisdiction over a bad faith claim while administrative actions are still pending under the "primary jurisdiction" doctrine.  Id.

Primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  Id. (citing United States v. Western Pacific R. Co., 352 U.S. 59, 63-64 (1956)).  Under primary jurisdiction,

a court may defer to the agency for a ruling in order to "obtain the benefit of the agency's expertise and experience," or "to promote uniformity and consistency within the particular field of regulation."  Id. (citing Access Telecomm. v. Southwestern Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998)). Federalism concerns also require consideration when primary jurisdiction entails a federal court deciding whether to exercise jurisdiction and a state agency with the expertise and experience.  Id. (citing Burford v. Sun Oil Co., 319 U.S. 315, 333-34 (1943)).[12]

The doctrine of res judicata, encompassing the concepts of issue preclusion and claim preclusion, applies only to final agency decisions.  Jundt v. Fuller, 2007 S.D. 62, ¶12, 736 N.W.2d 508, 513.  Issue preclusion (aka collateral estoppel), bars a party from relitigating an issue that was contested and actually litigated in a prior action by a court/agency of competent jurisdiction.  Hayes, 2014 S.D. 64, ¶10, 853 N.W.2d at 882.  Claim preclusion bars the litigation of a claim that was not raised in the earlier proceeding, but

---

[12] There is also a doctrine of primary jurisdiction under South Dakota state law.  Dan Nelson Automotive, Inc., at ¶11, 706 N.W.2d at 243.  Where the administrative agency has not acted, and a matter lies equally within the power of the agency or the circuit court to address, the doctrine of "primary jurisdiction" applies to determine whether the court or the agency should act first.  Id.  Generally, so long as the agency is not vested with exclusive power to hear and determine a matter, the court may act without a party having had recourse to the agency decision-making process prior to filing in court.  Id. at ¶¶8, 11, 13, 706 N.W.2d at 242-44.

In this case, because this court admittedly has jurisdiction, the decision whether to discretionarily allow a state agency (the DOL) to exercise jurisdiction first is decided according to federal law, not state law.  See, e.g. Lagler, 2012 WL 3264906 at **2-3.

which could have been raised.  Id.  Where a petition before the DOL was dismissed without prejudice because the employer/insurer filed an answer admitting the allegations in the petition and thus rendering moot any controversy, the DOL's dismissal of the employee's petition was not subject to *res judicata*.  Id. at ¶¶3, 11, 853 N.W.2d at 882.

In determining obligations under South Dakota's worker's compensation laws, the law in existence at the time of the employee's injury is the applicable law.  Sopko II, at ¶12, 665 N.W.2d at 97.  Mr. Wetch was injured in 1991, so the law in effect in 1991 determines his and defendants' rights and obligations under South Dakota's worker's compensation scheme.  Id.

A key statute to understanding the parties' arguments in this case is SDCL § 62-7-33.  Section 62-7-33 provides as follows:

> Any payment, including medical payments under § 62-4-1, **and disability payments under § 62-4-3 if the earnings have substantially changed since the date of injury**, made or to be made under this title may be reviewed by the Department **of Labor and Regulation** pursuant to § 62-7-12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased, or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action.  **Any case in which there has been a determination of permanent total disability may be reviewed by the department not less than every five years.**

See SDCL § 62-7-33.

The version of § 62-7-33 that existed at the time of Mr. Wetch's injury in 1991 is the above text with the portions in bold omitted.  For purposes of the

issues presented in this case, the changes in the statute between 1991 and the present version of the statute are not material.[13]

Paraphrasing, and leaving out disability payments (which are not part of the parties' dispute herein), § 62-7-33 says if medical payments have been made or are to be made pursuant to worker's compensation laws, either party may make a written request asking the Department of Labor (DOL) to review those payments. If the DOL finds that a change in the employee's condition warrants action, the DOL may end, increase, or diminish payments to the employee. Where the employee has been found to be permanently totally disabled, the DOL may review whether there has been a change in the employee's condition not less than every five years.

The South Dakota Supreme Court has stated that § 62-7-33 "only contemplates movements as to the degree of a workers' [sic] partial disability." Sopko II, at ¶11, 665 N.W.2d at 97. The Sopko II court held the DOL "may review any payment of benefits pursuant to SDCL 62-7-33, however the rate for calculating benefits that is utilized vests at the time of injury." Id.

Interpreting the nearly identical predecessor to § 62-7-33, the court stated the "statute was designed for situations involving installment payments to injured employees. It contemplates the existence of continuing payments." Stender v. City of Miller, 82 S.D. 334, 145 N.W.2d 913, 915 (1966). The court

---

[13] The first highlighted portion ("and disability payments . . . date of injury") and the last highlighted sentence were added in 1993. The first mention of the word "department" in the statute was changed to "Department of Labor and Regulation" in 2011 pursuant to an executive order reorganizing South Dakota administrative agencies.

later noted that revision of the statute to remove the clause "to be made" following the words "any payment" called into doubt <u>Stender's</u> holding that the statute applied only to future installment payments.  <u>See</u> <u>Sopko I</u>, at ¶11 n.4, 575 N.W.2d at 230 n.4.  "A change in condition refers to a . . . material and substantial change. [Which] as a general rule, . . . must be a change in the physical condition of the employee, affecting his earning capacity."  <u>Id.</u>

South Dakota's workers compensation scheme is overseen by an advisory council made up of representatives associated with both the employers and employees.  <u>See</u> SDCL § 62-2-10.  This council meets at least twice a year and makes reports for improvement of the workers compensation scheme to the Governor and the Legislature annually.  <u>Id.</u>

## D.     Arguments of the Parties

### 1.     Due Process Violation

Mr. Wetch argues that defendants' denial and delay of his workers compensation medical benefits violates his due process rights under the Fourteenth Amendment to the United States Constitution and the Sixth Amendment to the South Dakota Constitution.  <u>See</u> Docket No. 60, p. 17.  But the Fourteenth Amendment to the United States Constitution requires, as a necessary predicate, that there be *state governmental action.*  <u>Colorado v. Connelly</u>, 479 U.S. 157, 165 (1986).  That is because the amendment provides in pertinent part, "nor shall any ***State*** deprive any person of life, liberty, or property, without due process of law."  <u>See</u> U.S. CONST. AMEND. XIV (emphasis added).  Defendants are private companies, not an arm of the state

34

government.  Mr. Wetch does not explain how the actions of private parties implicate the Fourteenth Amendment.

Likewise, although the South Dakota constitutional provision does not affirmatively include a reference to "the state" or "government," the South Dakota Supreme Court has interpreted the state due process clause to require state action as well.  <u>Novotny v. Sacred Heart Health Servs.</u>, 2016 S.D. 75, ¶16, 887 N.W.2d 83, 91 (stating "neither the circuit court nor Plaintiffs have identified a protected liberty or property interest at stake *that has been deprived by the State.*") (emphasis added).

Mr. Wetch cites the case of <u>Vreugdenhil v. First Bank of South Dakota, N.A.</u>, 467 N.W.2d 756 (S.D. 1991).  <u>Vreugdenhil</u> is inapposite for two reasons. First, the issue before the court was whether plaintiffs had adduced sufficient proof to allow the issue of punitive damages to be presented to the jury.  <u>Id.</u> at 757.  Here, Mr. Wetch is not seeking any ruling from the court regarding damages, either punitive or compensatory, but has specifically reserved the issue of damages for trial.  <u>See</u> Docket No. 60 at p. 1.  Therefore, whether there is sufficient evidence to submit Mr. Wetch's claim for punitive damages is not implicated by his motion for partial summary judgment.

Also, the facts of the <u>Vreugdenhil</u> case *did* involve state action—the bank was pursuing its claim for claim and delivery of its collateral from a debtor and a sheriff assisted the bank.  <u>Id.</u> at 758.  The bank president and the local sheriff requested plaintiff-debtor to open the door to his business while all three were standing just outside the door.  <u>Id.</u>  When the debtor refused, the

35

sheriff broke open the door to the business at the request of the bank's president.  Id.  The bank president then informed the debtor he would no longer have control of the business.  Id.  The bank president asked the sheriff to escort the debtor out of the business premises, which the sheriff promptly did.  Id.  Obviously, the sheriff's assistance to the bank provided the necessary *state action* in the Vreugdenhil case.

Because Mr. Wetch has not alleged any state governmental action, the court concludes he fails to demonstrate facts implicating either the state or federal due process clauses.  Accordingly, the court recommends denying Mr. Wetch's motion for partial summary judgment on this ground.

### 2.    Delay Alone is Insufficient to Show Bad Faith

Defendants argue that South Dakota law does not support delay in making payments of insurance benefits as a basis of bad faith and assert that all Mr. Wetch has shown was a delay in defendants' payment of certain medical expenses.  Defendants' statement of the law is incorrect.  South Dakota has recognized that delay alone in making payments owed under an insurance policy can constitute bad faith if done with no reasonable basis and if the plaintiff suffered a compensable loss as a result.  McDowell v. Citicorp U.S.A., 2007 S.D. 53, ¶16, 734 N.W.2d 14, 19 (citing Kirchoff v. Amer. Cas. Co., Reading, Penn., 997 F.2d 401, 405 (8th Cir. 1993)).

The McDowell court affirmed the circuit court's grant of defendant's summary judgment motion in that case.  Id. at ¶24, 734 N.W.2d at 20.  The plaintiff asserted three separate medical expenses she alleged defendant had

36

delayed for 226 days, 145 days, and 161 days.  Id. at ¶17, 734 N.W.2d at 19.
In its motion for summary judgment, defendant produced affidavits indicating
the delay in making payment on the three claims from date of defendant's
receipt of the billing until issuance of a check was instead 115 days, 28 days,
and 45 days.  Id. at ¶18, 734 N.W.2d at 19-20.  Plaintiff failed to contradict
defendant's affidavits.  Id. at ¶19, 734 N.W.2d at 20.  Thus, the McDowell court
affirmed the circuit court's grant of summary judgment because plaintiff did
not carry her burden to contradict defendants' sworn affidavits as required
under Rule 56.  Id. at ¶24, 734 N.W.2d at 20.  McDowell does not, as
defendants represent, stand for the legal proposition that a plaintiff cannot
base a bad faith claim on delayed payments alone.

### 3.    Materiality

Defendants argue that they have provided Mr. Wetch with three-quarters
of a million dollars in benefits and the amount of benefits which form the basis
of Mr. Wetch's bad faith claim are less than one-half of one percent of the total
paid.  Defendants argue that the amount is simply not sufficient to be material
and, therefore, this should defeat Mr. Wetch's claim.

Defendants cite four cases in support of this argument, not one of which
involves a bad faith insurance claim.  See Docket No. 97 at pp.24-25.  The cited
cases are an insider trading case before the Securities and Exchange
Commission, a claim for payment for water damage to oriental rugs, and two
employment law claims for retaliatory discharge by whistleblowers.  Id.  None of
the case law is relevant to Mr. Wetch's partial summary judgment motion.  The

37

court is not aware of any South Dakota case rejecting a bad faith case out of hand because the benefits withheld by the insurer paled in comparison to the benefits paid out.  In <u>Bertelsen I</u>, at ¶18, 764 N.W.2d at 500, the court found that defendant/insurer's failure to pay for medical expenses amounting to 1% of the total of plaintiff's medical expenses sufficient to create a question of material fact sufficient to survive summary judgment.[14]  The court rejects defendants' materiality argument.

### 4.    Res Judicata

Mr. Wetch argues res judicata bars defendants from asserting they had no duty to pay Mr. Wetch's medical expenses because defendants have either actually litigated those issues before the DOL or could have done so. Therefore, Mr. Wetch asks the court to enter partial summary judgment to the effect that defendants had no reasonable basis to deny or delay his requests for medical expenses.

As discussed above, res judicata can apply to DOL decisions, but those decisions must be final agency decisions.  <u>Jundt</u>, 2007 S.D. 62, ¶12, 736 N.W.2d at 513.  Res judicata does not apply to decisions of the DOL that are not yet final.  <u>Id.</u>  Here, it is obvious from the DOL's May 7, 2018, decision that the DOL continues to exercise jurisdiction over Mr. Wetch's petition and that

---

[14] Plaintiff's total medical expenses were almost $400,000 and the amount unpaid by defendant was just a little over $4,000.  <u>Bertelsen I</u>, at ¶¶2, 18, 764 N.W.2d at 497, 500.  Plaintiff's total claim actually exceeded $1.2 million.  <u>See</u> <u>Bertelsen v. Allstate Ins. Co.</u>, 2011 S.D. 13, ¶8, 796 N.W.2d 685, 691 ("<u>Bertelsen II</u>").  The $4,000 remaining unpaid in medical expenses was approximately one-third of one percent of the total claim.

the petition has not been finally disposed of by the DOL.  See Docket No. 44-20 at p. 8.  Accordingly, res judicata cannot apply to bar defendants from arguing that they had a reasonable basis to deny Mr. Wetch's claimed expenses on the basis of DOL decisions in this case.

But Mr. Wetch asserts, citing Call v. Benevolent and Protective Order of Elks, 307 N.W.2d 138 (S.D. 1981), that there can be several final orders in the course of a single worker's compensation claim and that each such order may be subject to res judicata.  In Call, the South Dakota Supreme Court held the DOL acted validly when it retained continuing jurisdiction over the question whether the employee was partially disabled after the DOL had previously issued an order concluding the employee was not totally disabled.  Id. at 139-40.  However, the court stated the retention of continuing jurisdiction by the DOL should be used cautiously and should *not* be used to provide a secondary means of reviewing an otherwise final order.  Id. at 140.  The DOL "may retain continuing jurisdiction over one or more specific questions or issues, but should enter a final order in all other respects.  There may be numerous final orders in a worker's compensation case."  Id.

The case of Herr v. Dakotah, Inc., 2000 S.D. 90, 613 N.W.2d 549, demonstrates the application of res judicata in the workers compensation setting.  Herr, the employee, filed a petition before the DOL alleging work-related injuries to her elbow, neck and shoulder.  Id. at ¶3, 613 N.W.2d at 551.  A hearing was held by the DOL and it issued findings and conclusions that Herr's elbow and neck problems were work-related injuries, but did not specify

the amount of benefits Herr was entitled to.  Id.  Herr filed another DOL

petition asking that this issue be addressed.  Id. at ¶4, 613 N.W.2d at 551.

The DOL held another hearing and issued another order with findings and

conclusions determining the amount of Herr's temporary total disability

payments.  Id.  Herr then took that decision and obtained a judgment from the

circuit court pursuant to SDCL § 62-7-31.  Id. at ¶5, 613 N.W.2d at 551.  The

employer/insurer sought relief from the judgment on the basis of factual issues

already litigated; the circuit court and Supreme Court denied relief on the basis

of res judicata.  Id.

Thereafter, employer/insurer filed its own petition before the DOL,

seeking a determination of whether and when Herr reached maximum medical

improvement.  Id. at ¶6, 613 N.W.2d at 551.  Herr asked the DOL to dismiss

employer/insurer's petition on the grounds of res judicata.  Id.  The DOL and

the circuit court agreed with Herr.  Id. at ¶¶8-9, 613 N.W.2d at 552.  The South

Dakota Supreme Court reversed, noting the DOL had never decided the issue

of Herr's maximum medical improvement.  Id. at ¶21, 613 N.W.2d at 554.  The

court noted the DOL retained jurisdiction over the case "until all issues of

compensation are finalized," thereby precluding final judgment on the merits of

whether, and when, Herr reached maximum medical improvement."  Id. at ¶28,

613 N.W.2d at 555.  If the court accepted Herr's position, once an employee

received an award of temporary disability benefits, it would in reality be a

perpetual award because the employer/insurer would be foreclosed from ever

raising the question when the disability ended or became permanent. Id. at ¶29, 613 N.W.2d at 555.

Mr. Wetch also cites Skjonsberg v. Menard, Inc., 2019 S.D. 6, 922 N.W.2d 784. The Skjonsberg case did not discuss continuing jurisdiction at all. The issue in that case was whether the DOL erred in entering partial summary judgment in the employee's favor on medical expenses that employer/insurer had already paid. Id. at ¶11, 922 N.W.2d at 787. The South Dakota Supreme Court held the DOL had erred because employer/insurer's payment of the expenses in question rendered the employee's partial summary judgment motion moot. Id. at ¶¶13-16, 922 N.W.2d at 787-88. Mr. Wetch appears to argue the mere fact that the court heard the appeal is proof that a partial summary judgment order from the DOL is always final and appealable and, thus, subject to res judicata. The court will not read such a holding into the case where none is explicitly stated. Furthermore, as the Herr decision demonstrates, there can be multiple "final" orders from which appeal may be taken—that is how the Supreme Court heard Herr's first appeal but held nonetheless that the second appeal was not res judicata.

Furthermore, here, the language of the DOL's last order in Mr. Wetch's case makes clear that it is not a final order and that his petition remains pending. The DOL wrote in that opinion, "[t]he Department's jurisdiction over this case is based upon Claimant's 2014 petition . . . [n]onetheless, should the Claimant wish to dismiss his petition, the Department *will relinquish jurisdiction* so that the circuit court may assume [jurisdiction]." See Docket No.

41

44-20 at p. 8 (emphasis added).  The court concludes the DOL's order upon which Mr. Wetch wishes to base his claim of res judicata is not a final order.

The 2016 judgment of the circuit court *is* a final decision, but it is final only as to the 1994 stipulated agreement.  See Docket No. 44-18 at p.2.  As discussed above, the stipulated agreement only states it *does not impair* Mr. Wetch's right to seek medical expenses from defendants.  See Docket No. 44-1 at p. 3, ¶9.  It does not affirmatively *provide* his right to those expenses incurred post-stipulation.[15]  Id.  The stipulation, like the first DOL decision in Herr, only determined that Mr. Wetch was permanently and totally disabled and entitled to benefits.  Aside from benefits meant to take the place of Mr. Wetch's wages which could no longer be earned, the stipulation did not determine the *amount* of other benefits—like medical expenses—Mr. Wetch was entitled to.  See Docket No. 44-1.

In addition, a judgment entered pursuant to SDCL § 62-7-31 such as the 2016 judgment in this case is a peculiar type of judgment—no appeal concerning a matter of fact may be pursued based on such a judgment.  See SDCL § 62-7-31.  This is obviously because the circuit court issuing the judgment has not adjudicated any facts because none were presented to the court.  It may be the South Dakota Supreme Court would rule that a judgment entered pursuant to SDCL § 62-7-31 is not res judicata as to factual matters.

---

[15] The circuit court exercised jurisdiction over the four items found to be work related by Dr. Wojciehoski.  See Docket No. 44-19 at p. 4, ¶16.  However, the court specifically refused to exercise jurisdiction over any other treatments or prescriptions because those were still pending before the DOL.  Id. at ¶17.

Finally, if the DOL were to later issue a decision ending, diminishing, or increasing any payment to be made under the workers compensation scheme to Mr. Wetch, the circuit court would be required to revoke or modify its previous judgment to conform to the DOL decision.  See SDCL § 62-7-32. Thus, the "final" 2016 judgment entered by the circuit court in Mr. Wetch's case does not partake of finality in the same way other circuit court judgments would.

The court declines to apply res judicata in service of Mr. Wetch's partial summary judgment motion.  The 1994 stipulation is final but does not affirmatively dispose of the issue of post-stipulation medical benefits, the DOL orders granting partial summary judgment are not final agency decisions, and the 2016 circuit court judgment does not partake of the full panoply of "finality" usually accorded final judgments and it does not compel the conclusion that defendants acted without a reasonable basis in denying and delaying payment of benefits to Mr. Wetch for medical expenses—it merely makes final the 1994 stipulation which itself does not affirmatively address Mr. Wetch's entitlement to post-stipulation medical expenses.

Defendants also point out that the DOL has yet to enter findings of fact and conclusions of law with regard to any of its decisions and that such findings and conclusions are necessary to finality and judicial review. Johnson, 359 N.W.2d at 134; SDCL § 62-4-1.  Mr. Wetch counters that entering summary judgment does not require the entry of findings of fact and conclusions of law, only rulings on a disputed *hearing* require findings and

43

conclusions.  See Docket No. 111 at p. 6 (citing Veblen Dist. v. Multi-Community Coop. Dairy, 2012 S.D. 26, 813 N.W.2d 161).  That may be true, but following the granting of a full motion for summary judgment disposing of all claims and defenses, judgment is entered, signaling finality.  Denial of summary judgment, by contrast, is usually not appealable because no judgment is issued following such a denial.  Ortiz v. Jordan, 562 U.S. 180, 183-84 (2011).  Partial summary judgment, by its very nature, disposes of only some of the issues, claims or defenses in a case, leaving others to be litigated in the future.  Therefore, partial summary judgment, whether findings and conclusions are required or not, is simply not a final decision disposing of all the claims and defenses in a case.  Green v. Fisk, 154 U.S. 668, 668 (1881).  Accordingly, it does not partake of finality.  Id.  Because it does not partake of finality, res judicata does not apply to such rulings.  Jundt, 2007 S.D. 62, ¶12, 736 N.W.2d at 513.

Mr. Wetch has failed to cite to a single case where a DOL decision granting partial summary judgment with no findings of fact or conclusions of law was held to be a final agency decision.  The court declines to grant Mr. Wetch's partial summary judgment motion on liability on the basis of res judicata.

### 5.   Judicial Estoppel

Even if res judicata does not apply here, Mr. Wetch asserts that, as in the Hayes case, the doctrine of judicial estoppel should apply to bar defendants from asserting they had a reasonable basis for their actions.  Defendants note

44

that judicial estoppel is an equitable doctrine and should not apply to Mr. Wetch because he has "unclean hands." In addition, defendants argue the doctrine is inapplicable where there has been mistake, inadvertence or fraud. Finally, defendants argue that the doctrine should only apply where the position taken by a party previously was clearly inconsistent with the party's present position.

Judicial estoppel is the "intentional assertion of an inconsistent position that perverts the judicial machinery." Hayes, at ¶14, 853 N.W.2d at 882. It "cannot be reduced to an equation," but generally requires consideration of three factors: (1) the position adopted by the party later is clearly inconsistent with the party's earlier position; (2) the party prevailed on the earlier position, so that if a court in a later proceeding accepted the later inconsistent position, the perception would arise that either the first or the second court was misled; and (3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped. New Hampshire v. Maine, 532 U.S. 742, 750 (2001); Hayes, at ¶15, 853 N.W.2d at 883; Canyon Lake Park, LLC v. Loftus Dental, P.C., 2005 S.D. 82, ¶34, 700 N.W.2d 729, 737. If the party taking the inconsistent position did not succeed in the prior proceeding, the party's later taking of an inconsistent position does not implicate judicial estoppel because there is "no risk of inconsistent court determinations" and, therefore, "little threat to judicial integrity." New Hampshire, 532 U.S. at 750-51.

45

The prior position the party took must be about a matter of fact, not law. Wyman v. Bruckner, 2018 S.D. 17, ¶12, 908 N.W.2d 170, 175; State v. St. Cloud, 465 N.W.2d 177, 180 (S.D. 1991). And the prior position cannot have been as a result of mistake, inadvertence or fraud upon the party taking the position. New Hampshire, 532 U.S. at 753; St. Cloud, 465 N.W.2d at 180. This formulation is not inflexible nor is it exhaustive. New Hampshire, 532 U.S. at 751. Courts may consider other factors if they are relevant in a specific factual context. Id. Whether to apply the equitable doctrine of judicial estoppel is within the court's discretion. Id. at 750.

In the New Hampshire case, brought within the Supreme Court's original jurisdiction, the Court applied judicial estoppel against New Hampshire regarding a factual position New Hampshire took regarding its boundary with Maine. Id. at 745-46. King George II had issued a decree in 1740 stating that the boundary between New Hampshire and Maine at the location in question was the "middle" of the Piscataqua River. Id. In the 1970s, the two states were involved in a prior case before the Court which ended with a consent decree entered into by both parties and adopted by the Court which defined the "middle of the river" to mean the middle of the Piscataqua River's main channel of navigation. Id. at 747. In the 2001 case, New Hampshire asserted the boundary between the states ran "along the low water mark on the Maine shore," thus giving New Hampshire sovereignty over the entirety of the river and Portsmouth Harbor. Id. at 747-48. The Court held New Hampshire was

judicially estopped from asserting this inconsistent factual position in the 2001 case. Id. at 749.

In the Wyman case, a party argued before the circuit court in summary judgment briefings that her withdrawal of money from a checking account was justified because she had a durable power of attorney authorizing her to take the money. Wyman, at ¶14, 908 N.W.2d at 175-76. The court held the party was not judicially estopped from arguing before the South Dakota Supreme Court that her status as a joint owner of the account justified the withdrawals. Id. at ¶15. The court held the party's inconsistent positions were about the *legal justification* for her acts, not about a factual matter. Id. Therefore, since judicial estoppel applies only to factual positions, the doctrine did not apply. Id. See also Gesinger v. Gesinger, 531 N.W.2d 17, 21-22 (S.D. 1995) (refusing to apply judicial estoppel where the same party previously asserted tribal court lacked jurisdiction, and then later invoked tribal court jurisdiction; whether a court has jurisdiction is a matter of *law*, not a factual matter to which judicial estoppel might apply).

In the Canyon Lake case, there was no showing that the party's prior position before the Rapid City Zoning Board of Adjustment was ever adopted or relied upon by that board. Canyon Lake, LLC, at ¶37, 700 N.W.2d at 738. Therefore, judicial estoppel was not applicable. Id.

In Watertown Concrete Products, Inc. v. Foster, 2001 S.D. 79 at ¶13, 630 N.W.2d 108, 113, the creditor had protectively filed a claim in a debtor-son's bankruptcy estate, explaining when the bankruptcy trustee objected that the

47

creditor was unsure whether the debtor-son or his father's probate estate was liable for the debt.  Id.  The creditor subsequently withdrew the bankruptcy claim and sued the father's estate to collect the debt.  Id.  The court held the creditor had not taken inconsistent positions in the two forums.  Id.

Defendants' position in this litigation is generally that it had a reasonable basis for denying or delaying benefits to Mr. Wetch.  The court must compare this position against positions defendants took in prior proceedings.

Mr. Wetch argues first and foremost that the 1994 stipulation represents a concession by defendants that he is entitled to medical benefits.  That position was judicially accepted by the DOL and the circuit court.  But, as already discussed by this court, *supra*, the 1994 stipulation merely provided that Mr. Wetch's right to pursue medical expense benefits in the future was *not impaired by* the stipulation, which provided for a lump sum payment to compensate Mr. Wetch for his inability to work.  See Docket No. 44-1.  The 1994 stipulation is not inconsistent with a later position by defendants that asks whether specific treatments and assistive devices are necessary, suitable, and proper.

Mr. Wetch filed a petition before the DOL on March 25, 2014, seeking a determination of all medical benefits due to him under SDCL § 62-4-1 from 1994 to the present.  See Docket No. 99-14.  Defendants' answer to that petition acknowledged that the 1994 stipulation bound them to pay medical benefits, but defendants asked the DOL to hold a hearing to determine what medical benefits, if any, they owed to Mr. Wetch.  See Docket No. 61-2.  That

48

position is not inconsistent with defendants' current posture that they denied or delayed benefits with a reasonable basis.

Mr. Wetch filed his first motion for partial summary judgment before the DOL and, in response, defendants again acknowledged their liability for pre-1994-stipulation medical expenses, but maintained they had a right to ask the DOL to determine whether post-1994-stipulation medical expenses were necessary, suitable and proper.  See Docket No. 44-15.  Defendants did assert they were 100% responsible for the four items identified as necessary, suitable and proper by Dr. Wojciehoski in his IME report.  Id.  This position was judicially accepted by the DOL in ruling on Mr. Wetch's motion.  See Docket No. 44-16.

Defendants seek to disavow this prior position on the basis of mistake, inadvertence or fraud.  Specifically, defendants assert their concession that they owed Mr. Wetch medical benefit for the four items identified by Dr. Wojciehoski was based on (1) Dr. Goodhope's August 1, 2011, opinion and (2) Dr. Wojciehoski's IME opinion.  Because neither physician knew that Mr. Wetch had fallen in his apartment in 2010 and injured himself sufficiently to lose consciousness and require a trip to the emergency room, the opinions of those doctors are now on uncertain ground.  Defendants' position was, in turn, based on the doctors' two opinions.  Defendants argue that judicial estoppel should not be applied to them under these circumstances due to mistake, inadvertence or fraud.

49

The court agrees.  Viewing the facts and inferences from those facts in the light most favorable to defendants, the record of medical treatments indicates Mr. Wetch went from October, 2006, until sometime shortly after his 2010 fall without receiving medical treatment for which he sought reimbursement from defendants.  Then after his fall, he again sought medical treatment and asked defendants to bear the cost.  It is unknown whether Dr. Goodhope and Dr. Wojciehoski would reach the same conclusions about whether Mr. Wetch's post-fall medical treatment was related to the work injury if they knew about the 2010 fall.  There is sufficient evidence of mistake or inadvertence to give the court pause about exercising its discretion to apply judicial estoppel under these circumstances.

In an Iowa case cited by the South Dakota Supreme Court, judicial estoppel was applied against a workers compensation insurer who admitted the employee's injury was work-related in one proceeding in order to have the right to control the employee's medical care, but then attempted to deny liability in a separate second proceeding.  Winnebago Indus., Inc. v. Haverly, 727 N.W.2d 567, 575 (Iowa 2006).  However, the court emphasized if there had been a significant change in the facts after an admission of liability that could justify a change in the insurer's position, the court might not hold the insurer estopped under such circumstances.  Id.  The court finds such a situation presented by Mr. Wetch's partial summary judgment motion.  There are significant facts which came to light after defendants' admission of liability for the four items such that judicial estoppel should not apply.

Mr. Wetch filed a third motion for partial summary judgment before the DOL.  See Docket No. 99-16.  In response, the DOL recited that defendants represented they would pay "for all necessary and reasonable care prescribed by Claimant's treating physician, where Claimant's July 30, 1991 work injury is a contributing cause.  Employer and insurer acknowledges in their response that the care referenced in Claimant's latest motion is their responsibility."  See Docket No. 44-17 at p. 3.  Of course, defendants would not learn of Mr. Wetch's 2010 fall in his apartment until this lawsuit was filed in October, 2017.  So this position asserted by defendants before the DOL is subject to the same analysis discussed above due to mistake, inadvertence or fraud.  Again, the court declines to judicially estop defendants from arguing herein that they had a reasonable basis for denying or delaying benefits.

In the contempt proceedings before the circuit court, defendants asserted they should not be held in contempt because proceedings before the DOL on Mr. Wetch's petition were ongoing and no final decision by the DOL had yet been issued.  See Docket No. 99-20.  That position is exactly the same position defendants assert herein, so there is no inconsistency.  Moreover, the circuit court did not adopt defendants' position, so there is no "judicial acceptance." See Docket No. 44-19.

Not only has Mr. Wetch failed to establish defendants' position before another tribunal was inconsistent with their position in this lawsuit, he has failed to show that defendants' position was "judicially accepted."  None of the DOL decisions or the circuit court decisions adopted defendants' position with

51

the exception of the original 1994 stipulation.  Therefore, there is not a risk of two contrary decisions being made that lead to the conclusion one or the other tribunal must have been misled.

The court finds that Mr. Wetch has failed to establish all the elements necessary for this court to exercise its discretion and apply the doctrine of judicial estoppel against defendants.  Accordingly, summary judgment for liability should not issue in Mr. Wetch's favor on this basis.

### 6.    Statute of Limitations

Bolstered by its attorney-expert, Garry, defendants argue the application of the three-year statute of limitations in SDCL § 62-7-35.1 bars Mr. Wetch's further claim for benefits and provides a reasonable basis for defendants' denial and delay of benefits.  Section 62-7-35.1 was enacted in 1995.  As indicated above, the law in existence at the time of Mr. Wetch's 1991 injury is the law applicable to his claim for workers compensation benefits.  Sopko II, 2003 S.D. 69, ¶12, 665 N.W.2d at 97.  On this basis alone, the statute of limitations enacted 4 years after Mr. Wetch's injury is not applicable.  The case of Schuelke v. Belle Fourche Irr. Dist., 2013 S.D. 82, ¶1, 840 N.W.2d 669, 670, cited by defendants is inapposite because the employee's injury in that case occurred in 2000, *after* SDCL § 62-7-35.1 had already become the law in 1995.

Furthermore, whether to apply a statute of limitation retroactively depends on whether it is substantive, or whether it is merely procedural; there must be clear legislative intent to apply the statute retroactively.  Sopko II, ¶15, 665 N.W.2d at 98 (statutes affecting procedure may be given retroactive effect

52

while substantive statutes are not to be given retroactive effect); Dahl v. Sittner, 474 N.W.2d 897, 901 (S.D. 1991) (same).

The South Dakota Supreme Court previously determined that another statute of limitations applicable to workers compensation should not apply retroactively.  West v. John Morrell & Co., 460 N.W.2d 745, 747 (S.D. 1990). The West court found the workers compensation limitations statute was substantive because it did not merely affect a remedy or procedure but instead changed the parties' substantive rights.  Id.  West, the employee, suffered a work-related injury in October, 1978, for which employer/insurer provided some benefits.  Id. at 746.  West then filed a petition before the DOL in January, 1986.  Id.

The statute of limitations in effect at the time of injury in 1978, SDCL § 62-7-35, would have clearly barred West's claim:  it required an employee to file a DOL petition within two years of his injury or, if the employer/insurer provided benefits initially, within two years of the last payment received by the employee.  Id.  However, that statute was changed by the time West actually filed his petition in 1986.  Id. at 746-47.  The new version of SDCL § 62-7-35 in effect in 1986 provided for a two year limitations period during which an employee could file a DOL petition, but the limitations period began to run from the date the employer/insurer notified the employee in writing that it was denying his claim in whole or in part.  Id.  If the latter statute of limitations applied, West's petition would have been timely.  Id. at 747.

53

The *West* court noted that the new statute of limitations did not *enlarge* the limitations period—the limitations period under both statutes was two years. Id. Instead, the new statute changed the *triggering event* which *started* the running of the limitations period. Id. Instead of the triggering event being the injury or date of last payment of benefits, the triggering event became the issuance of formal written notice by the employer/insurer that it was denying a claim. Id.

The *West* court noted the general rule that statutes will not operate retroactively unless the legislature expresses a clear intent to do so. Id. The new statute bore no indicia of a legislative intent to make the statute retroactive. Id. The court acknowledged that if a statute merely affects a remedy or procedure, it can be given retroactive effect, while substantive statutes are not applied retroactively. Id. The court held the new statute effected a substantive change upon the employer's rights and could not be given retroactive effect. Id.

Justice Sabers filed a concurring opinion in which Chief Justice Miller joined, clarifying that the reason the new statute of limitations was substantive was because previously, employers had no duty to issue a formal denial of a claim in order to take advantage of the statute of limitations. Id. at 748 (Sabers, J., concurring). Under the new statute, employers were saddled with a new duty, never before known, to issue a formal written denial of a claim in order to have the statute of limitations apply. Id.

54

The same analysis applies here.  Prior to the enactment of § 62-7-35.1, a two-year statute of limitations governed the employee's filing of a petition for benefits, and that two year period began to run upon the employer/insurer's notice in writing that it was denying a claim.  <u>West</u>, 460 N.W.2d at 746-47.  If an employer/insurer provided benefits and never issued a formal written denial of the claim, there was no statute of limitations on the "back end" of the claim.  <u>Id.</u>  Under such circumstances, there was no duty on the employee to act.  As long as the employer/insurer was paying his claim, the employee could count on future medical expenses being paid, even if they occurred long in the future and were unforeseen.

When § 62-7-35.1 was enacted in 1995, it provided an entirely new "back stop" to a claim.  As the South Dakota Supreme Court explained, the new § 62-7-35.1 applies where an employer/insurer provides benefits for an employee's injury "for a period of time, gives no denial notice, and then the matter lies inactive."  <u>Faircloth v. Raven Indus., Inc.</u>, 2000 S.D. 158, ¶8, 620 N.W.2d 198, 201.  If the matter lies inactive for 3 or more years without the employee filing a petition with the DOL, this statute bars consideration of the petition.[16]  <u>Id.</u>

---

[16] Mr. Wetch asserts the triggering event for the commencement of the three-year statute of limitations is not the actual issuance of the last payment to the employee, but rather--when a lump sum payment is reduced to present value--the triggering date is the date the last installment payment would have been made if a lump sum payment had not been made.  <u>Hyatt v. Harvest States Co-op.</u>, 2001 S.D. 5, 621 N.W.2d 369.  In his case, Mr. Wetch asserts the final installment payment would have been made in 2039, so the statute of limitations would not yet have begun to run.  The court need not reach this argument, but notes <u>Hyatt</u> provides additional authority for the conclusion the statute of limitations does not provide a reasonable basis for defendants' actions.

This is a right inuring to the benefit of employers/insurers which did not exist prior to 1995. And, it imposes on the employee a wholly new, previously unknown duty: to file a claim within three years of the last payment received from the employer/insurer if the employee wants to secure the right to be paid for future medical expenses. The court rejects defendants' invitation to apply § 62-7-35.1 to Mr. Wetch's claim retroactively. The statute is substantive, not procedural and there is no legislative intent to apply the statute retroactively.

### 7. Rebuttable Presumption

Defendants argue that the rebuttable presumption that used to appear in SDCL § 62-4-1 provided them with a reasonable basis as a matter of law to deny Mr. Wetch benefits when he failed to seek any medical treatment between October, 2006, and March, 2011, when defendants closed his file. Section 62-4-1 used to provide in relevant part: "If an injured employee has not required medical treatment for a period of three years, it is presumed that no further medical care with respect to the injury is necessary." See Kester v. Colonial Manor of Custer, 1997 S.D. 127, ¶48, 571 N.W.2d 376, 384, reversed on other grounds as recognized in Holscher v. Valley Queen Cheese Factory, 2006 S.D. 35, ¶29 n.1, 713 N.W.2d 555, 564 n.1. The law went on to provide that an employee could rebut the presumption in two ways: by providing documentation from his or her primary treating physician that the medical expenses were work-related or by providing other medical proof rebutting the presumption. Id.

56

The rebuttable presumption does not provide defendants with a reasonable basis for their denial of benefits.  First, Mr. Wetch *did* rebut the presumption when he presented his August, 2011, letter from his treating physician stating that the medical expenses were work-related.  Second, the opinion of defendants' own IME doctor also rebutted the presumption when he opined the (four) medical expenses were work-related.  The court rejects this argument as a basis for denying Mr. Wetch's motion.[17]

### 8.    Right to Unilaterally Reduce Benefits Based on an IME

Defendants resist Mr. Wetch's partial summary judgment motion on the grounds that, prior to the decision in Hayes, the established law allowed an employer/insurer to unilaterally reduce benefits based on the results of an IME.  Defendants cite decisions by the DOL, but none by the South Dakota Supreme Court attesting to this asserted state of the law.[18]

---

[17] The presumption was not in SDCL § 62-4-1 prior to 1993 and appears to have been added that year, then subtracted in 1999.  The Kester court applied the presumption retroactively to the employee's claim in that case, which stemmed from a 1985 work injury.  Kester, at ¶¶2, 48, 571 N.W.2d at 378, 384.  Presumptions—especially rebuttable presumptions--are generally considered procedural, not substantive, so they can permissibly be applied retroactively.  See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 24-27 (1976) (applying retroactively a presumption of death due to coal-related pneumoconiosis to miners' deaths).

[18] Defendants cite Paulino v. Chartis Claims, Inc., 774 F.3d 1161, 1165 (8th Cir. 2014), for the proposition that if an impartial judicial officer informed by adversarial presentation has agreed with the insurer's position," it shows the insurer acted with a reasonable basis in denying benefits.  Paulino is inapposite because the decision rendered by the judicial officer in that case was based on the very parties and the very facts involved in the bad faith action.  Id.  Here, none of the DOL decisions *in Mr. Wetch's case* justify defendants' denial of benefits.  Thus, no impartial judicial officer has agreed with defendants' position on these facts.

The court notes that even if defendants are correct about the state of the law pre-<u>Hayes</u>, they nonetheless acted contrary to established pre-<u>Hayes</u> law in another respect.  When defendants received Dr. Wojciehoski's IME, he opined two things:  (1) he acknowledged that four treatments were appropriate treatments for Mr. Wetch's work related condition (Soma, pull bars, a walker, and a lift chair); and (2) the need for those four treatments was 50% attributable to Mr. Wetch's 1991 work injury and 50% attributable to his pre-existing cerebral palsy.

Under established South Dakota precedent in 1991, Mr. Wetch only had to show that his work injury was **a** "contributing factor" to his need for medical treatment.  <u>Caldwell v. John Morrell & Co.</u>, 489 N.W.2d 353, 357-58 (S.D. 1992).  The current standard for causation requires an employee to prove his work related injury was a "**major** contributing cause" to his need for medical treatment, which is a much higher burden for the employee.  <u>See</u> SDCL § 62-1-1(7)(b).

Under the new, higher standard, if an employee produces a physician's opinion that the employee's work related activities were 50% responsible for his need for treatment, the employee has met his burden to prove by a preponderance of the evidence that his work-related activities were a "**major** contributing cause" of his medical expenses.  <u>Hayes</u>, at ¶27, 853 N.W.2d at 885 (citing <u>Orth v. Stoebner & Permann Const., Inc.</u>, 2006 S.D. 99, ¶¶ 42-49, 724 N.W.2d 586, 596-97).  Of course, that would also satisfy the earlier, lower **a** "contributing cause" standard.

58

Because Dr. Wojciehoski opined that Mr. Wetch's work related injury was 50% responsible for the need for medical treatment, Dr. Wojciehoski's opinion alone mandated that defendants pay 100% of the expenses related to the four treatments approved by him.  Defendants did not pay 100% of the expenses for those four treatments.  Instead, they paid 50% of the cost of the treatments and told Mr. Wetch he was responsible for the other 50% of the cost.  <u>See</u> Docket No. 44-3 at p. 2.

Mr. Wetch submitted bills for the walker and pull bars on November 6, 2013, and asked for reimbursement.  <u>See</u> Docket No. 44-7 at p. 2.  Defendants paid half of the expenses December 3, 2013.  <u>See</u> Docket No. 44-8 at p. 2.

Mr. Wetch submitted a bill for his lift chair and requested reimbursement on March 6, 2014.  <u>See</u> Docket No. 44-11 at p. 2.  Defendants paid half of the expense March 14, 2014.  <u>See</u> Docket No. 44-12 at p. 2.

On November 6, 2015, defendants filed a pleading with the DOL admitting they were responsible for the full cost of the Soma, lift chair, walker and pull bars—the four items identified as compensable by Dr. Wojciehoski. <u>See</u> Docket No. 44-15 at p. 11.  On January 28, 2016, the DOL issued an order directing defendants to pay the full cost of the four items defendants themselves admitted they owed.  <u>See</u> Docket No. 44-16 at p. 8.  Defendants still failed to cough up the other half of the money for these items until December, 2016, and January, 2017.  <u>See</u> Docket Nos. 99-8 at pp. 14-15; 99-9.[19]  This

---

[19] Although defendants tendered a check for the Soma prescription expense in January, 2017, this check was never cashed because of a dispute as to the amount owed.  Defendants issued a second check in a different amount

was 3-4 years after the expenses were incurred and submitted to defendants

and over a year after defendants themselves admitted liability for the full cost

of the four items.

 The fact that defendants obtained an IME does not, by itself, provide a

reasonable basis for defendants' actions because defendants did not act in

accordance with the law and the IME's conclusions.  The court rejects

defendants' assertion that the IME showed they had a reasonable basis for

their actions.

 On the other side of the scale, the court concludes partial summary

judgment should also not issue to Mr. Wetch on the basis of defendants'

handling of the expenses for the four items approved by Dr. Wojciehoski.  There

are two reasons for this.  First, defendants have indicated pursuant to <u>Baier</u>

that they were/are awaiting a final decision of the DOL in order to appeal each

of these piecemeal rulings on partial summary judgment motions.  Second,

defendants' admission was based on Dr. Wojciechowski's IME and that IME is

on uncertain ground now that the fact of Mr. Wetch's 2010 fall has come to

light.

### 9. Reasonable Basis Under Workers Compensation Statutes

 Finally, after fielding the parties' individual arguments based on discrete

doctrines and statutes, the court provides an overview of the analysis of this

---

September 17, 2018, in full payment of the Soma expenses.  <u>See</u> Docket Nos.
99-9, 99-11, and 99-13.  For purposes of analyzing plaintiff's motion, the court
gives nonmovant defendants the benefit of all favorable inferences and credits
defendants with paying for the Soma in January, 2017.

case and Mr. Wetch's partial summary judgment motion.  First, the court points out what is at issue in this lawsuit.  The issue is *not* whether defendants were ultimately liable under their contract and the law, although of course the court must consider that issue.  Mr. Wetch has not asserted a breach of contract claim against defendants.  Instead, the issue is whether there is no genuine dispute of any material fact as to whether (1) defendants had no reasonable basis for denying or delaying payment of medical expenses to Mr. Wetch and (2) whether defendants *knew* they had no reasonable basis for their actions.[20]

The law has long been established that once an employee provides notice to his or her employer, the employer/insurer must provide all necessary, suitable and proper medical care during the employee's period of disability. Streeter, at ¶25, 677 N.W.2d at 226  Hanson, 425 N.W.2d at 399.  Of course, just because an employee has demonstrated a work-related injury does not necessarily mean every means of therapy or medical treatment is compensable. Rather, the law provides only those modalities of treatment that are necessary, suitable and proper are compensable.  See SDCL § 62-4-1.

So the question arises, what if an employee has demonstrated a work-related injury, but the employer/insurer do not believe the medical expense submitted to them is necessary or suitable and proper?  The answer to that question has also been a long-established part of the tapestry of South Dakota

---

[20] Mr. Wetch asserts claims other than bad faith in his amended complaint, see Docket No. 44, but he moves for partial summary judgment only on the bad faith claim.  See Docket No. 59.

workers compensation law:  the treating physician's opinion controls as to what is necessary, suitable and proper.  Streeter, at ¶25, 677 N.W.2d at 226 Hanson, 425 N.W.2d at 399.  Absent any other factors, the employer/insurer is bound by the treating physician's opinion.

If the employer wants to challenge the treating physician's opinion as to medical care, the burden is on the employer/insurer to demonstrate that the care is not necessary, suitable and proper.  Id.  The question that is unclear is *how*?  What is the procedural mechanism for an employer to "shoulder the burden" of proving that certain items of medical care are not necessary, suitable and proper?  The Hayes case answered the procedural question definitively:  an employer/insurer *must* move for a hearing before the DOL pursuant to SDCL § 62-7-33 and prove a change of circumstance.   Hayes, at ¶¶28-30, 853 N.W.2d at 885-86.  This is the *sole* means for an employer/insurer to challenge the compensability of medical expenses submitted to them.  Id.

The question posed before this court, then, is whether Hayes worked a change in the law, or whether the law was always as described in Hayes?  More to the point, was the law so settled at the time defendants denied payment of Mr. Wetch's medical payments in 2012 and continuing until the date of the Hayes decision on August 27, 2014, that defendants' actions were in bad faith? And, post-Hayes, is there an absence of a reasonable basis for defendants' actions following August 27, 2014?  Finally, can the court say as a matter of

law that the evidence conclusively shows defendants *knew* they had no reasonable basis for their actions?

These issues are currently before the South Dakota Supreme Court awaiting decision.  In the case of <u>Johnson v. United Parcel Service, Inc.</u>, 51CIV14-000655 (Oct. 23, 2017), the Honorable Jane Wipf Pfeifle, Circuit Court Judge for the Seventh Judicial Circuit issued partial summary judgment in plaintiff's favor on the issue of whether defendants' denial of workers compensation insurance benefits was "fairly debatable."  <u>See</u> Docket No. 61-1. That issue (among others) is currently on appeal before the South Dakota Supreme Court.  Oral argument was had on February 21, 2019.  <u>See</u> https://ujs.sd.gov/uploads/sc/oralarguements/2019_02_21_28598_28599_28 609.mp3 (last checked April 11, 2019).  <u>See also</u> https://ujs.sd.gov/Supreme_Court/currentterm.aspx (briefs of the parties).

In the <u>Johnson</u> case, the plaintiff's injury occurred in 2000 and the DOL issued an order in 2006 finding there was a compensable injury under worker's compensation law.  <u>Id.</u>  The insurer thereafter obtained an IME and unilaterally discontinued paying benefits to Ms. Johnson.  <u>Id.</u>  The insurer did not, however, request the DOL in writing to review the benefits.  <u>Id.</u>  Ms. Johnson made a motion for partial summary judgment before the circuit court on the issue of liability for bad faith, which motion the circuit court granted as to the first, objective prong of the bad faith test.  <u>Id.</u>  A key issue on appeal is whether the <u>Hayes</u> decision, decided in 2014, was retroactive and whether <u>Hayes</u> changed the law.  <u>Id.</u>

Counsel for Ms. Johnson is the same counsel as for Mr. Wetch and many of the same arguments from this case are being asserted on appeal in the <u>Johnson</u> case. Counsel argues that the fact that the DOL and the South Dakota state courts told Ms. Johnson's employer/insurer they had a duty to pay her medical expenses estops them from asserting they had a reasonable basis for their actions. <u>Id.</u> Counsel for Ms. Johnson argues that the law set forth in <u>Hayes</u> has been the law all along, as evidenced by the <u>Sopko</u> decision and by the text of SDCL § 62-7-33 itself. <u>Id.</u>

This court believes it would be prudent for it to stay its hand on the matter of whether defendants in this case are liable as a matter of law for bad faith under these facts until the South Dakota Supreme Court issues its decision in the <u>Johnson</u> case. Even were the <u>Johnson</u> case not currently pending on appeal, this court would still conclude that summary judgment should not issue to Mr. Wetch on the issue of liability for bad faith.

First of all, liability for bad faith would require the court to issue partial summary judgment in Mr. Wetch's favor on *both* prongs of the test—the objective test and the subjective test, which probes defendants' state of mind. Oral argument in the <u>Johnson</u> case suggests to this court that the South Dakota Supreme Court believes the second subjective prong—the defendants' state of mind--is definitely an issue for the jury. This court agrees. And evidentiary issues abound if the court grants summary judgment on the objective prong while defendants remain free to litigate the subjective prong.

For example, in <u>Johnson</u>, the defendants had obtained the opinion of a well-respected lawyer, a former president of the state bar association, that the obtaining of an IME allowed defendants to deny payment for various medical expenses.  After granting summary judgment on the objective, but not the subjective, prong of the bad faith prima facie case, the circuit court in <u>Johnson</u> was faced with the question as to the admissibility of the lawyer's opinion at trial.  The court "cut the baby in half," allowing testimony that legal advice was sought, but not the substance of that advice.  This is now an issue on appeal in the <u>Johnson</u> case as well.

Even setting aside the evidentiary issues, there is good reason to conclude the law in <u>Hayes</u> is new and not retroactive.  Mr. Wetch asserts the <u>Sopko</u> decisions established the law regarding § 62-7-33 long before <u>Hayes</u> was decided.  The <u>Sopko</u> case involved a man who suffered head injuries at work from an exploding tire in 1974 and applied for and received workers compensation benefits.  <u>Sopko I</u>, at ¶2, 575 N.W.2d at 226.  One aspect of Sopko's head injury was that he suffered seizures, but these ended by April, 1981.  <u>Id.</u> at ¶3, 575 N.W.2d at 227.  Sopko and his employer/insurer settled his workers compensation claim in August, 1981, under terms that purported to waive Sopko's right to reopen his claim in the future.  <u>Id.</u> at ¶4, 575 N.W.2d at 227.  The agreement recited that no permanent injury was sustained.  <u>Id.</u>

Sopko's seizures began to return and steadily increase.  <u>Id.</u> at ¶5, 575 N.W.2d at 227.  He underwent surgery, after which his surgeon opined the seizures were directly attributable to Sopko's work injury.  <u>Id.</u>  Sopko sought to

reopen his workers compensation claim, but the employer/insurer resisted, relying on the terms of the 1981 settlement agreement.  Id.  The South Dakota Supreme Court invalidated that portion of the settlement agreement that purported to waive Sopko's right to reopen his workers compensation claim. Id. at ¶¶8-20, 575 N.W.2d at 229-32.

The court noted SDCL § 62-7-33 provided a statutory exception to the finality of workers compensation awards, whether those awards were adjudicated or stipulated.  Id. at ¶11, 575 N.W.2d at 230.  The court held that "under this statute, the Department has continuing jurisdiction to review 'any payment' when there has been a physical change in the employee's condition from that of the last award."  Id.  The court clarified that "change in condition" meant a change in the claimant's physical condition for better or worse.  Id. at ¶12, 575 N.W.2d at 230.  Where there is no change in condition, the final compensation award is res judicata as to the condition of the employee at the time of the award.  Id. at ¶12, 575 N.W.2d at 231.

Sopko I begs the question presented by the facts of Mr. Wetch's case: what if the employer/insurer has no reason to believe the employee's physical condition has gotten better or worse, but the employer/insurer wishes to "shoulder its burden" under Streeter and Hanson of demonstrating that a medical expense is not necessary, suitable or proper?

After Sopko I, Sopko's estate (Sopko died in 1995) was awarded workers compensation death benefits by the DOL as those benefits were available in 1974, the time of Sopko's initial injury.  Sopko II, at ¶5, 665 N.W.2d at 96.

66

This was significant because in 1974, Sopko did not have a spouse or a child, while he had both at the time of his death in 1995.  Id.  The circuit court reversed the DOL and granted death benefits as of the date of the change in condition, 1993.  Id. at ¶6, 665 N.W.2d at 96.  The South Dakota Supreme Court reversed, holding the death benefits had to be awarded as of 1974 rates of compensation because the law applicable at the date of injury must remain the law applicable to the employee's claim.  Id. at ¶¶9 & 11, 665 N.W.2d at 97.  Regarding § 62-7-33, the court said the statute "only contemplates movements as to the degree of a worker's partial disability," a statement that would seem to indicate the statute did not apply where an employee was permanently totally disabled, as Mr. Wetch is.  Id. at ¶11, 665 N.W.2d at 97.  Reviewing its holding in Sopko I, the court stated "we stated that Sopko experienced a *change in condition* allowing him to reopen his petition pursuant to SDCL 62-7-33."  Id. at ¶16, 665 N.W.2d at 98 (emphasis in original).

Again, Sopko II does not directly answer the question in this case. Section 62-7-33 *allows* an employee who has experienced a change in his physical condition to petition to reopen his workers compensation claim.  That does not dictate that an employer/insurer wishing to challenge a medical expense as not necessary, proper or suitable *must* reopen a case pursuant to § 62-7-33 and only pursuant to that statute.  The court is not convinced that Sopko I or Sopko II established the same proposition as was established in Hayes.

Nor is the court convinced defendants were absolutely as a matter of law on notice of their duty to proceed solely under § 62-7-33 by virtue of the text of that provision.  Section 62-7-33 states in pertinent part, "medical payments . . . *may* be reviewed by the Department of Labor . . . at the written request of the employer . . . and on such review payments may be ended, [or] diminished . . . if the department finds that a change in the condition of the employee warrants such action."  <u>See</u> SDCL § 62-7-33.  First, the language of the statute is permissive—it says "may," not "shall" or "must" or "only."

Second, the review under § 62-7-33 is tied to a change in the physical condition of the employee.  <u>Sopko I</u>, at ¶12, 575 N.W.2d at 230.  Again, until <u>Hayes</u> was decided, this would not seem to dictate that an employer/insurer who has no reason to believe the employee's physical condition has changed, but who wishes to challenge a medical treatment as not necessary, suitable or proper, would be required to proceed exclusively under § 62-7-33.

Section 62-7-12 appears to offer another avenue for contesting discrete medical expenses.  That statute provides if the employee and the employer/insurer cannot reach agreement as to any compensation due under the workers compensation scheme, either of them "may" notify the DOL and request a hearing.  <u>See</u> SDCL § 62-7-12.  Prior to <u>Hayes</u>, a reasonable reading of this statute would seemingly lead to the conclusion an insurer may, but is not required to, request the DOL to hold a hearing if the insurer and the employee do not see eye-to-eye regarding whether a particular medical treatment is necessary, proper and suitable.  <u>See</u> <u>Stukey</u>, at ¶27, 793 N.W.2d

68

at 389 (stating "when [employee] incurs medical expenses in the future,

Employer *may* reimburse her or challenge the expenses as not necessary or

suitable and proper under SDCL 62-7-33.") (emphasis added).

Finally, the court notes that now SDCL § 62-4-1.1 sets forth a procedure

for an employer/insurer to follow if medical bills are submitted to it that it

believes are not necessary, suitable or proper.  Section 62-4-1.1 was passed in

2008, so it was not in effect in 1991 when Mr. Wetch was injured.  However, if

the statute is procedural, it may be given retroactive effect.  Sopko II, at ¶15,

665 N.W.2d at 98-99.  The court notes that in the first DOL opinion issued in

Mr. Wetch's reopened case, the DOL stated that § 62-4-1.1 "permits an

employer/insurer to decline individual bills as not compensable."  See Docket

No. 44-16 at p. 7 (p. 6 of opinion) (citing an unpublished 2012 circuit court

opinion from then-circuit court judge Mary Thorstensen).  The South Dakota

Supreme Court has not addressed whether § 62-4-1.1 is procedural or

substantive.  It could provide additional grounds upon which defendants'

actions could be considered reasonable.

The court concludes the Hayes decision either created new law or greatly

clarified the law that existed.  The South Dakota Supreme Court has found bad

faith can occur even when the coverage issue is an issue of first impression if

the statutes or contract leading to coverage are not "fairly debatable."

Bertelsen I, at ¶20-21, 764 N.W.2d at 500.  However, the court has also found

no bad faith as a matter of law where the law was unclear or undeveloped.

Mudlin, at ¶¶7-15, 742 N.W.2d at 51-54 (where South Dakota had not

addressed the going-and-coming rule in the context of a work injury incurred while an employee was enroute to or from the construction job site). Here, the court finds the confluence of Sopko I, Sopko II, and §§62-4-1.1, 62-7-12, and 62-7-33 was sufficiently unclear prior to Hayes to create a genuine issue of material fact as to defendants' legal path when wishing to challenge Mr. Wetch's medical treatment as being necessary, proper or suitable.

As for post-Hayes conduct by defendants, the waters are muddied by two things. Mr. Wetch claims defendants had no right to disobey lawful orders of the DOL. But defendants did have the right to preserve their right to appeal the piecemeal DOL decisions once Mr. Wetch's petition was finally decided—a matter not yet concluded even now. In addition, the undisclosed 2010 fall also casts doubt on whether defendants would have made the admissions they did before the DOL. For all these reasons, the court recommends denying Mr. Wetch's motion for partial summary judgment.

## CONCLUSION

Based on the foregoing law, facts, and analysis, it is respectfully recommended that Mr. Wetch's motion for partial summary judgment on both prongs of the bad faith test [Docket No. 59] should be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED April 16, 2019.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge