UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAVID WETCH,<br><br>               Plaintiff,<br><br>     vs.<br><br>CRUM & FORSTER COMMERCIAL INS.,<br>NORTH RIVER INSURANCE COMPANY,<br>and UNITED STATES FIRE INSURANCE<br>COMPANY,<br><br>             Defendants. | 5:17-CV-05033-JLV<br><br><br>ORDER GRANTING DEFENDANTS'<br>MOTION TO COMPEL<br><br>Docket No. 150 |

**INTRODUCTION**

This matter is before the court on plaintiff David Wetch's amended

complaint. See Docket No. 44. After several rounds of motions, the claims

allowed to go forward are Mr. Wetch's claim that defendants failed in bad faith

to timely provide worker's compensation insurance benefits, defendants

intentionally inflicted emotional distress on Mr. Wetch, a Medicare secondary

payer action, and conversion. See Docket Nos. 44, 120 & 156. Mr. Wetch

seeks compensatory and punitive damages for these claims. See Docket

No. 44. Now pending is a motion to compel answers to Interrogatory Nos. 9 &

10 by defendants. See Docket No. 150. Mr. Wetch resists the motion. See

Docket No. 157. This case has been referred to this magistrate judge for

pretrial management by the Honorable Jeffrey L. Viken, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) & (B).  See Docket No. 75.

**FACTS**

After three rounds of Rule 12 motions to dismiss, and cross-motions for partial summary judgment from both Mr. Wetch and the defendants, the facts are well known to the court.  The below recitation of facts is a skeletal outline of just those facts necessary to give framework to the resolution of the pending discovery motion.  Should the reader desire a fuller recitation of facts, reference is made to the court's orders at Docket Nos. 82, 131 & 142.

Mr. Wetch suffered a work-related injury on July 30, 1991, for which defendants have paid him disability benefits and medical expenses pursuant to a policy of workers compensation insurance issued by them to Mr. Wetch's then-employer.  After Mr. Wetch brought a bad faith action in 1992, for delayed or denied benefits, the parties settled the claim and defendants agreed to pay Mr. Wetch a lump-sum of money for permanent total disability benefits, reduced to present value, on November 8, 1994.

Between February, 1992, and January, 2007, defendants paid various medical expenses incurred by Mr. Wetch related to his work injury, none of which are in issue in this case.  Then, between October, 2006, and March 9, 2011, Mr. Wetch made no requests for any medical expense payments. Defendants closed Mr. Wetch's claim file.

Mr. Wetch then suffered an injury at home that resulted in his loss of consciousness temporarily.  Thereafter, on August 1, 2011, Mr. Wetch's

treating physician requested that defendants re-open Mr. Wetch's claim file and resume paying Mr. Wetch's then-ongoing medical payments. Mr. Wetch alleges that defendants have failed to pay, or delayed paying, medical benefits during this period after March 9, 2011. There has been a multitude of allegations and pleadings in this court, before the South Dakota circuit court, and before the South Dakota Department of Labor regarding defendants' obligations to Mr. Wetch regarding various workers compensation benefits.

This motion to compel concerns the following two interrogatories and Mr. Wetch's responses thereto:

> **<u>INTERROGATORY NO. 9:</u>** Identify and describe in detail each and every instance you assert was an unreasonable denial of benefits by Defendants, including the specific first aid, medical, surgical, and hospital services, or other suitable and proper care including medical and surgical supplies, apparatus, artificial members, and body aids prescribed and the dates Defendants were notified of each prescription.

> **<u>ANSWER:</u>** OBJECTION: See Objections to Interrogatories 2, 4, and 7. The interrogatory is unduly broad, and overly burdensome; attorney work-product. Worker's compensation benefits are to be determined in the Department of Labor proceedings. Defendants failed to seek or exhaust their administrative remedies when they failed to provide benefits when prescribed or when they failed to seek relief before the Department of Labor under SDCL 62-7-33. It appears that the Defendants misunderstand the law and the procedural requirements pertaining to these issues and are attempting to have issues reserved for the jurisdiction of the South Dakota Department of Labor resolved in the federal proceeding. Moreover, denials have been addressed through workers' compensation proceedings and contempt actions where the Defendants' liability and obligation to pay has been established. Defendants can just as easily compile this information from the records; a list of such documents or care is attorney-work product. Moreover, the Amended Complaint identifies care denied by the Insurer. In addition to the issues outlined in Objection to Interrogatory No. 7, and to briefly illustrate Defendants' possession of these documents:

[there follows a list of 12 specified items or categories of benefits Mr. Wetch alleges defendants either denied or delayed payment for]

Defendants are aware of and have control of documents relating to their failure to provide benefits, or unreasonable delay, and subsequent payments, as discussed and established by the South Dakota Department of Labor and the Seventh Judicial Circuit Court. Defendants' request for repeated itemization is unduly burdensome and simply designed to harass. These issues have been addressed in other proceedings, or are a result of the Defendants' failure to investigate and address these issues in other proceedings. Moreover, Defendants have submitted payments on various items in the past year, which identifies the basis for payment and description of care. Defendants are aware of when, why, and how they made payments for such care. It is unreasonable and unduly burdensome to require Plaintiff or his attorneys to do Defendants' work for them or to simply reiterate Defendants' prior admissions and the prior prescriptions of Plaintiff's medical providers, which were approved by the South Dakota Department of Labor. Moreover, this Interrogatory attempts to elicit Plaintiff's attorney's theories and assessments of the case. For example, this Interrogatory appears to elicit legal opinions and theories because it presupposes that the Insurer could deny care unilaterally, without following SDCL 62-7-33 and the law of the state of South Dakota. As such, objection is made on the basis of res judicata, collateral and judicial estoppel, the failure to exhaust administrative remedies (Zuke v. Presentation Sisters), SDCL 62-4-1, 62-7-33. *See generally*, Plaintiff's Motion for Partial Summary Judgment (Dockets 59-62). Please also review the correspondence of T.J. Von Wald, dated May 15, June 7, July 19, 2018, and the correspondence of Mr. Jeffery D. Collins, dated July 25, 2018. Please also see correspondence dated January 20, 2016 to Mr. Travis and Mr. Hoier, noting payments and receipts. Defendants are well aware of the issues and the payments made. Please see all records previously provided in this case, in the worker's compensation proceedings, and in the contempt proceedings, which documents are in the possession or control of the Defendants.

Without waiving said objections:

Beginning in 2011, items were being prescribed by Dr. Goodhope, but not being provided and/or paid for by the insurer. Alanna Turnbaugh was submitting receipts and prescriptions to Crum & Forster, on my behalf, but we did not receive full payments or

reimbursements until much later, after orders from the Department of Labor. The insurer denied 50% of some of the care and all of the rest. Some of the prescriptions weren't even addressed by the insurer in their responses.

Each and every time Defendants failed to pay, provide, or investigate the submitted medical prescriptions and bills was an unreasonable denial or delay action, including delay in the payment or processing. I had to go to the South Dakota Department of Labor to address these issues and to have the Department address what care needed to be provided. The failure to pay or provide the care admitted in response to the First, Second, Third, and Fourth Motions for Partial Summary Judgment was unreasonable. The delay in approving referrals, referred to in the Second Motion for Partial Summary Judgment was unreasonable. The insurer admitted it owed the remaining 50% of some of the payments, but didn't pay the 50% reimbursements until they were held in contempt by Judge Davis. The Department of Labor entered decisions in 2016-2018. Those documents explain what happened better than I can. The Amended Complaint sets out the history and denials.

Dr. Goodhope prescribed a case manager to assist me with obtaining care, because I can't get this care on my own. This prescription was approved by the Department of Labor in the First Motion for Partial Summary Judgment. The case manager was not provided for a long time. That made it really hard, because I can't do this myself. On Easter weekend of 2018, I was provided with aides to assist me, who were provided by the insurer. I had obtained some of this aid in the past through public assistance programs, including rent assistance and other care workers. I still have not been provided suitable living accommodations, even though the insurer admitted it had to provide me this care.

**INTERROGATORY NO. 10:** Identify and describe in detail each and every instance you assert was an unreasonable delay of benefits by Defendants, including the specific first aid, medical, surgical, and hospital services, or other suitable and proper care including medical and surgical supplies, apparatus, artificial members, and body aids prescribed, and the dates Defendants were notified of the prescription, and the date payment was made.

**ANSWER:** OBJECTION: See Objections to Interrogatories 2, 4, 7, and 9. Defendants are asking Plaintiff to organize the case for them and provide Plaintiff's attorneys' theories and approaches to the case. This is not discoverable as attorney work-product.

Moreover, these issues have been addressed before the South Dakota Department of Labor and the Seventh Judicial Circuit Court. Defendants have failed to exhaust their administrative remedy in the forum with jurisdiction to hear these issues. These issues are identified and documented in the Amended Complaint and attached documentation.

Without waiving these objections: Please see the answer to Interrogatory No. 9. An unreasonable delay of benefits began when I started seeing Dr. Goodhope again in 2011. He prescribed walkers, handrails, a lift chair, TENS unit, a life assessment, and Cymbalta and SOMA medications, and other care. A number of these items were delayed by requiring me to pay the full amount and then seek reimbursement for 50%. I had to get help from my family to pay for the care. I had to go to the Department of Labor to get my prescriptions filled and provided. I had to pay out of pocket. Later, Defendants admitted they couldn't have this reduction/denial, and that they were responsible 100%. Even though they admitted it, and the Department of Labor ordered it, Defendants did not pay the remaining 50% of the denied bills, or the other stuff they were ordered to pay by the life needs plan and the Form 485. I had to go to circuit court. Even then, some of the care wasn't provided or paid. A third and fourth decision came out from the Department requiring the insurer to pay. This delay was entirely unreasonable.

Payments were made by the insurer in 2017 for some of the 50% reimbursements. But the Soma and other bills weren't paid until 2018. More payments were received in 2018, around the time of the fourth letter decision, for reimbursements of other care I received along the way. I still am not in a fully handicapped accessible apartment. A number of other items were delayed as well. *See* Answer to Interrogatory No. 7 in Plaintiff's Objections, Answers, and Responses to Defendant United States Fire Insurance Company's First Set of Interrogatories and Requests for Production to Plaintiff. I got a life needs assessment from Linda Graham, that Dr. Goodhope had prescribed and then approved. The Department of Labor ordered the insurer to provide that care. But it didn't. It has taken a long time to get that care provided, even after the Department approved the care again at the end of 2016. In 2018, we filed again with the Department because the insurer wasn't getting me care they agreed to provide. After that, the insurer started paying what was owed, including medications, aides, a van, and other care. The Amended Complaint sets out the history and delays.

<u>See</u> Docket No. 152-2 at pp. 2-5.

Defendants move to compel Mr. Wetch to provide "full answers" to these two interrogatories and to overrule his objections to the discovery. <u>See</u> Docket No. 150.  Mr. Wetch resists the motion.  <u>See</u> Docket No. 157.

## DISCUSSION

### A.      Meet and Confer Requirement

Both the Federal Rules of Civil Procedure and this district's local rules of procedure require that parties meet and confer in an attempt to resolve discovery disputes before filing discovery motions.  <u>See</u> Fed. R. Civ. P. 37(a)(1); DSD LR 37.1.  A certification must be part of any discovery motion and the certification must show that a good-faith effort was made to resolve disputes before filing the motion.  <u>Id.</u>  Defendants outlined their efforts to discuss Mr. Wetch's responses to Interrogatory Nos. 9 & 10 with Mr. Wetch's counsel, both in writing and via telephone.  Mr. Wetch does not take issue with defendants' satisfaction of this condition precedent.  Therefore, the court turns to the merits of the dispute.

### B.      Scope of Discovery Under the Federal Rules

Rule 1 of the Federal Rules of Civil Procedure instructs that the civil procedure rules are intended to "secure the just, speedy, and inexpensive determination of every [civil] action and proceeding" in United States district courts.  <u>See</u> Fed. R. Civ. P. 1.  The remaining 85 rules are to be interpreted in light of the command set forth in Rule 1.  <u>Id.</u>

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B) *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.

> (C) *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

>> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See FED. R. CIV. P. 26(b)(2)(B) and (C).  A party claiming a privilege as to

requested discovery has the burden of proving the basis for the application of

the privilege:

> When a party withholds information otherwise discoverable by
> claiming that the information is privileged or subject to protection
> as trial-preparation material, the party must:
>
> (i)     expressly make the claim; and
>
> (ii)    describe the nature of the documents,
>         communications, or tangible things not produced or
>         disclosed--and do so in a manner that, without
>         revealing information itself privileged or protected, will
>         enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).  If a party fails to respond to a proper request for

discovery, or if an evasive or incomplete response is made, the party requesting

the discovery is entitled to move for a motion compelling disclosure after having

made a good faith effort to resolve the dispute by conferring first with the other

party.  See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles

A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37

(1970) (hereinafter "Wright & Miller").  The reason for the broad scope of

discovery is that "[m]utual knowledge of all the relevant facts gathered by both

parties is essential to proper litigation.  To that end, either party may compel

the other to disgorge whatever facts he has in his possession."  8 Wright &

Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct.

385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between

discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and

9

33(a)(2). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See FED. R. CIV. P. 26(b)(1) advisory committee's note. Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the

proposed discovery outweighs its likely benefit…" See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden--that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate.  See In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); Alexander v. Parsons, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and Burns, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection).  Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable.  See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960) and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

## C.    Defendants' Requests Are Relevant

Jurisdiction in this matter is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000.  See 28 U.S.C. § 1332.  In diversity cases, the substantive law of the state—here, South Dakota law—applies to determine the rights and obligations of the parties while federal rules of procedure are applied.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938); In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010).

To prove a bad faith cause of action against defendants, Mr. Wetch must show (1) defendants had no reasonable basis for denying or delaying his claim for insurance benefits, and (2) defendants acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial or delay of benefits.  See Bertelsen v. Allstate Ins. Co., 2013 S.D. 44, ¶17, 833 N.W.2d 545, 554 ("Bertelsen III");[1] Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶18, 619 N.W.2d 644, 649.  Nonpayment or delay in payment of benefits is not sufficient in and of itself.  There must also be a lack of a reasonable basis for the denial/delay and knowledge or recklessness by the insurance company that it lacked a reasonable basis for denial or delay.  Id.

The interrogatories at issue posed by defendants merely ask Mr. Wetch to identify what specific items of care defendants either failed to pay, or delayed

---

[1] Bertlesen III was abrogated on other grounds in Manger v. Brinkman, 2016 S.D. 50, ¶12 & n.7, 883 N.W.2d 74, 80.  The ground for abrogation was the appropriate standard of review on appeal of a circuit court's grant or denial of a motion for judgment as a matter of law at the conclusion of a trial.  Id.

paying, on which Mr. Wetch bases his bad faith claim. This is at the core of relevance given the claims Mr. Wetch has asserted. Because the discovery is relevant, the burden in on Mr. Wetch to demonstrate grounds for resisting the discovery. <u>Penford Corp.</u>, 265 F.R.D. at 433; <u>St. Paul Reinsurance Co.</u>, 198 F.R.D. at 511.

**D.     Mr. Wetch's Objections**

**1.     Already Provided**

Mr. Wetch's page-and-a-half objections to Interrogatory Nos. 9 & 10 make a mockery of Rule 1's command for just, speedy and inexpensive litigation. Rather than slog through some of the clearly spurious assertions made by Mr. Wetch's counsel, the court will address only those objections taken up by Mr. Wetch in his response in opposition to defendants' motion to compel. <u>See</u> Docket No. 157. The remaining objections stated in the responses to the interrogatories are overruled as baseless or waived.

The primary objection Mr. Wetch asserts is that he should not have to provide an itemized statement of delayed or denied insurance benefits in support of his bad faith claim because he has already done that in the 12 items listed in response to Interrogatory No. 9 and the 44 items listed in response to an earlier interrogatory, Interrogatory No. 7. <u>See</u> Docket No. 158-1 at pp. 6-10. However, the court notes that Mr. Wetch hedged his response to Interrogatory No. 7 by stating "here is a *partial* list of services and identifying information . . ." <u>See</u> Docket No. 158-1 at p. 6 (emphasis added). Mr. Wetch also indicated both lists in response to both interrogatories was illustrative

15

only.  Id.; see Docket No. 152-2 at pp. 2-3.  Otherwise, Mr. Wetch informs

defendants they can do this work themselves by referring to the medical

records in their possession and Mr. Wetch's life care plan.  Id.

But not every medical expense Mr. Wetch sought payment for and failed

to receive is necessarily the basis of his bad faith claim.  "[A]n insurance

company may challenge claims which are fairly debatable and will be found

liable only where it has intentionally denied (or failed to process or pay) a claim

without a reasonable basis."  Bertelsen III, at ¶17, 833 N.W.2d at 554 (cleaned

up).  Whether the insurer acted in bad faith is based on "the facts and law

available to [the insurer] at the time it made the decision to deny coverage."  Id.

(quoting Dakota, Minnesota & Eastern R.R. Corp. v. Acuity, 2009 S.D. 69, ¶17,

771 N.W.2d 623, 629).

When this case goes to jury trial, Mr. Wetch and his counsel are going to

have to stand up in front of a jury and identify what items of care that

defendants denied or delayed payment of form the basis of his bad faith claim.

As a necessary corollary, Mr. Wetch may have to sort out all the items of

medical care potentially at issue and determine which he will base his claim on

and which he will not, given the above legal standard.  That is all defendants'

interrogatories ask him to do.  Because of the qualifiers surrounding

Mr. Wetch's responses to Interrogatory Nos. 7 & 9, the court declines to accept

those answers as a complete recitation of the clearly relevant information called

for by Interrogatory Nos. 9 & 10.  If the information changes over time--for

example, if some bases now asserted by Mr. Wetch in support of his claim are

16

discarded later and perhaps others not listed now are subsequently adopted-- the rules contemplate that a party's answers to discovery requests may be supplemented and amended to take into account changing facts and circumstances.  See FED. R. CIV. P. 26(e)(1) (after responding to an interrogatory, party may timely supplement or correct its response if it learns that the response is incomplete, incorrect, or if additional information is obtained that is not otherwise known to the other parties).

### 2.    Attorney Work Product

A second objection Mr. Wetch asserts to these interrogatories is that they call for "ordinary" work product.  See Docket No. 157 at p. 7.  When a case rests on a federal court's grant of diversity jurisdiction, although *state privilege law* applies as to an assertion of attorney-client privilege, *federal law* governs the assertion of work product doctrine as a barrier to discovery.  PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002); Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) (*en banc*).  The work product doctrine was first established in Hickman v. Taylor, 329 U.S. 495 (1947).  The court established the rule to prevent "unwarranted inquiries into the files and mental impressions of an attorney."

Rule 26 of the Federal Rules of Civil Procedure codifies the work product doctrine in federal courts:

(b)(3)  *Trial Preparation:  Materials.*

(A)  *Documents and Tangible Things*.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant,

surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

> (i) they are otherwise discoverable under Rule 26(b)(1); and

> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

\* \* \* \*

(5) ***Claiming Privilege or Protecting Trial-Preparation Materials.***

(A) *Information Withheld.*  When a party withholds information otherwise discoverable by claiming that the information is . . . subject to protection as trial-preparation material, the party must:

> (i) expressly make the claim; and

> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(3)(A) & (5)(A).

Work product falls into two categories:  "ordinary" and "opinion." Baker, 209 F.3d at 1054.  Ordinary work product includes raw factual information.  Id.  Opinion work product involves an attorney's "mental impressions, conclusions, opinions or legal theories."  Id.

A party seeking discovery of ordinary work product may overcome the doctrine by showing they have a substantial need for the materials and they cannot obtain the materials or their substantial equivalent by other means.  Id.  Opinion work product, however, enjoys almost total immunity; it can be discovered only in "very rare and extraordinary

circumstances" as when the "attorney engaged in illegal conduct or fraud." Id.

The party resisting discovery must show that the materials were prepared in anticipation of litigation. PepsiCo, Inc., 305 F.3d at 817; FED. R. CIV. P. 26(b)(5)(A). Furthermore, that same party must "describe the nature of the documents, communications, or tangible things not produced or disclosed" with sufficient detail to "enable other parties to assess the claim." See FED. R. CIV. P. 26(b)(5)(A).

Here, Mr. Wetch did not provide a privilege log and makes only a bare reference to the work product doctrine in his brief. See Docket No. 157 at p. 7. The burden is on him to demonstrate the lists called for in Interrogatory Nos. 9 & 10 were "prepared in anticipation of litigation" and to describe those items in sufficient detail to enable the court and defendants to assess his claim of work product privilege. Mr. Wetch fails to carry this burden.

Mr. Wetch's brief in opposition to the motion to compel incorporates by reference a March 22, 2019, letter his counsel wrote to defendants' counsel on the same subject. See Docket No. 152-4. That letter also fails to establish the existence of work product privilege. In it, counsel asserts it is not required to provide "summaries, correlation, and preparation of tables." Id. But Interrogatory Nos. 9 & 10 do not ask Mr. Wetch to provide spreadsheets, tables or the like. They simply ask him to identify which among the very large number of insurance benefits Mr. Wetch alleges he is entitled to form the basis of his bad faith claim. For reasons discussed above, not every insurance

benefit denied or delayed is necessarily bad faith. Mr. Wetch must show the insurer had no reasonable basis for the denial or delay and acted with knowledge that it had no reasonable basis. Mr. Wetch, as the master of his claim, is in charge of identifying which denials and delays are the bases of his bad faith claim.

Assuming Mr. Wetch had established that merely listing the denied/delayed insurance benefits which underpin his bad faith claim is "ordinary" work product, the defendants assert they have special need for the information which they cannot obtain elsewhere. Specifically, defendants assert various insurance benefits were, at one time, asserted by Mr. Wetch as a basis for bad faith, only to be withdrawn later. Defendants assert that Mr. Wetch previously asserted the entirety of each element Linda Graham's life care plan not met by defendants was an element of his bad faith claim, but that claim was seemingly withdrawn by Mr. Wetch's treating physician, Dr. Goodhope, when he testified at deposition that only those items on the life care plan *for which Dr. Goodhope issued a prescription* were considered by him to be necessary and proper.

Again, defendants assert Mr. Wetch once included unmet hydrotherapy benefits from the life care plan as an element of his bad faith claim, but ultimately his therapists did not prescribe that therapy, so it apparently is not now a basis of Mr. Wetch's bad faith claim. Defendants assert they cannot ascertain what denied or delayed insurance benefits Mr. Wetch bases his bad faith claim on unless Mr. Wetch himself identifies those insurance benefits.

The court agrees.  To the extent the list of items can constitute ordinary work product, defendants have succeeded in showing a substantial need for the items.

Mr. Wetch also argues that defendants can obtain the information from other sources—he points to numerous affidavits of defendants' own employees listing insurance benefits rendered to Mr. Wetch and the dates thereof.  Again, however, not every insurance benefit denied or delayed will necessarily form the basis of Mr. Wetch's bad faith claim.  Only those insurance benefits as to which Mr. Wetch feels he can show defendants denied or delayed with knowledge that they had no reasonable basis to deny or delay can be the basis of a bad faith claim.  Therefore, a compilation by defendants' employees of all insurance benefits paid to Mr. Wetch under the workers compensation policy does not suffice.  The court concludes work product doctrine does not shield Mr. Wetch from providing the requested discovery.

Having said that, if Mr. Wetch believes the 56 items identified in his responses to Interrogatory Nos. 7 & 9 are a complete and comprehensive list of the bases of his bad faith claim, he need only provide a clarifying answer to the interrogatories, under oath, establishing that the list is comprehensive, not merely "illustrative" or "partial."  However, if there are other items that should be disclosed as responsive to the interrogatories, he must identify them.

### 3.    South Dakota Worker's Compensation Law

Mr. Wetch argues he has no duty under South Dakota worker's compensation law to identify the items requested in the two interrogatories

because South Dakota's workers compensation scheme puts the burden on defendants to bring action before the Department of Labor to clarify or determine these items.

This court reminds Mr. Wetch that this forum is not the Department of Labor. The interrogatories do not concern defendants' duty under workers compensation law. This is a civil lawsuit pending in federal court in which a bad faith claim has been asserted. Among all the items that might or might not be payable as workers compensation benefits, *Mr. Wetch—as the plaintiff with the burden of proof in this matter*—must state what the basis of his bad faith claim is.

**4.    Res Judicata**

Mr. Wetch asserts he need not provide the requested interrogatory answers because the issue of whether defendants owe or do not owe him workers compensation insurance benefits is res judicata. The court discussed this argument at length in its ruling on the parties' partial summary judgment motions and rejected the argument, as well as the related estoppel argument. See Docket No. 131 at pp. 38-52. Those prior rulings by the court are incorporated by reference herein. The court will not revisit its prior ruling. Res judicata is rejected as a basis for Mr. Wetch to resist clearly relevant discovery requests.

**CONCLUSION**

Based on the foregoing law, facts and analysis, the court grants defendants' motion to compel [Docket No. 150] in its entirety. Mr. Wetch must

22

file responses to both Interrogatory Nos. 9 & 10 clarifying whether he has (in the 56 items already identified) provided a complete and comprehensive list of the bases for his claim that defendants denied or delayed paying workers compensation insurance benefits to him in bad faith. If there are denied or delayed insurance benefits in addition to this list of 56 items, he must disclose them in response to defendants' interrogatories. Mr. Wetch's response shall be served on defendants within 21 days of the date of this order unless objections to this order are timely lodged with the district court.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED October 29, 2019.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge