UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAVID WETCH,<br><br>                 Plaintiff,<br><br>   vs.<br><br>CRUM & FORSTER COMMERCIAL<br>INS.; NORTH RIVER INSURANCE<br>COMPANY; and UNITED STATES FIRE<br>INSURANCE COMPANY,<br><br>             Defendants. | CIV. 17-5033-JLV<br><br><br>ORDER |

## INTRODUCTION

United States Magistrate Judge Veronica L. Duffy filed a report and recommendation ("R&R"). (Docket 131). Both parties filed objections to the R&R. (Dockets 136 & 137). Both parties also filed responses to the opposing party's objections. (Dockets 143 & 144).

For the reasons given below, defendants' objections are sustained in part and overruled in part and plaintiff's objections are sustained in part and overruled in part. The court adopts in part, rejects in part and modifies in part the R&R consistent with this order.

## ANALYSIS

Defendants' objections to the R&R are summarized as follows:

1.    The R&R erroneously concluded, based on Dr. Wojciehoski's opinion, that the defendants " 'acted contrary' to pre-Hayes[1] law." (Docket 136 at pp. 2-3).

---

[1]Hayes v. Rosenbaum Signs & Outdoor Advertising, Inc., and Acuity, 853 N.W.2d 878 (S.D. 2014).

2. The R&R erroneously concluded the statute of limitations was not debatable at the time of defendants' "decision to delay or deny medical benefits." Id. at pp. 3-4.

3. The R&R erroneously fails to acknowledge the rebuttable presumption of SDCL § 62-4-1 is a question of fact. Id. at pp. 4-5.

4. The R&R erroneously fails to acknowledge that the materiality issue is a question of fact. Id. at pp. 5-6.

5. The R&R "unfairly minimizes" defendants' assertions regarding plaintiff's claim for hydrotherapy expenses and its effect on the question of bad faith. Id. at pp. 6-7.

Plaintiff's objections to the R&R are summarized as follows:

1. The R&R misinterpreted the stipulated agreement. (Docket 137 at pp. 1-7).

2. The R&R misinterpreted South Dakota's worker's compensation procedure. Id. at pp. 7-12.

3. The R&R "errs in its analysis of the 'retroactive effect' of Hayes." Id. at pp. 12-14.

4. The R&R misinterpreted the defendants' denial letter. Id. at pp. 14-15.

5. The R&R "errs by considering [defendants'] arguments that reject the rulings of the DOL[2] and the Circuit Court.[3]" Id. at pp. 15-17.

---

[2]The South Dakota Department of Labor, Division of Labor and Management ("DOL").

[3]The Seventh Judicial Circuit Court, Pennington County, South Dakota ("Circuit Court").

6.     The R&R "errs by failing to distinguish between the [DOL's] orders' 'effectiveness,' 'appealability,' and 'finality.' " Id. at pp. 17-22.

7.     The R&R "errs by failing to consider the preclusive effect of res judicata and collateral estoppel as they relate to the Order of Contempt." Id. at pp. 22-23.

8.     The R&R "errs by failing to apply judicial estoppel to the Defendants' representations before the DOL on the fourth Motion for Partial Summary Judgment." Id. at pp. 23-24 (emphasis omitted).

9.     The R&R "errs by failing to apply res judicata, collateral estoppel, or judicial estoppel to the decisions and payments of the Subsequent Injury Fund." Id. at pp. 24-26.

10.     The R&R "makes clearly erroneous findings of fact relating to Dr. Goodhope's opinions." Id. at pp. 26-27.

11.     The R&R misinterpreted and misapplied the January 28, 2016, Order. Id. at pp. 27-28.

12.     The R&R fails to evaluate the defendants' denials of benefits "given the facts and law available to the Defendants 'at the time' of the denial, delay, or failure to process or pay." Id. at pp. 28-29.

13.     The R&R misinterpreted and misapplied plaintiff's Due Process Clause arguments. Id. at pp. 29-31.

14.     The R&R "errs in its analysis of Herr v. Dakotah, Inc.[4]" Id. at pp. 31-32.

15.     The R&R "fails to consider the legal implications of Defendants' Motion to Dismiss the proceedings before the Circuit Court." Id. at p. 32.

---

[4]Herr v. Dakotah, Inc., 613 N.W.2d 549 (S.D. 2000).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Fed. R. Civ. P. 72 further clarifies the court's role when objections are made to a R&R. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The court will resolve the parties' objections in the manner deemed most efficient.[5]

SOUTH DAKOTA WORKERS' COMPENSATION

The R&R summarized the format by which workers' compensation claims are presented, resolved and finalized.[6] (Docket 131 at pp. 22-27). However, the court finds it is necessary for the clarity of this order to revisit the South Dakota's workers' compensation system. Because plaintiff's claims address

---

[5]In the heading for each objection, the court will omit the quotation marks, brackets and citations to the record.

[6]While different entities refer to "workers' compensation" or "worker's compensation" the court will refer to the singular, "worker's compensation" when discussing Mr. Wetch's case.

his entitlement to medical benefits, the court will focus on those specific benefits without intending to minimize or diminish the benefits for a permanent, total disability claim.[7]

An employee who suffers a work-related injury is entitled to be provided by the insurer with the "necessary first aid, medical, surgical, and hospital services, or other suitable and proper care including medical and surgical supplies, apparatus, artificial members, and body aids during the disability or treatment of an employee within the provisions of [Title 62]."  SDCL § 62-4-1.  That section further provided at the time of Mr. Wetch's original injury that "[i]f an injured employee has not required medical treatment for a period of three years, it is presumed that no further medical care with respect to the injury is necessary."  Kester v. Colonial Manor of Custer, 571 N.W.2d 376, 384 (S.D. 1997) (citing SDCL § 62-4-1) *abrogated on other grounds*, Holscher v. Valley Queen Cheese Factory, 713 N.W.2d 555 (S.D. 2006).   "It is important to note, however, that SDCL 62-4-1 allows an employee to rebut the presumption by two methods: 'Documentation that the injury is work related by the primary treating or rating physician after three years shall automatically rebut the

_____

[7]Even though South Dakota's statutory plan may identify either an "employer" and an "insurer" or both, the court will address the worker's compensation obligations of the employer and insurance carrier by referencing only the "insurer" from this point forward in this order.

presumption. . . . [T]he claimant may [also] present other medical proof to rebut the presumption.' " Id.

"It is in the doctor's province to determine what is necessary or suitable and proper. *When a disagreement arises as to the treatment rendered or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.*" Streeter v. Canton School District, 677 N.W.2d 221, 226 (S.D. 2004) (emphasis in original) (citing Krier v. John Morrell & Co., 473 N.W.2d 496, 498 (S.D. 1991)). See also Hanson v. Penrod Construction Co., 425 N.W.2d 396, 399 (S.D. 1988).[8] An insurer may require an employee to undergo an examination by a qualified medical practitioner or specialist at the insurer's expense ("IME"). SDCL § 62-7-1.

If the employee and insurer reach an agreement as to compensation, the agreement shall be filed with the DOL. SDCL § 62-7-5. If the DOL approves the agreement, either affirmatively or by inaction, the agreement "is enforceable for all purposes under the provisions of [Title 62]." Id. In addition, "after expiration of the time for a petition for review or appeal," any party to the agreement may present the agreement to "the circuit court . . . in which the injury occurred." SDCL § 62-7-31. The circuit court "shall render a judgment in accordance with the [agreement] . . . ." Id. "The judgment shall

---

[8]"[Hanson] unequivocally establishes that the Employer has the burden to demonstrate that the treatment rendered by the treating physician was not necessary or suitable and proper." Krier, 473 N.W.2d at 498.

have the same effect and in all proceedings in relation thereto be the same as though rendered in an action duly heard and determined by the court except that no appeal may be made on questions of fact." <u>Id.</u>

In the event of contested matters, DOL shall hold a hearing on the record. SDCL § 62-7-13. After the conclusion of the hearing, an administrative law judge ("ALJ") is required to "file its decision, its findings of fact, and conclusions of law and shall serve" the decision on the parties and their attorneys. <u>Id.</u>

"[W]ithin ten days after service on the party of a decision of the department . . . [a party may] file with the department a petition for review of the decision." SDCL § 62-7-16. In the event a petition for review is filed, the ALJ's decision "may not be deemed that the department has made a final decision until there is a final determination on the petition. The final determination shall in that event be deemed the final decision of the department and subject to appeal." SDCL § 62-7-18. A party has only 30 days within which to appeal a final decision of the DOL to circuit court. SDCL § 1-26-31.

As an alternative to review by the Secretary of the DOL, "[a]ny party may elect to treat as final the decision of the department made as provided in § 62-7-13 and appeal therefrom without making any petition for review, in which event the decision provided for in § 62-7-13 shall be treated as the final decision of the department and subject to appeal." SDCL § 62-7-17. Thus,

an ALJ's decision under § 62-7-13 which is appealed directly to circuit court constitutes a "final decision of the department."  Id.  In similar fashion, a direct appeal to circuit court must be made within 30 days of the ALJ's departmental decision.  SDCL § 62-7-19 (referencing SDCL Chap.1-26).

Whether by petition for review after a departmental final decision has been entered or by direct appeal from a § 62-7-13 final decision, upon appeal the circuit court is authorized to review "all intermediate orders or decisions affecting substantial rights[.]"  SDCL § 62-7-19.  Once the circuit court has issued a decision, an appeal to the South Dakota Supreme Court "must be taken within thirty days after the judgment or order shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party."  SDCL § 15-26A-6.

Material to Mr. Wetch's case, the South Dakota Supreme Court has "consistently held that the law in effect at the time the employee is injured is what controls the rights and duties of the parties in workers' compensation cases."  Sopko v. C & R Transfer Co., Inc., 665 N.W.2d 94, 97 (S.D. 2003) ("Sopko II") (internal references omitted).  At the time of his 1991 injury, the workers' compensation statute SDCL § 62-7-33, which contemplated the review of medical payments stated:

> Any payment, including medical payments under § 62-4-1, made or to be made under this title may be reviewed by the department pursuant to § 62-7-12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased or awarded subject to the maximum or

8

> minimum amounts provided for in this title, if the department finds
> that a change in the condition of the employee warrants such action.

Mills v. Spink Electric Cooperative, 442 N.W.2d 243, 245 n.2 (S.D. 1989) (citing

SDCL § 62-7-33 as amended in 1980; underlining and strike-over omitted).

See also Sopko v. C & R Transfer Co., Inc., 575 N.W.2d 225, 230 (S.D. 1998)

("Sopko I") (the only change noted was to add "of labor" after department on the

second line above). The magistrate judge noted the differences "between 1991

and the present version of the statute are not material [to Mr. Wetch's case]."[9]

(Docket 131 at p. 33). "Under this statute, the Department has continuing

jurisdiction to review 'any payment' when there has been a physical change in

the employee's condition from that of the last award." Sopko I, 575 N.W.2d at

230.

SOUTH DAKOTA BAD FAITH CLAIMS

"Because the relationship between a workers' compensation claimant

and an insurer is adversarial and not contractual . . . an action alleging bad

faith requires more than an allegation of wrongful conduct." Mordhorst v.

---

[9]SDCL § 62-7-33 now states: "Any payment, including medical payments
under § 62-4-1, and disability payments under § 62-4-3 if the earnings have
substantially changed since the date of injury, made or to be made under this
title may be reviewed by the Department of Labor and Regulation pursuant to §
62-7-12 at the written request of the employer or of the employee and on such
review payments may be ended, diminished, increased, or awarded subject to
the maximum or minimum amounts provided for in this title, if the department
finds that a change in the condition of the employee warrants such action.
Any case in which there has been a determination of permanent total disability
may be reviewed by the department not less than every five years."

Dakota Truck Underwriters & Risk Administration Services, 886 N.W.2d 322, 324 (S.D. 2016) (internal quotation marks and brackets omitted). "In South Dakota . . . a claimant must prove two things to be successful: (1) an absence of a reasonable basis for denial of policy benefits, and (2) the insurer's knowledge of the lack of a reasonable basis for denial." Id. (internal quotation marks, ellipsis and brackets omitted).[10]

A South Dakota bad faith action on an insurer's decision "is determined based upon the facts and law available to the insurer at the time it made the decision to deny coverage." Dakota, Minnesota & E. R.R. Corp. v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009) (brackets omitted). "The appropriate inquiry for the . . . court in determining the relevance of [post-litigation decisions and conduct of the insurer] is whether the insurer's post-filing conduct sheds light on the reasonableness of the insurer's decision or conduct in denying [or delaying] insurance benefits." Id. at 635. "[T]he relevant inquiry . . . is the insurer's decision and actions at the time it made the decision to deny [or delay] coverage." Id. (internal quotation marks and citation omitted). "If the focus of a bad faith claim is the insurer's knowledge and belief during the time the claim is being reviewed[,] then the relevance of the litigation conduct is

---

[10]Earlier South Dakota cases "omit the words *the lack of* from the language of the second prong. . . . [W]e take this opportunity to correct our own rule statement going forward." Mordhorst, 886 N.W.2d at 324 n.1. (italics in original).

severely diminished." Id. at 635-36 (internal quotation marks, brackets and citation omitted).

FACTS OF THE CASE

Neither party objected to the vast majority of the statement of facts in the R&R. (Docket 131 at pp. 2-18). Defendants' only factual objection appears to be associated with their fifth objection stated above. (Docket 136 at pp. 6-7). Plaintiff's only factual objection is associated with his tenth objection stated above. (Docket 137 at pp. 26-27). Those factual objections will be addressed later in this order. Subject only to those objections, the court adopts the facts stated in the R&R.

**RESOLUTION OF THE PARTIES' OBJECTIONS**

1.    <u>Plaintiff's first objection contends the R&R misinterpreted the stipulated agreement</u>.

Plaintiff argues the R&R erred "by allowing the Defendants to argue that they had the authority to unilaterally disapprove treatment, contrary to Hanson. . . [And] by failing to apply [the] fundamental principles of medical benefits in workers' compensation, by reading the Stipulated Agreement to not recognize Wetch's rights to these benefits in the future." (Docket 137 at p. 3) (emphasis omitted; referencing Docket 131 at pp. 3-4, 43 & 48). Plaintiff submits "[t]hese statements are plain legal error, given the workers' compensation standards[.]" Id. at p. 5.

Plaintiff further argues the R&R "fails to apply res judicata to the SDCL 62-4-1 duties reflected in the Stipulated Agreement." Id. at p. 6 (referencing Docket 131 at pp. 38-44).[11] Plaintiff submits the R&R "rejects 62-4-1, Hanson, Cozine,[12] and Stuckey[13]" when it stated, "the Stipulation Agreement . . . 'does not affirmatively provide for [plaintiff's] right to those expenses incurred post-stipulation.'" (Docket 137 at p. 7) (emphasis omitted; referencing Docket 131 at p. 42).

The stipulated agreement provided, among other things: "Nothing in this Agreement impairs Claimant's entitlements under SDCL 62-4-1." (Docket 44-1 at p. 3 ¶ 9). The agreement went on to declare it was intended to be "full payment of any and all of the following benefits now due or hereafter accruing to Claimant under the South Dakota worker's compensation law[.] Id. ¶ 10. The agreement described those satisfied benefits to be:

(a)     All compensation due to past, present, or future temporary total disability under SDCL 62-4-3;

(b)     All compensation for partial disability already existing or hereafter accruing to the Claimant under SDCL 62-4-5 and SDCL 62-4-6;

---

[11]Mr. Wetch asserts the R&R "continues this error in the discussion of the 2016 judgment of the circuit court." (Docket 137 at pp. 6-7) (referencing Docket 131 at p. 42). This objection and challenge to the R&R will be resolved in the court's analysis of plaintiff's eleventh objection.

[12]Cozine v. Midwest Coast Transport, Inc., 454 N.W.2d 548 (S.D. 1990).

[13]Stuckey v. Sturgis Pizza Ranch, 793 N.W.2d 378 (S.D. 2011).

(c)      Any and all compensation which might be due to Claimant for periods of rehabilitation under SDCL 62-4-5.1;

(d)      Any compensation now due or to which Claimant may hereafter acquire rights for permanent total disability or death under SDCL 62-4-7 and SDCL 62-4-8;

(e)      Any compensation, past, present, or future to which Claimant might be due for loss of employability, loss of use, or <u>Cozine</u> under applicable law; and

(f)      To have this matter reopened at Claimant's request pursuant to SDCL 62-7-33 for the benefits described in paragraphs (a), (b), (c), (d) and (e), reserving and excepting of those benefits allowable pursuant to SDCL 62-4-1 as provided in paragraph 9 hereof.

<u>Id.</u>

The R&R said the stipulated agreement "did not provide for payment of medical expenses, but instead provided Mr. Wetch's entitlement to pursue payment of such expenses from defendants in the future was not impaired by the stipulation." (Docket 131 at pp. 3-4). The court interprets plaintiff's objection to mean the R&R should say "under the agreement Mr. Wetch was entitled to medical payments from defendants in the future," leaving out the double negative of the remainder of the statement in the R&R.

The court believes the R&R intended to convey the stipulated agreement entitled Mr. Wetch to future payments of medical expenses from the defendants. What exactly those future payments may be is not delineated in the stipulated agreement, but entitlement to those payments is outlined in South Dakota's workers' compensation statutes. The choice of language in ¶ 9 and ¶ 10(f) of the agreement was intended to preserve Mr. Wetch's benefits, "entitlements" to future medical care under SDCL § 62-4-1. (Docket 44-1

13

p. 3 ¶ 9).   The use of the double negative in the R&R does not mean the magistrate judge failed to properly interpret or apply the stipulated agreement. The court reaches the same conclusion as to the objected-to-statements at pages 43 and 48 of the R&R.   (Docket 137 at p. 3).

The magistrate judge properly observed "res judicate can apply to DOL decisions but those decisions must be final agency decisions."   (Docket 131 at p. 38) (referencing Jundt v. Fuller, 736 N.W.2d 508, 513 (S.D. 2007) ("An unappealed administrative decision becomes final and should be accorded res judicata effect.").   The magistrate judge "decline[d] to apply res judicata in service of Mr. Wetch's partial summary judgment motion.   The 1994 stipulation is final but does not affirmatively dispose of the issue of post-stipulation medical benefits . . . ."   (Docket 131 at p. 43).

The magistrate judge's discussion of the potential application of res judicata to the stipulated agreement does not ignore the function of SDCL § 62-4-1 or the authority of Hanson,[14] Cozine[15] or Stuckey.[16]   The court finds the magistrate judge's analysis of the stipulated agreement and its relationship to the other issues before the court in this case is an accurate examination of

---

[14]See footnote 8 supra.

[15]Cozine reiterated the obligation imposed on an employer under SDCL § 62-4-1.   "[Employer] knew Cozine needed additional treatment . . . yet the company failed to properly provide that treatment."   Cozine, 454 N.W.2d at 555.   "SDCL 62-4-1 places an affirmative duty upon the employer to provide necessary medical care to an injured employee."   Id.

[16]Stuckey is discussed in detail later in this order.

what was and what was not final for purposes of bad faith consideration. The purpose and authority of the stipulated agreement is unquestioned, but its ultimate impact lies in the resolution of the other issues raised in the R&R.

Plaintiff's first objection to the R&R is overruled.

2. <u>Plaintiff's fourth objection contends the R&R misinterpreted the defendants' denial letter</u>.

In his fourth objection Mr. Wetch claims the R&R "misreads the breadth of the denial letter, which goes beyond seeking a reduction of only four items of care. . . . [The denial letter] was not simply a reduction of four discrete items of care: Defendants claimed a reduction of 50% of all compensable benefits." (Docket 137 at p. 14) (referencing Dockets 131 at p. 6 & 44-3).

Following the IME by Dr. Wojciehoski, defendants' April 5, 2012, letter to Mr. Wetch stated "we will pay the fifty percent of the items noted below. . . . Please note we will pay fifty percent of what is considered medically reasonable and necessary, however, anything in excess will be your responsibility. . . . As you obtain the items above please send the case receipt to [the claims examiner] so [the insurer] can reimburse you the fifty percent we owe." (Docket 44-3 at p. 2).

The R&R summarized the letter in this manner: "Following receipt of Dr. Wojciehoski's opinion, defendants notified Mr. Wetch they would pay 50% of the cost of each of the four items found to be necessary and related to the work injury (Soma, a walker, a pull bar, and a lift chair)." (Docket 131 at p. 6)

(referencing Docket No. 44-3). Mr. Wetch claims the magistrate judge misinterpreted defendants' letter because "they were seeking to relitigate the issue of the contribution of cerebral palsy, which had been known prior to the Stipulated Agreement." (Docket 137 at pp. 14-15) (emphasis omitted).

There is no evidence in the record defendants' letter or their action after April 2012 supports Mr. Wetch's fear of a back-door challenge to reimbursement for all future medical expenses. Were defendants to take that position in the future, plaintiff would be able to challenge that conduct on the basis of res judicata or collateral estoppel. Kermmoade v. Quality Inn, 612 N.W.2d 583, 589 (S.D. 2000) ("We have often stated that once an agreement is accepted under the statute, the parties are bound to it.") (referencing SDCL 62-7-5; Larsen v. Sioux Falls School District, 509 N.W.2d 703, 708 (S.D. 1993); Whitney v. AGSCO Dakota, 453 N.W.2d 847, 850 (S.D. 1990); Call v. Benevolent & Protective Order of Elks, 307 N.W.2d 138, 139 (S.D. 1981).

Plaintiff's fourth objection is overruled.

3. <u>Defendants' second objection asserts the R&R erroneously concluded the statute of limitations was not debatable at the time of defendants' decision to delay or deny medical benefits.</u>

The R&R rejected defendants' argument the three-year statute of limitations enacted in 1995, SDCL § 62-7-35.1, "bars Mr. Wetch's further claim for benefits and provides a reasonable basis for defendants' denial and delay of benefits." (Docket 131 at p. 52). The R&R identified four reasons for this conclusion. First, § 62-7-35.1 was enacted "4 years after Mr. Wetch's injury."

16

Id. Second, "[t]he South Dakota Supreme Court previously determined that another statute of limitations applicable to workers compensation should not apply retroactively." Id. at p. 53 (citing West v. John Morrell & Co., 460 N.W.2d 745, 747 (S.D. 1990) ("The amendment of SDCL 62-7-35 had a definite effect upon Morrell's substantive rights in this case and cannot be retroactively applied[.]"). Third, "[w]hen § 62-7-35.1 was enacted in 1995, it provided an entirely new 'back stop' to a claim. . . . If the matter lies inactive for 3 or more years without the employee filing a petition with the DOL, this statute bars consideration of the petition." Id. at p. 55 (referencing Faircloth v. Raven Industries, Inc., 620 N.W.2d 198, 201 (S.D. 2000) ("SDCL 62-7-35.1 furnishes the limitations period when the employer provides the employee with benefits for a period of time, gives no denial notice, and then the matter lies inactive.").[17] Fourth, Hyatt v. Harvest States Co-op., 621 N.W.2d 369 (S.D. 2001) "provides additional authority for the conclusion the statute of

---

[17]In 1995 the Faircloth court pointed out SDCL § 62-7-35.1 further provided: "However, the time limitation of this section does not apply to claims for medical care or the replacement of medicine, crutches, ambulatory devices, artificial limbs, eyeglasses, contact lenses, hearing aids, and other apparatus, which medical care or apparatus are permanently or indefinitely required as the result of a compensable injury. The provision of such medical care or replacement of such items does not constitute payment of compensation so as to toll the running of the statute of limitations." Faircloth, 620 N.W.2d at p. 201 n.2 (referencing SDCL 62-7-35.1 (1996 Supp.)). This exception was removed by the South Dakota Legislature in 1999. See South Dakota Session Laws, 1999, Chapter 261, Section 11, at https://sdlegislature.gov/sessions/1999/sesslaws/ch261.htm (last visited August 23, 2019).

limitations does not provide a reasonable basis for defendants' actions." Id. at p. 55 n.16. The Hyatt court held: "We adopt the majority view that in the context of a commuted lump-sum payment, any applicable statutory limitations for further compensation or modification of the award begins to run from the date when the 'last payment' would have been made had the award been paid in installments." Hyatt, 621 N.W.2d at 371.

Defendants' second objection to the R&R is overruled.[18]

4. Defendants' fourth objection asserts the R&R erroneously fails to acknowledge that the materiality issue is a question of fact.

The R&R rejected defendants' materiality claim. (Docket 131 at p. 38). Defendants claim "[t]he disputed amount of $1,752.56 relates to a partial denial of reimbursement on four small items that Wetch did receive and was never wanting in terms of treatment." (Docket 136 at pp. 5-6) (emphasis omitted). Because these items are insignificant in comparison to what defendants have paid, they argue plaintiff's bad faith claim should not be allowed to proceed to trial. Id. Plaintiff asserts defendants' objection is disingenuous because the DOL found "Defendants failed to provide far more ordered care than four items." (Docket 143 at p. 5) (emphasis omitted) (referencing Dockets 44-17 through 44-20).

---

[18]Defendants' assertion of a reservation of "its right to present evidence and argue at minimum the statute of limitations was fairly debatable at the time of its decision to delay or deny medical benefits," (Docket 136 at p. 4), is denied.

When granting Mr. Wetch's third motion for summary judgment in November 2016, the DOL recalled that in January 2016 it ordered defendants "to provide a case manager, wheelchair, vehicle with hand controls, supervised living accommodations, and other home care service. . . . [A]nd none of the items or services recommended in [the Form 485 life-care plan] have been implemented."  (Docket 44-17 at p. 3 ¶ 4; referencing Docket 44-16 at p. 5).   While defendants wish to limit their exposure to $1,752.56, the record clearly shows plaintiff's unpaid claims as of January 2016 were in the realm of tens of thousands of dollars.

Defendants' effort to defeat plaintiff's partial summary judgment claim based on a lack of materiality does not create a genuine issue of material fact. Defendants fail to point the court to "any South Dakota case rejecting a bad faith case out of hand because the benefits withheld by the insurer paled in comparison to the benefits paid out."  (Docket 131 at p. 38).   The court adopts this conclusion in the R&R.

Defendants' fourth objection to the R&R is overruled.

5.     Defendants' fifth objection contends the R&R unfairly minimizes defendants' assertions regarding plaintiff's claim for hydrotherapy expenses and its effect on the question of bad faith.

The R&R noted:

Defendants point out that Dr. Goodhope was no longer prescribing hydrotherapy at the time Mr. Wetch filed his third motion for partial summary judgment with the DOL asking the DOL to require defendants to pay for hydrotherapy.  Defendants characterize this as intentional fraud.  However, the only proof of this assertion is

that in a laundry list of prescribed items written by Dr. Goodhope, the item "hydrotherapy" is no longer on the list. That is weak evidence for impugning a fellow lawyer with the allegation of intentional fraud.

(Docket 131 at p. 15 n.9).   Defendants' objection challenges this comment because "Wetch now admits his claim to the Department was false . . . [and] [t]he undisputed evidence reveals Wetch's claim was entirely contrived." (Docket 136 at p. 6).   Defendants' citations to the record do not support their assertions.

The portions of Dr. Goodhope's deposition and Exhibit 17 which are the subject of defendants' objection do not indicate the doctor never prescribed hydrotherapy.   See Docket 99-4 at pp. 84:4-85:23 and p. 41 (Exhibit 17).   The list of referrals were simply those items which Dr. Goodhope believed Mr. Wetch needed by way of medical care as of September 15, 2016.   Id. Similarly, defendants' reference to plaintiff's counsel's brief before the state circuit court does not include a declaration that Mr. Wetch's claim was false. See Docket 65-1 at p. 71 ¶ 5 (referencing id. at pp. 127-149 [Exhibit D]).

The court finds defendants' objection to be specious and disingenuous. The court rejects defendants' invitation to engage in character assassination of plaintiff's attorney.

Defendants' fifth objection to the R&R is overruled.

6.  <u>Defendants' third objection claims the R&R erroneously fails to acknowledge that the rebuttable presumption of SDCL § 62-4-1 is a question of fact</u>.

In 1993, the South Dakota Legislature amended SDCL § 62-4-1 to include the following language:

> If an injured employee has not required medical treatment for a period of three years, it is presumed that no further medical care with respect to the injury is necessary. Documentation that the injury is work related by the primary treating or rating physician after three years shall automatically rebut the presumption. However, the claimant may present other medical proof to rebut the presumption.

These provisions were removed from § 62-4-1 in 1999.   The R&R recognized this rebuttable presumption was not included in § 62-4-1 before 1993 and was removed in 1999.   (Docket 131 at p. 57 n.17).

The R&R acknowledged the South Dakota Supreme Court "applied the presumption retroactively to an employee's claim . . . which stemmed from a 1985 work injury."   <u>Id.</u> (citing <u>Kester</u>, 571 N.W.2d at 384.   The R&R recognized "[p]resumptions—especially rebuttable presumptions—are generally considered procedural, not substantive, so they can permissibly be applied retroactively."   <u>Id.</u> (internal reference omitted).

The R&R concluded:

> The rebuttable presumption does not provide defendants with a reasonable basis for their denial of benefits.   First, Mr. Wetch did rebut the presumption when he presented his August, 2011, letter from his treating physician stating that the medical expenses were work-related.   Second, the opinion of defendants' own IME doctor also rebutted the presumption when he opined the four medical

21

expenses were work-related. The court rejects this argument as a basis for denying Mr. Wetch's motion.

(Docket 131 at p. 57) (paraphyses omitted).

While this conclusion might be otherwise convincing, the R&R earlier refused to invoke judicial estoppel to hold defendants to their position they were 100 percent responsible for the four items identified by Dr. Wojciehoski.

> Viewing the facts and inferences from those facts in the light most favorable to defendants, the record of medical treatments indicates Mr. Wetch went from October, 2006, until sometime shortly after his 2010 fall without receiving medical treatment for which he sought reimbursement from defendants. Then after his fall, he again sought medical treatment and asked defendants to bear the cost. It is unknown whether Dr. Goodhope and Dr. Wojciehoski would reach the same conclusions about whether Mr. Wetch's post-fall medical treatment was related to the work injury if they knew about the 2010 fall. There is sufficient evidence of mistake or inadvertence to give the court pause about exercising its discretion to apply judicial estoppel under these circumstances.

Id. at p. 50.

Defendants argue the R&R "should be modified to recognize a question of fact on this issue." (Docket 136 at p. 5). "[I]t is generally the rule that a presumption vanishes when evidence of the fact in issue appears. A presumption is rebutted when a contrary fact appears." Traders & General Ins. Co. v. Powell, 177 F.2d 660, 665 (8th Cir. 1949). "Problems presented by conflicting evidence or depending upon credibility of witnesses and weight of the evidence are to be decided by the jury and not by . . . the trial court." Skrovig v. BNSF Railway Co., 916 F. Supp. 2d 945, 973 (D.S.D. 2013) (citing Traders, 177 F.2d at 663).

The R&R's rejection of the physicians' reports requires the court to conclude the rebuttable presumption issue is a factual matter which must be decided at trial. Skrovig, 916 F. Supp. 2d at 973. The court arrives at this conclusion even though in resolving the next objection the court rejects the R&R's opinion regarding possible changes in Dr. Goodhope's testimony.

Defendant's third objection to the R&R is sustained.

7. <u>Plaintiff's tenth objection asserts the R&R makes clearly erroneous findings of fact relating to Dr. Goodhope's opinions.</u>

Mr. Wetch argues the R&R's conclusions regarding Dr. Goodhope's opinions are mistaken. (Docket 137 at pp. 26-27). Plaintiff submits "[a]s Dr. Goodhope's testimony shows, he was aware of the April 2010 fall when he first met Mr. Wetch in 2011." Id. at p. 27 (referencing Docket 138-5).

Defendants submit "Dr. Goodhope's testimony regarding the April 2010 fall can charitably be described as contradictory, imprecise, and equivocal[.]" (Docket 144 at pp. 27-28). They argue "Dr. Goodhope cannot state he recalls reviewing the records of the April 2010 fall at the time he began treating Wetch." Id. at p. 28.

Dr. Goodhope's deposition was taken on October 24, 2018, nearly 7.5 years after Dr. Goodhope's first visit with Mr. Wetch. (Docket 99-4). To fully

understand the doctor's opinions concerning Mr. Wetch's 2010 fall, the court

must set out a significant portion of the doctor's testimony on the subject.[19]

Q    Are you familiar with David Wetch?

A    I am familiar with David Wetch.

Q    How are you familiar?

A    I believe David Wetch came to me in April of 2011 for our first
     visit.

Q    What was the purpose of that visit?

A    I was to refill his pain medications.

Q    Did you learn at that visit whether or not David Wetch had
     suffered any work injury?

A    I knew that he had fallen and had fractured his neck, at that
     visit, at work.

(p. 12:14-25).
. . .

Q    And how did you learn that?

A    I pulled up Dr. Waltman's records and also looked at his
     records, I think, from an ER visit . . . and asked him.

Q    Can you identify the specific record that you looked up prior
     to David Wetch arriving at your office?

. . .

A    All right.  Let me look here.  So under Patient Documents
     . . . . So this would have been called Patient Chart Documents,
     the    folder,    and    the    specific    file    would    be
     MT.docs.Wetch.David.  .  .  . 1964.  At the time I would
     have looked at this, since it was in April of 2011, it would have

_____

[19]Because there are four pages of transcript on a single page, the court
will cite to the actual transcript page and line for ease of the reader.   Vocal
inflections of counsel are omitted.   All references are to Docket 99-4.

been a paper chart. . . . Our office went to electronic charts in June of 2011, sort of as everyone was. And at that point, this chart was then scanned into the file which I'm referring to right now.

(p. 13:1-9 & 12-24).

. . .

Q     Can you tell me what you learned from reviewing the then-paper chart of David Wetch before he arrived for your first visit in April 2011?

A     So, I knew that at April 6, 2010, he'd been in the ER at 1641 hours. He had a CAT scan of his head, which was ordered for pain after a fall. There was no hemorrhage noted, and there was no fractures seen. He also had a CAT Scan, or a CT scan, of his neck—I'm going to get that—which was also done at the same time, same date, April 6, 2010. It was ordered by Dr. Eide at the ER. The next CT findings were there was a blocked vertebra with fusion of the bodies of C2 through C5. Marked narrowing is present at disc space at C2-3. This is associated with anterior spurring. Mild disc narrowing is present from C5 through T1 associated with minimal posterior spurring. There is straightening of the cervical spine secondary to the fusion of the midvertebral bodies. No acute fractures noted. No prevertebral soft tissue swelling is seen. So the impression was there was a blocked vertebral fusion of C3 through . . . through C5. Degenerative changes are noted in the remainder of the cervical spine, and no fracture is noted. That was read by Dr. Jamie Schaeffer in the radiology department.

(pp. 14:20-15:24).

. . .

A     I hadn't had a chance to finish answering the question because you

Q     I'm sorry if I interrupted you.

A     You had asked me everything that I had learned, and I was talking about the documents. Now I'm going to go into the notes part. So this file is called Paper Chart Documents MT.notes.Wetch.David. . . . 1964. . . . I did see him April 25, 2011. Then I saw him again on May 25, 2011. Prior to that,

he had seen Dr. Waltman on April 12, 2010. So I would have looked at Dr. Waltman's note. I can read it if you want.

(p. 16:8-24).

Q  Just tell me what you concluded from reading Dr. Waltman's April 12, 2010 note at the time you first saw David Wetch.

A  That he'd had a fall. He thought he was unconscious for two seconds. He had some neck pain and had the CAT scan of his head and neck, which didn't show any acute problems. Dr. Waltman had given him a prescription for Flexeril and Tylenol with Codeine. He had done pretty well. So Dr. Waltman's assessment at that time was status post fall with concussion and neck strain. He refilled his Soma, advised him not to take the Soma and the Flexeril at the same time. And so then I would have made my note, which should have been my very first note with him. So it says the first time I met David, April 25, 2011. I'm accessing that note to help my memory. So I just said he was disabled, lived in an apartment. His father had recently passed away, making him feel somewhat depressed, but he wasn't having any suicidal thoughts at that time, didn't want any antidepressant medicine at that time. And then I noted at age 27, he fell and broke his neck and underwent a C3-to-C5 cervical fusion. Then I said: Since that time, he's had chronic tingling, numbness, headaches, weakness in the arms, and he wanted an evaluation for a possible TENS unit. I noted that he had also had a history of cerebral palsy, and that day he needed a wheel walker with a seat. Currently he had been using a cane. And he also needed handicap sticker at that date. So I did my evaluation, and my assessment was chronic pain in the neck with a history of cerebral palsy. So I completed the handicap sticker. I noted that clearly the patient was unable to walk a distance without help. I noted that it took him about five minutes to walk 30 feet to the lab. I ordered physical therapy to assess him for a TENS unit. I saw that he hadn't had annual labs for a while, so I ordered cholesterol, thyroid, blood count, metabolic panel, urinalysis. Asked him to follow up in a month so we could review the lab results and find out if he got everything that we ordered. And then I—I offered to treat him with Cymbalta. That was an antidepressant that works with chronic pain, but he didn't

want it at that time, so we just said we'd revisit it in a month. I noted that he understood the treatment plan, and he left the clinic in good condition.   And I signed my note.

(pp. 16:25 -19:6).

. . .

> Q    And you mentioned that you looked at . . . an April 2010 fall; is that right?

> A    April 2010 note from Dr. Waltman, which was when the patient would have—I guess, followed up with Dr. Waltman status post the fall.

(p. 19:18-25).

. . .

> Q    And do you know whether you had seen the note that's marked as Exhibit 3 before you pulled the record up yourself in preparation for the deposition?

> A    I saw Exhibit 3 last night when I was looking at the old records that were scanned in, and I'm—my memory is imperfect, but I'm—I don't see how I would have not looked at it when I saw him for the first time in April of 2011.

> Q    Do you recall reviewing Exhibit 3 before you visited with Mr. Wetch for the first time?

> A    It's hard to imagine I would not have.

> Q    But you don't remember doing so; is that true?

> A    It's seven and a half years ago, so . . . .

(p. 22:12-25).

. . .

> A    My recollection would be that I would have looked at the note. I always try to look at old records prior to seeing a patient that's new to me.

> Q    On Exhibit 3, it talks about the fact that there was a fall where Mr. Wetch hit his head and resulted in neck pain; is that right?

A       Correct.

(p. 23:4-11).

. . .

Q       Do you recall learning, before you saw Mr. Wetch, that he had suffered from a fall in which he had a cervical injury and that it resulted in him becoming unconscious?

A       Yes.

Q       And did you talk to Mr. Wetch about that when you saw him for the first time on April 25, 2011?

A       Can I look at Exhibit 2? . . . I don't recall if I talked to him about the fall or not.

(pp. 24:2-10 & 21-22).

. . .

Q       And do you know whether Mr. Wetch had received Vicodin for purposes of the April 2010 fall?

A       I don't know.

Q       Did you ask him?

A       I can't recall.

Q       Can you recall anything about any discussion you had with Mr. Wetch about the April 2010 fall?

A       All my recollection is based on these notes.

(p. 26:13-21).

. . .

Q       What do you recognize Exhibit 4 [notes from Rapid City Medical Center] to be?

A.      The note I created in the medical record on August 1, 2011.

(p. 30:9-11).

. . .

Q     Is there anywhere in the Past Medical History for David Wetch that you created on August 1, 2011 that indicates the April 2010 fall?

A     No

Q     Did you understand the April 2010 fall involved a cervical injury?

A.    When I read the CAT scan that showed no fracture, I would have been reassured that there was no damage to the prior surgery and that he'd had injury before.   CAT scan report.

(p. 31:4-13).

Q     Are you able to say, to a medical degree of certainty, as to whether the headaches that you had identified and prescribed in April of 2011 were the results of something that originated a year earlier in April 2010 from a fall that required emergency treatment and a neck injury or whether it related to a fall and injury two decades earlier in 1991?

. . .

A     Since I would have looked at the CAT scan and Dr. Waltman's note and I would have read the "pretty well resolved," I would have assumed any ongoing problems were probably more related to his permanent disability and not the fall that had happened like a year earlier.   And the main focus of my visit the first time would have been to get to know the patient and, kind of, a lot of different problems.   It wouldn't have been something that happened a year earlier that pretty much looked in the chart like it had already resolved.

(pp. 33:14-21 & 34:2-13).

. . .

Q     Are you able to say, to a reasonable degree of medical certainty, that the headaches you were treating in April of 2011 in that summer with Mr. Wetch, that that related to an injury two decades earlier in 1991 as opposed to the neck and head injury that occurred a year earlier which also resulted in headaches?

A     It is my opinion that the headaches I saw him for in April of 2011 were related to the earlier injury.

Q    How do you—how do you come to that opinion?

A    Because Dr. Waltman's notes said that the headaches were pretty well resolved, and the CAT scan that was done after the injury showed no acute injury.

(pp. 34:19-35:8).

. . .

Q    Can you tell . . . me how you related the headaches that occurred in April 2011 to the injury that occurred two decades earlier in 1991 and rejected the fact that it might be a continuation of the headaches from April 2010, which had only pretty much resolved at that point?

A    I would have looked at the CAT scan as part of my review of records and saw that at the time he was seen in the ER, it didn't show any acute injury.   I would have looked at the old note that said that headache was pretty well resolved from the physician taking care of Mr. Wetch before me.   I would have looked at the part where I made a little note here that said he was permanently disabled, and then I would have treated it based on that.

Q    Okay.   And how did the headaches reappear in . . . April of 2011?

A    It's—it's possible that someone could have had headaches related to a prior injury, then have a fall and have an acute, worsening headache from a concussion.   And then once that resolves, they would go back and have the same symptoms they would have had from the prior injury.

Q    Okay.   That's possible; right?

A    I think it's likely in this case.

(p. 36:1-25 to 37:5).

. . .

Q    Okay.   Did Dr. Waltman indicate that in April 2010, that after the fall in which Mr. Wetch became unconscious, that he suffered from a concussion?

A     Yes.   In his note, April 2010.

(p. 37:10-14).

. . .

Q     Is it fair to say that when you saw . . . Mr. Wetch . . . you learned about a concussion, but the specifics of that concussion were not conveyed to you?

A     No.

Q     That's not true?

A     There were specifics conveyed to me in the note that I would have reviewed from Dr. Waltman.

(p. 38:19-39:1).

. . .

Q     Exhibit 5 is a hospital record relating to David Wetch had a fall on April 6, 2010.   Do you recognize Exhibit 5?

A.    This is the first time I've seen Exhibit 5 . . . This is the first time I've seen Exhibit 5 that I recall.

(p. 40:9-12).

. . .

Q     Exhibit 6 is identified as a Regional Hospital Emergency Department record relating to David Wetch on April 6, 2010. Do you recognize Exhibit 6?

A     No.   I know what it is.   This is the first time I've seen it, that I recall.

(p. 41:4-9)

. . .

Q     In April of 2011, you didn't have Exhibits 5 and 6; is that right?   You just testified to it.   I just want to—

A.    I was just looking to see if the CT reports were in there.   They are not.   So no, I wouldn't have had them.

(p. 41:19-24).

Defendants' conjecture and argument challenging Dr. Goodhope's credibility are without merit. Mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment. Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

While Dr. Goodhope may have sought to limit his testimony, there is no doubt Dr. Goodhope saw the 2010 medical records before his first appointment with Mr. Wetch in 2011. The fact he discounted the 2010 fall as the cause of plaintiff's headaches is an issue the defendants would now like the court to reject. The court will not engage in that exercise. The court finds the magistrate judge improperly discounted Dr. Goodhope's sworn testimony. The court rejects the R&R's statements regarding Dr. Goodhope's testimony.

Plaintiff's tenth objection is sustained.

8.   Defendants' first objection and plaintiff's third objection both focus on the R&R's analysis of Hayes and its retroactive effect.

Defendants' objection asserts the R&R erroneously concluded, based on Dr. Wojciehoski's opinion, that the defendants " 'acted contrary' to pre-Hayes law." (Docket 136 at pp. 2-3). Plaintiff's objection contends the R&R "errs in its analysis of the 'retroactive effect' of Hayes." (Docket 137 at pp. 12-14).

The R&R concluded "[u]nder established South Dakota precedent in 1991, Mr. Wetch only had to show that his work injury was a 'contributing factor' to his need for medical treatment." (Docket 131 at p. 58) (bold omitted; underlining inserted) (referencing Caldwell v. John Morrell & Co., 489 N.W.2d

32

353, 357-58 (S.D. 1992) (A claimant "must establish . . . that there is a causal connection between his injury and his employment. . . . This causation requirement does not mean that the employee must prove that his employment was the proximate, direct, or sole cause of his injury; rather, the employee must show that his employment was 'a contributing factor' to his injury.") (internal citations omitted).

Defendants contend the R&R "does not include other relevant authorities informed on these issues." (Docket 136 at p. 3 n.2) (referencing Orth v. Stoebner & Permann Construction, Inc., 724 N.W.2d 586, 592-97 (S.D. 2006), and Grauel v. South Dakota School of Mines and Technology, 619 N.W.2d 260, 262-63 (S.D. 2000)). Defendants' argument is without merit.

In Hayes, the South Dakota Supreme Court specifically summarized Orth. "See Orth . . . 724 N.W.2d . . . 596-97 (holding claimant met his burden of proving by a preponderance of the evidence that his work-related activities were a major contributing cause of his disability based on a physician's opinion that claimant's work-related activities were fifty percent responsible for his impairment)." Hayes, 853 N.W.2d at 885.

Grauel referenced a 1995 amendment to SDCL § 61-1-1(7) which is not relevant to Mr. Wetch's case.[20] Grauel did reinforce that the employee "must

---

[20]Specifically, Grauel acknowledged the amendment clarified a workers' compensation injury includes "only those injuries arising out of and in the course [of] the worker's employment and not including any diseases except a disease caused by the injury." Grauel, 619 N.W.2d at 263.

show . . . the employment . . . was a major contributing cause of the condition complained of . . . ." Id. A more detailed summary of Orth and Grauel in the R&R would not have changed the ultimate conclusion reached, that is, that defendants "acted contrary to established pre-Hayes law in another respect." (Docket 131 at p. 58).

The R&R concluded "[b]ecause Dr. Wojciehoski opined that Mr. Wetch's work related injury was 50% responsible for the need for medical treatment, Dr. Wojciehoski's opinion alone mandated that defendants pay 100% of the expenses related to the four treatments approved by him." Id. at p. 59. "Defendants did not pay 100% of the expenses for those four treatments. Instead, they paid 50% of the cost of the treatments and told Mr. Wetch he was responsible for the other 50% of the cost." Id. Defendants' first objection asserts this was an erroneous conclusion. (Docket 136 at pp. 2-3).

The R&R found that even after Hayes was issued in August 2014, defendants failed to comply with their statutory obligation and, in fact, a DOL order:

> On November 6, 2015, defendants filed a pleading with the DOL admitting they were responsible for the full cost of . . . the four items identified as compensable by Dr. Wojciehoski. . . . On January 28, 2016, the DOL issued an order directing defendants to pay the full cost of the four items defendants themselves admitted they owed . . . . Defendants still failed to cough up the other half of the money for these items until December, 2016, and January, 2017.

(Docket 131 at p. 59) (internal references to the record omitted).

Defendants' first objection is overruled.   More importantly, however, defendants' first objection is irrelevant to the ultimate conclusion reached in the R&R.   The R&R concluded "partial summary judgment should  . . . not issue to Mr. Wetch on the basis of defendants' handling of the expenses for the four items approved by Dr. Wojciehoski." <u>Id.</u> at p. 60.   The R&R identified two reasons for this conclusion.

> First, defendants have indicated pursuant to <u>Baier</u>[21] that they were/are awaiting a final decision of the DOL in order to appeal each of these piecemeal rulings on partial summary judgment motions. Second, defendants' admission was based on Dr. Wojciechowski's IME and that IME is on uncertain ground now that the fact of Mr. Wetch's 2010 fall has come to light.

<u>Id.</u>

While not exactly on point with defendants' objection, plaintiff contends the R&R "errs in its analysis of the 'retroactive effect' of <u>Hayes</u>."   (Docket 137 at pp. 12-14).   The magistrate judge determined "there is good reason to conclude the law in <u>Hayes</u> is new and not retroactive."   (Docket 131 at p. 65). The magistrate judge was "not convinced that <u>Sopko I</u> or <u>Sopko II</u> established the same proposition as was established in <u>Hayes</u>.   Nor is the court convinced defendants are absolutely as a matter of law on notice of their duty to proceed solely under § 62-7-33 by virtue of the text of that provision."   <u>Id.</u> at pp. 67-68. The magistrate judge concluded "until <u>Hayes</u> was decided, [<u>Sopko I</u>] . . . would

---

[21]<u>Baier v. Dean Kurtz Const., Inc.</u>, 761 N.W.2d 601 (S.D. 2009).

not seem to dictate that an employer/insurer who has no reason to believe the employee's physical condition has changed, but [the employer/insurer] who wishes to challenge a medical treatment as not necessary, suitable or proper, would be required to proceed exclusively under § 62-7-33." Id. at p. 68.

In 1990, the South Dakota Supreme Court held "[b]y virtue of SDCL 62-7-33, [DOL] has continuing jurisdiction to adjust any payment from the original injury based upon a change of condition occurring since the last award." Whitney, 453 N.W.2d at 850. "An agreed stipulation entered into between employer and employee, which is filed and approved by Department, may have the effect of a final determination." Id. The court approved the trial court's conclusion that "[t]he language in the Stipulation and approval did not lack finality. On the contrary, the Stipulation clearly permitted increased benefits only if Whitney's percent disability increased or if he required further medical treatment as a result of his working injury." Id. (emphasis added). The court concluded that DOL's "failure to reserve jurisdiction, especially when considering the specific provisions of the stipulation, renders those issues res judicata absent a showing of change of condition." Id.

In 1993, the South Dakota Supreme Court held "[t]he holding in Whitney was decided on well settled law of this state that worker's compensation awards, whether by agreement of the parties or following an adjudication, are res judicata as to all matters considered unless the department has reserved continuing jurisdiction over one or more questions." Larsen, 509 N.W.2d at

706. The <u>Larsen</u> court stated "[a] statutory exception to the finality rule is found in SDCL 62-7-33 which gives the Department continuing jurisdiction to adjust payments when there is a physical change in the employee's condition from that of the last award." <u>Id.</u> at 707 (referencing <u>Whitney</u>, 453 N.W.2d at 850-52; other references omitted). "While some members of the general public and the Department may have operated under a misunderstanding of the law of this state, we are of the opinion that our decision in <u>Whitney</u> should not have come as a surprise to anyone in that it was based on common sense and clear precedents of this court." <u>Id.</u> Reflecting on "apparent[] dictum" in <u>Call</u>, 307 N.W.2d 138, the <u>Larsen</u> court reminded its readers "the 'provision purporting to authorize a review in the event that claimant incurred further disability or <u>medical expenses</u>' is nothing more than a restatement of the statutory provision permitting a change in payment based upon a change in condition." <u>Id.</u> at 708 (emphasis added) (citing <u>Call</u>, 307 N.W.2d at 140).

The <u>Larsen</u> court "agree[d] with the <u>Call</u> . . . court that the questioned language is merely a restatement of 62-7-33." <u>Id.</u> 509 N.W.2d at 708 n.4. The <u>Larsen</u> court concluded:

> The case precedent of this court is contrary to the Department's settlement agreement policy, practice, and procedure. The fact, however, that the Department may have given faulty legal advice does not change the fact that <u>Whitney</u> neither overruled clear past precedents nor did it decide an issue of first impression whose resolution was not clearly foreseen. We, therefore, conclude that <u>Whitney</u> may be retroactively applied and we reverse the trial court on this issue.

<u>Id.</u>

In 2011, the South Dakota Supreme Court, reflecting on its historical rulings and interpreting SDCL § 62-4-1, stated "[i]t is in the doctor's province to determine what is necessary or suitable and proper. . . . And '[w]hen a disagreement arises as to the treatment rendered or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.'" Stuckey, 793 N.W.2d at 387-88 (citing Streeter, 677 N.W.2d at 226) (quoting Krier, 473 N.W.2d at 498; also referencing Engel v. Prostrollo Motors, 656 N.W.2d 299, 304 (S.D. 2003); Hanson, 425 N.W.2d at 399). In Stuckey, the South Dakota Supreme Court held "[w]hen [an employee] incurs medical expenses in the future, Employer may reimburse [him] or challenge the expenses as not necessary or suitable and proper under SDCL 62-7-33." Stuckey, 793 N.W.2d at 389. The Stuckey court offered the insurer no other options, either "reimburse . . . or challenge . . . under . . . 62-7-33." Id.

On August 27, 2014, the South Dakota Supreme Court decided Hayes. "When SDCL 62-1-1(7) is read not in isolation but as a whole in light of other enactments, specifically SDCL 62-7-33, the statute's intent is not to place a continuous burden on a claimant once he . . . proves a compensable injury. Instead, once claimant proves a compensable injury, SDCL 62-7-33 provides the method for a party to assert a change in condition." Hayes, 853 N.W.2d at 886 (emphasis added). "[I]f a claimant proves a compensable condition under SDCL 62-1-1(7) and the employer subsequently feels claimant's condition no

38

longer 'remains a major contributing cause of the disability, impairment, or need for treatment [,]' . . . the employer may assert a change-of-condition challenge under SDCL 62-7-33 where it bears the burden of proof." Id. (citing SDCL § 62-1-1(7)(b)). "Employer may assert that Hayes' condition changed after August 3, 2010, and his condition no longer 'remains a major contributing cause of the disability, impairment, or need for treatment.' . . . To argue that, Employer must assert a change in condition under SDCL 62-7-33 where it, not Hayes, bears the burden of proof." Id. at 887 (citing SDCL 62-1-1(7); emphasis in opinion).

The magistrate judge concluded prior case law, namely, Sopko I and Sopko II, did not "establish[] the same proposition as was established in Hayes." (Docket 131 at p. 67). To examine the magistrate judge's conclusion, the court must review the holdings in those earlier cases.

In Sopko I, the court acknowledged that "[o]rdinarily, workers' compensation awards whether by agreement or adjudication are final unless the department reserves jurisdiction.' Id., 575 N.W.2d at 229. The court recognized that "South Dakota's statutory exception to the finality rule is found in SDCL 62-7-33[.]" Id. at 230. "Under this statute the [DOL] has continuing jurisdiction to review 'any payment' when there has been a physical change in the employee's condition from that of the last award." Id. "The 'change in condition' which justifies reopening and modification is ordinarily a change, for better or worse in the claimant's physical condition." Id. (internal citation

39

omitted).  "Only after a party asserting a 'change in condition' has met the required burden may the [DOL] reopen a previous award."  Id. at 231.
The court found "[a]nalyzing SDCL 62-7-33 and 62-3-18[22] together, we are persuaded our Legislature intended to disallow agreements foreclosing statutory rights to reopen in the event of changes in condition resulting from undiscovered or unforeseen consequences."  Id.

In Sopko II, the South Dakota Supreme Court declared "according to our prior case law and the relevant statutory authority, [DOL] may review any payment of benefits pursuant to SDCL 62-7-33, however, the rate for calculating benefits that is utilized vests at the time of the injury."  Id., 665 N.W.2d at 97.  Emphasizing the clarity of this declaration, the court stated "[t]his is not a new or novel proposition."  Id.

Plaintiff argues the R&R "errs in its analysis by failing to consider the full scope of SDCL 62-7-33's language. . . . In addition, Stuckey makes it clear that an employer or insurer's procedural remedy to challenge care required by SDCL 62-4-1 is 62-7-33."  (Docket 137 at pp. 12-13).  Mr. Wetch asserts the R&R "fails to apply Larsen, which is directly on point of this analysis of SDCL 62-7-33.  In Larsen, . . . the Court applies 'retroactivity' analysis specifically to SDCL 62-7-33[.]"  Id. (emphasis omitted; referencing Whitney, 453 N.W.2d

_____

[22]SDCL § 62-3-18 provided "[n]o agreement, express or implied, . . . may in any manner operate to relieve any employer in whole or in part of any obligation created by the title except as provided by this title."

847). Plaintiff argues "<u>Larsen</u> explains that rulings of the DOL have the effect of *res judicata*—the finality rule. . . . This has been the law for decades. . . . <u>Hayes</u> simply reaffirms the 'finality' rule, with SDCL 62-7-33 as the exception to finality. . . . <u>Hayes</u> did not announce new law regarding SDCL § 62-7-33." <u>Id.</u> at pp. 13-14 (internal citations to <u>Larsen</u> omitted).

The court agrees with plaintiff's analysis. It has been clear since <u>Whitney</u> in 1990 that SDCL § 62-7-33 is the exclusive statutory mechanism by which an insurer can challenge an employee's medical expenses. <u>Whitney</u>, 453 N.W.2d at 850. The <u>Larsen</u> court emphasized this point. "The holding in <u>Whitney</u> was decided on well settled law of this state[.]" <u>Larsen</u>, 509 N.W.2d at 706. <u>Stuckey</u> made even more clear the options available to an insurer, either reimburse the employee for medical expenses "or challenge the expenses as not necessary or suitable and proper under SDCL 62–7–33." <u>Stuckey</u>, 793 N.W.2d at 389. <u>Hayes</u> did not announce new law in this regard. The court finds the magistrate judge erred and the R&R is rejected on this issue.

The only clarification <u>Hayes</u> made was if the insurer originally admitted causation and a subsequent IME concludes a claimant's work-related activities were 50 percent responsible for his impairment, the insurer is obligated to pay 100 percent of the employee's medical expenses. <u>Hayes</u>, 853 N.W.2d at 885 (referencing <u>Orth</u>, 724 N.W.2d at 596-97.

The R&R recognized this directive from <u>Hayes</u>. "Because Dr. Wojciehoski opined that Mr. Wetch's need[s] . . . were necessitated 50% by his

work-related injury and 50% by his preexisting cerebral palsy, this was sufficient to demonstrate the work related injury is . . . a 'contributing cause' for the need for these treatments, thereby requiring defendants to pay 100% of the expenses."  (Docket 131 at p. 12 n.8).   Defendants acknowledged this obligation in their response to Mr. Wetch's first motion for summary judgment before the DOL.   (Docket 44-15 at p. 11) ("Employer and Insurer acknowledge that they are responsible for 100% of those expenses.").

Plaintiff's third objection is sustained.

9.    Plaintiff's second objection asserts the R&R misinterpreted South Dakota's worker's compensation procedure.

Plaintiff's objection focuses on the R&R's perception there are other avenues by which an employer may challenge an employee's medical care expenses besides SDCL § 62-7-33.   (Docket 137 at pp. 7-12).   Plaintiff argues the R&R "errs by suggesting that the Defendants could have followed other procedures, which do not exist in the statutory code or which the Defendants did not actually follow."   Id. at p. 10 (referencing Docket 131 at pp. 60-70) (emphasis omitted).

The court already rejected the R&R for its failure to correctly apply SDCL § 62-7-33.   See pp. 41-42 supra.   The R&R's suggestion of other options available to an insurer for challenging an employee's medical care ignores the mandate of Whitney, Larsen and Stuckey analyzed earlier in this order.   The court finds the magistrate judge erred and the R&R is rejected on this issue.

Plaintiff's second objection is sustained in part consistent with the court's earlier ruling sustaining plaintiff's third objection.

10. <u>Plaintiff's fourteenth objection asserts the R&R errs in its analysis of Herr v. Dakotah, Inc.</u>

Mr. Wetch argues the R&R erred by concluding <u>Herr</u> provided case authority to permit defendants to invoke SDCL § 62-4-1 as an alternative to § 62-7-33.   (Docket 137 at pp. 31-32) (referencing Docket 131 at pp. 39-41). Mr. Wetch claims the error on this issue results in an "incorrect application of SDCL 62-4-1" because "[t]he Report's analysis confuses the calculation of the amount of disability benefits with the 'open' nature of future medical benefits in the workers' compensation setting."   (Docket 137 at pp. 31-32).

While <u>Herr</u> involved temporary total disability benefits, the principle ruling of the South Dakota Supreme Court allowed the insurer to ask the DOL to determine whether plaintiff had reached maximum medical improvement, that is, whether the employee was no longer entitled to temporary total disability benefits.   <u>Herr</u>, 613 N.W.2d at 555.   DOL's own ruling indicated it intended to "retain[] jurisdiction over this case 'until all issues of compensation are finalized,' thereby precluding final judgment on the merits of whether, and when, Herr reached maximum medical improvement."   <u>Id.</u> (citing <u>Call</u>, 307 N.W.2d at 139).   The Court concluded the circuit court erred by dismissing the employer's "appeal on the basis of res judicata."   <u>Id.</u>

43

The R&R included a detailed examination of Herr. (Docket 131 at pp. 39-41). The analysis correctly recognized that if the DOL retains jurisdiction the doctrine of res judicata may be applied in one instance to a ruling of the DOL ["factual issues already litigated"] but not in another [whether an employee has "reached maximum medical improvement"]. Id. (referencing Herr, 613 N.W.2d at 551 & 555). The R&R properly analyzed Herr and did not attempt to use Herr to evaluate defendants' argument they could invoke § 62-4-1 as opposed to § 62-7-33 as statutory authority to challenge Mr. Wetch's medical care benefits.

Plaintiff's fourteenth objection is overruled.

11. Plaintiff's thirteenth objection claims the R&R misinterpreted and misapplied plaintiff's Due Process Clause arguments.

Mr. Wetch argues the magistrate judge misunderstood his Due Process claim. (Docket 137 at p. 29) (referencing Docket 131 at pp. 34-36). Plaintiff now makes clear his claim is premised on the assertion "that any interpretation of the law that allows an employer or insurer to end statutory benefits, without notice or a hearing before the DOL, is unconstitutional." Id. (emphasis omitted). Mr. Wetch submits the R&R's "suggestion that the Defendants did not need to proceed to the Department at all is an unconstitutional interpretation of the workers' compensation laws." Id. (emphasis omitted).

In other words, Mr. Wetch is arguing that since an injured employee has a statutory right to "ongoing receipt of medical benefits under SDCL 62-4-1 . . .

44

[those] [s]tate statutory rights create a property interest in the continued receipt of those benefits and payments which must be protected by Due Process." Id. at p. 30 (emphasis omitted). If defendants are permitted to reduce or limit plaintiff's SDCL § 62-4-1 "property interests without notice and a hearing," Mr. Wetch submits that process would violate the Due Process clause. Id.

Defendants' response suggests "[t]he operative lesson in the [R&R's] lengthy discussion [of Hayes] is to dismiss Wetch's contention the 'procedural protection' he seeks existed before the South Dakota Supreme Court decided Hayes. (Docket 144 at p. 30). For this reason, defendants recommend plaintiff's objection should be overruled. Id.

Plaintiff's Due Process challenge is moot. Earlier in this order the court concluded SDCL § 62-7-33 is the only method by which an insurer may seek to change or terminate medical care benefits.[23] That procedure, together with SDCL § 62-7-12, provides Mr. Wetch with notice and a hearing before his statutory benefits can be affected. Because the magistrate judge did not evaluate Mr. Wetch's due process claim in this fashion, the R&R must be rejected. (Docket 131 at pp. 34-36).

---

[23]The only statutory exception to this mandate allows an insurer to suspend benefits if an injured employee refuses to submit to an IME. SDCL § 62-7-3.

Plaintiff's thirteenth objection is sustained in part and overruled in part as moot.

12.   Plaintiff's fifth objection claims the R&R errs by considering defendants' arguments that reject the rulings of the DOL and the Circuit Court.

Plaintiff argues the R&R "errs by considering Defendants['] arguments that undermine the outstanding decisions and orders of the DOL and the Seventh Judicial Circuit Court."   (Docket 137 at p. 15).   Mr. Wetch contends the R&R "subverts the 'primary jurisdiction' doctrine . . . , by considering Defendants' arguments that they wish to appeal from decisions, or argue new bases of denial, such as the 2010 injury . . . ."   Id.   Plaintiff submits the R&R "circumvents the [SDDOL] ruling [obligating defendants to pay 100% of the cost of Mr. Wetch's medical care pursuant to the stipulated agreement], suggesting that the Defendants are able to dispute this issue before this Court."   Id. at pp. 16-17 (emphasis omitted; referencing Docket 131 at pp. 16-17).   Mr. Wetch argues the R&R's analysis "violates the principles that these determinations [belong] to 'the court of first instance.' "   Id. at p. 17 (referencing Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995) ("It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.") (internal quotation marks and citations omitted).

The R&R recognized "[w]here an administrative agency has taken action in a matter, the aggrieved party must generally exhaust administrative remedies before appealing to the circuit court. . . . The exhaustion doctrine determines when a circuit court can review agency action."  (Docket 131 at p. 30) (emphasis omitted; internal citations omitted).  "Under primary jurisdiction, a court may defer to the agency for a ruling in order to obtain the benefit of the agency's expertise and experience, or to promote uniformity and consistency within the particular field of regulation."  Id. at pp. 30-31 (internal quotation marks and citation omitted).  When exhaustion of administrative remedies has not occurred, "federal courts may stay their hand or decline to accept jurisdiction over a bad faith claim while administrative actions are still pending under the 'primary jurisdiction' doctrine."  Id. at p. 30 (citing Lagler v. Zurich American Ins. Co., No. CIV 12-4037, 2012 WL 3264906, at *2 (D.S.D. Aug. 10, 2012)).

Plaintiff objects to the R&R's analysis that defendants, who acknowledged before the DOL that they were 100 percent response for the four items identified in Dr. Wojciehoski's IME report, now "seek to disavow this prior position on the basis of mistake, inadvertence or fraud."  (Docket 131 at p. 49).

While the R&R properly analyzed and applied the law, the magistrate judge failed to recommend the case be stayed and the defendants be required to return to the DOL and exhaust their administrative remedies under SDCL

§ 62-7-33.  <u>Lagler</u>, 2012 WL 3264906, at *2.   Plaintiff endorsed this interim

remedial plan in his objections.   (Docket 137 at p. 15).

Plaintiff's fifth objection is sustained in part and overruled in part.

13.   <u>Plaintiff's eleventh objection contends the R&R misinterpreted and misapplied the January 28, 2016, Order</u>.

Mr. Wetch argues the R&R "errs by only considering the concluding

paragraphs of the DOL's decision, when considering Defendants' 'dispute'

about what the DOL ordered."   (Docket 137 at p. 28) (referencing Docket 131

pp. 12-13).   Because of the alleged misinterpretation of the January 2016

Order, Mr. Wetch asserts the R&R "misapplies the legal obligations of the

Defendants, which were effective even if not final."   <u>Id.</u> (emphasis omitted).

Defendants' response to plaintiff's objections argues the fact the R&R

"quotes only a selected portion of the January 28, 2016 Order does not mean

the magistrate judge did not read, consider, or understand the portions she

chose not to quote."   (Docket 144 at p. 28).   Defendants assert the R&R

accurately "summarizes the substance" of the order.   <u>Id.</u>

The analysis portion of the January 2016 Order contains the following:

> Under the settlement agreement, Claimant has a permanent and
> total disability. . . . Claimant's treating physician, Dr. Goodhope, has
> recommended a list of medical needs and prescriptions for Claimant
> that he believes are necessary to assist with issues that Claimant
> has with chronic neck pain and paralysis on the right side following
> his work injury suffered in 1991.   Some of the recommended
> medical needs are a TENS unit, a wheelchair, cane, crutches, an
> appropriate vehicle with hand controls, physical therapy and
> hydrotherapy, future care for shoulder pain and deterioration, and
> supervised living accommodations.   Employer and Insurer, prior to

the settlement agreement, also knew from the IME report in 1993 that Claimant would need home care, services, and continuing home exercise therapy. . . .

[I]t is well-settled in S.D. work comp law, that the Employer and Insurer have the duty to prove that a recommended treatment is not related to the injury, if the treating physician has recommended it to the Claimant. . . . Employer and Insurer have not argued there is a change in employee's physical condition pursuant to SDCL § 62-7-33 and have not requested that the settlement be reopened.

(Docket 44-16 at p. 5).   Based on the legal analysis contained in the order, the

DOL granted Mr. Wetch's motion for partial summary judgment.   Id. at p. 7.

Therefore, 1) The doctrine of res judicata bars Employer and Insurer from denying benefits regardless of the fact they procured an IME that stated Claimant's current condition and need for treatment is only 50% related to Claimants work-related injury.  Res Judicata applies to the settlement and all foreseen consequences as it is an Order of the Department, thus medical care determined to be reasonable and appropriate prior to the settlement agreement is compensable; 2) Employer and Insurer are responsible for paying 100% of the medical care and treatment approved by Dr. Wojciehoski; 3) Employer and Insurer are instructed to approve and pay for the medical necessities that Claimant's treating physician indicates are related to the work-related injury.  The question of what is "related" and what is not "related" may only be answered by the Claimant's treating physician or if the settlement is reopened due to change of condition. 4) Employer/Insurer are required to follow SDCL 62-7-33 and show a change in condition in order to end or diminish medical benefits.

Id. at pp. 7-8.

The R&R summarized three principle directives of the January 2016

Order but did not mention the directive of subsection 1 of the order.   Compare

Docket 131 at p. 13 and 44-16 at p. 7.   The magistrate judge acknowledged

the DOL's finding of res judicata in the first motion for summary judgment.

(Docket 131 at p. 49).   The magistrate judge's refusal to apply res judicata to the January 2016 order is not adversely affected by the failure to mention subsection 1 of the order.

Plaintiff's eleventh objection is overruled.

14.   <u>Plaintiff's seventh objection asserts the R&R errs by failing to consider the preclusive effect of res judicata and collateral estoppel as they relate to the Order of Contempt.</u>

Mr. Wetch argues the R&R erred by failing to apply res judicata to the order of contempt entered by the state circuit court on December 29, 2016.[24] (Docket 137 at p. 22) (referencing Docket 44-19).   Plaintiff contends "[t]he Order of Contempt establishes both the first and second prong of bad faith, as a matter of law and established fact.   Defendants are unable to contradict the findings and conclusions of this unappealed, final, decision."   <u>Id.</u> at pp. 22-23.

Defendants submit the R&R "fully considered this issue and concluded 'the 2016 circuit court judgment does not partake of the full panoply of "finality" usually accorded final judgments and it does not compel the conclusion that defendants acted without a reasonable basis[.]' "   (Docket 144 at p. 22) (citing Docket 131 at 43).   Defendants suggest plaintiff "did not appeal the circuit court's order finding the Department had continuing

---

[24]The order of contempt was based on an order to show cause for contempt dated October 7, 2016, and a November 14, 2016, hearing.   <u>See</u> Docket 44-19 at p. 2.

jurisdiction (and thus there was no final order) regarding 'other treatments and prescriptions' beyond the four items[.]"  Id. at p. 23 (citing Docket 44-19).

The magistrate judge considered the December 2016 order of contempt only to summarize the court's findings and then concluded for purposes of the judicial estoppel analysis that the defendants' positions in the state litigation and this litigation were not inconsistent.  See Docket 131 at pp. 15-16 & 51-52.  The magistrate judge found "Mr. Wetch has failed to establish all the elements necessary for this court to exercise its discretion and apply the doctrine of judicial estoppel against defendants."  Id. at p. 52.

What the magistrate judge failed to recognize is defendants' argument—that they should not be held in contempt because the DOL proceedings are ongoing and are not final—was rejected by the state court.   The order of contempt made the following findings:

> On April 5, 2012, and February 10, 2014, the Defendant Insurer denied 50% of its obligations for the four following treatments . . . chose to reduce or alter its obligation to Plaintiff/Claimant for these four treatments . . . paid 50% of [those] expenses . . . and . . . Since at least November 6, 2015, the Defendant Insurer . . . has admitted that it is responsible for 100% of these four expenses . . . Defendant Insurer's reduction or alteration of 50% of these treatments, continuing failure to pay the remaining 50% . . . is willful and contumacious of this Court's . . . judgment [of August 1, 2016].

(Docket 44-19 ¶¶ 11-13 & 15-16).   Based on those findings, the state court held "Defendant Insurer is . . . in civil contempt of this court's Judgment of August 1, 2016 . . . and . . . [ordered] Defendant Insurer may purge contempt

by paying the remaining 50% balance of the expenses for the [four items] . . .
and 100% of the Soma medication expenses . . . ." Id. at p. 5 ¶¶ 1 & 2.

When the state court rejected defendants' theory, they had three options:
(1) comply with the contempt citation; (2) seek a stay pending resolution of the
DOL proceedings; or (3) appeal the adverse decision to the South Dakota
Supreme Court. SDCL § 15-26A-6. They did not retain the ability to attack
the impact of the order of contempt by taking a position in federal court
inconsistent with the prior judicial decision. This is a classic example of issue
preclusion. "Issue preclusion, also known as collateral estoppel, bars a point
that was actually and directly in issue in a former action and was judicially
passed upon and determined by a domestic court of competent jurisdiction."
Hayes, 853 N.W.2d at 882 (internal quotation marks, brackets and citations
omitted). See also New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)
("Issue preclusion generally refers to the effect of a prior judgment in
foreclosing successive litigation of an issue of fact or law actually litigated and
resolved in a valid court determination essential to the prior judgment, whether
or not the issue arises on the same or a different claim."). Defendants cannot
accomplish in this court what they failed to accomplish in an earlier, final
judicial ruling.

The court finds the R&R failed to properly analyze issue preclusion as
the doctrine applied to the order of contempt. The order of contempt is a prior
judgment which satisfied both elements of a bad faith cause of action.

52

Plaintiff's seventh objection to the R&R is sustained.

15. <u>Plaintiff's eighth objection asserts the R&R errs by failing to apply judicial estoppel to the Defendants' representations before the DOL on the fourth Motion for Partial Summary Judgment</u>.

Mr. Wetch argues the R&R discussed defendants' responses to plaintiff's first and third motions for partial summary judgment before the DOL but not the fourth motion for partial summary judgment. (Docket 137 at p. 23). Plaintiff submits defendants' response to the fourth motion was made five months after receiving Mr. Wetch's medical records in November 2017 concerning the 2010 fall. <u>Id.</u> In plaintiff's view "Defendants[] had the medical records for months before they admitted to the DOL that the care [addressed in the fourth motion] was compensable." <u>Id.</u> (emphasis omitted; referencing Docket 65 at p. 2 ¶ 7). Plaintiff notes in defendants' March 1, 2018, response filed with the DOL they stated among other things:

> Without prejudicing the right to contest future medical treatment and medical care pursuant to SDCL 62-7-33, Employer and Insurer have previously represented that Claimant will be provided the necessary and reasonable care as set forth on Form 485 [life care plan] . . . .

> Per Form 485, Claimant needs supervised living services with a live-in aid in a modified dwelling. Employer and Insurer have an obligation to implement and effectuate the necessary, reasonable and appropriate accommodations for Claimant, and Employer and Insurer will do so. . . .

> To a significant extent, the medical benefits to which Claimant is entitled have been provided. To the extent there are medical benefits to which Claimant is entitled but which have not yet been provided to Claimant, such benefits will be provided.

Id. (citing Docket 80-5 at pp. 1-3).   Mr. Wetch contends the DOL "accepted Defendants' admissions."   Id. (referencing Docket 44-20).[25]

Mr. Wetch argues "[t]he Defendants[] cannot be allowed to take an inconsistent position now, based on the suggestion that they should have taken a different position before the DOL in 2018, after they obtained [the 2010] medical records."   Id. at pp. 23-24 (emphasis omitted).   Mr. Wetch submits "[t]he danger of an inconsistent result exists because the jury might conclude that the DOL was wrong or that the DOL was misled by the admissions in 2018."   Id. at p. 24 (emphasis omitted; referencing Hayes, 853 N.W.2d at 883).   Plaintiff contends the R&R's "analysis is factually and legally defective because it fails to apply judicial estoppel to the arguments and admissions of the Defendants in response to the Fourth Motion for Partial Summary Judgment."   Id.

Defendants' response contends judicial estoppel should not apply to their 2018 submission to the DOL or the DOL's April 2018 order because defendants were "unaware Wetch had suffered the catastrophic fall in 2010[.]"   (Docket

---

[25]Following an April 18, 2018, hearing on Mr. Wetch's fourth motion for partial summary judgment, the DOL's order addressed defendants' representations.   "At the hearing, Employer/Insurer provided no explanation as to why it has delayed payments for necessary treatments to this point, only that it promised to pay outstanding medical bills at some unspecified date in the future.   The Department finds there is no dispute in this case and Claimant is entitled to partial summary judgment on this issue."   (Docket 44-20 at pp. 5-6).

144 at p. 23 n.23 (referencing <u>State v. St. Cloud</u>, 465 N.W.2d 177, 180 (S.D. 1991)).

The R&R addressed plaintiff's third motion for partial summary judgment before the DOL and agreed with defendants' argument. "There are significant facts which came to light after defendants' admission of liability for the four items such that judicial estoppel should not apply." (Docket 131 at p. 50).

The same logic applies to the court's analysis of Mr. Wetch's fourth motion for partial summary judgment before the DOL. Defendants' response to plaintiff's fourth motion for partial summary judgment may well have been the result of mistake or inadvertence. <u>St. Cloud</u>, 465 N.W.2d at 180. As with the earlier DOL rulings, this federal case should be stayed and defendants required to exhaust their administrative remedies under SDCL § 62-7-33. <u>Lagler</u>, 2012 WL 3264906, at *2.

Because of the ultimate decision in this order, the court does not mean to suggest the DOL must adopt defendants' argument regarding the physicians' opinions or the impact of the 2010 medical records. The DOL remains free to resolve the parties' arguments on remand.

Plaintiff's eighth objection to the R&R is overruled.

16. <u>Plaintiff's sixth objection asserts the R&R errs by failing to distinguish between the [DOL's] orders' "effectiveness," "appealability," and "finality."</u>

The R&R declined to apply *res judicata* as a mechanism to grant plaintiff's partial summary judgment motion. (Docket 131 at p. 43). Mr.

Wetch argues the R&R is in error because "decisions of the DOL are effective ten days after the Defendants received them, even if the Defendants' disagreed with them." (Docket 137 at p. 17) (referencing SDCL § 1-26-32). Because defendants did not move for "a stay of any of the underlying decisions of the DOL," Mr. Wetch contends those decisions "are effective, whether they are final or not." Id. (emphasis omitted). Plaintiff submits the rationale of the R&R "impl[ies] that Defendants did not need to obey the orders, either objectively or subjectively, because Defendants hope to challenge them in the future."[26] Id. at p. 18.

One of the principle reasons the magistrate judge concluded res judicata should not apply to the decisions of the DOL is because "it is obvious from the DOL's May 7, 2018, decision that the DOL continues to exercise jurisdiction over Mr. Wetch's petition and that the petition has not been finally disposed of by the DOL." (Docket 131 at pp. 38-39) (referencing Docket 44-20 at p. 8). In its May 2018[27] order the DOL declared:

> Employer/Insurer has provided no justification for failing to comply with its obligations under the 1994 agreement. However, the

_____

[26]Mr. Wetch objects to the R&R considering the opinions of two of defendants' expert witnesses. (Docket 137 at p. 19). Defendants assert its expert witnesses never " 'instructed' it to 'disobey a court order' . . . [and defendants have] not even asserted advice of counsel as an affirmative defense." (Docket 144 at p. 21 n.11) (brackets omitted). The R&R rejected the experts' conclusions in resolving the statute of limitations issue. (Docket 131 at pp. 52-55). Plaintiff's collateral objection to the R&R is overruled.

[27]The parties agree 2015 on Docket 44-20 is a typographical error and the correct year is 2018.

Department does not have the authority to compel Employer/Insurer to abide by the terms of the agreement. The Department's jurisdiction over this case is based upon Claimant's 2014 petition to enforce the agreement. Though, it is unclear on what basis the Department could reassert jurisdiction from the 1994 agreement short of a petition alleging a change in condition under SDCL 62-7-33. Nonetheless, should the Claimant wish to dismiss his petition, the Department will relinquish jurisdiction so that the circuit court may assume it. Claimant's Motion for Partial Summary Judgment is GRANTED. Claimant's motion for sanctions is DENIED. This letter shall constitute the order of the department on this matter.

(Docket 44-20 at p. 8). The court agrees with the conclusion of the R&R that "the language of the DOL's last order in Mr. Wetch's case makes clear that it is not a final order and that his petition remains pending. . . . [T]he DOL's order upon which Mr. Wetch wishes to base his claim of res judicata is not a final order." (Docket 131 at pp. 41-42). In arriving at this decision, the court wants to make clear that it in no way finds the defendants are free ignore the orders of the DOL. SDCL §§ 1-26-30, 1-26-32 and <u>Jundt</u>, <u>supra</u>.

Plaintiff's sixth objection to the R&R is overruled.

17. <u>Plaintiff's ninth objection claims the R&R errs by failing to apply res judicata, collateral estoppel, or judicial estoppel to the decisions and payments of the Subsequent Injury Fund</u>.

Mr. Wetch argues the R&R "entirely fails to consider the preclusive effects of res judicata, collateral estoppel, and judicial estoppel . . . in light of the Defendants' proceedings before the Subsequent Injury Fund ["SIF"] in the 1990's or with respect to the 2018 requests for reimbursement for payments made from 2011 to 2018." (Docket 137 at p. 24). Plaintiff contends that "[i]f

57

the Defendants believed in 2018 that Mr. Wetch's condition were [sic] not compensable, they failed to make that disclosure to the SIF." Id. at p. 25. Instead, he argues "Defendants . . . received full reimbursement from the SIF." Id. (referencing Docket 112-3).

Defendants' response asserts plaintiff "failed to present this issue to the magistrate judge . . . and seeks to rely on new evidence in support of this claim now." (Docket 144 at p. 26) (referencing Dockets 60 & 111; other reference omitted). Defendants argue "[t]he court should refuse to consider Wetch's new argument regarding the subsequent injury fund." Id. "Even if the court were to consider Wetch's new argument," defendants assert their "alleged 'representations' to the subsequent injury fund 'in 2018' are irrelevant to the questions of whether it acted in bad faith in 2012." Id. Defendants contend "[t]he 2018 subsequent injury fund claim was made after [defendants] had already paid benefits to Wetch based on Wetch's representations the benefits were compensable. Wetch is not entitled to apply a negative inference to [defendants] created by his own action." Id. (emphasis omitted).

Defendants' first response to plaintiff's objection is without merit. In his reply brief, Mr. Wetch argued:

> Recently, Defendants received a 100% reimbursement from the SIF Fund for the payments they have made for medical benefits to Wetch for medical care from May 16, 2011 to May 3, 2018. . . . Defendants' arguments that medical care was not compensable during this period contradicts their representations before the SIF Fund, when requesting reimbursement for these payments. The SIF fund accepted the Defendants representations. Therefore, Defendants'

> arguments are barred by judicial estoppel. . . . Defendants are seeking to pervert the judicial machinery through contradictory representations to this Court and the SIF Fund. The Defendants cannot claim that the reimbursed payments were not compensable in the first place.

(Docket 111 at p. 13 n.6).

Defendants' second response is similarly without merit. Defendants did not pay benefits to Mr. Wetch based on his representations but rather on defendants' evaluation of the evidence and conclusion there was no basis for challenge under whatever statutory plan they felt was applicable to the original submitted claims. Defendants applied to the SIF for reimbursement of claims paid during the period 2011 through 2018. (Docket 112-2). According to documentation from the DOL, Division of Insurance, defendants were reimbursed $143,975.16 from the SIF for claims in Mr. Wetch's case. (Docket 112 at p. 3).

Mr. Wetch is not seeking to assert res judicata based on his conduct but rather based on defendants' decision to seek reimbursement from the SIF for payments made on plaintiff's medical claims. Defendants cannot have it both ways. They may not now challenge Mr. Wetch's right to benefits for past medical care claims and yet retain the reimbursement from the SIF for those same claims. Mr. Wetch is not claiming bad faith on defendants' activities with the SIF, but rather he is asking the court to prohibit defendants from taking a position in this federal litigation which is contrary to the position they asserted successfully with the SIF.

The R&R did not mention the SIF or defendants' reimbursements from the SIF. While judicial estoppel does not apply to defendants' conduct, res judicata under the concept of issue preclusion or collateral estoppel does.

Plaintiff's ninth objection is sustained.

18. <u>Plaintiff's twelfth objection asserts the R&R fails to evaluate the defendants' denials of benefits given the facts and law available to the Defendants "at the time" of the denial, delay, or failure to process or pay.</u>

Mr. Wetch argues the R&R "fails to apply the law of bad faith that the denial and determination must be made by the facts and law available to the Defendants 'at the time' of the denial." (Docket 137 at p. 28) (referencing Docket 131 at pp. 49-50 & 58-60). Plaintiff asserts information later acquired by the defendants "is immaterial to the bad faith analysis, particularly in light of Defendants' admissions to the DOL and SIF in 2018." <u>Id.</u> (emphasis omitted). Mr. Wetch argues "[s]ummary judgment should have been entered on this basis, not withheld because of after acquired evidence which only the DOL can hear and address." <u>Id.</u> (referencing <u>Celotex Corp.</u>, 514 U.S. 300). Plaintiff contends the R&R excused "Defendants' actions, based on the Defendants' stated desire to appeal, which they have not pursued, and arguments regarding a 2010 fall, which for whatever reason, the Defendants claim not to have had at that time." <u>Id.</u> at pp. 28-29 (referencing Docket 131 at p. 60). Mr. Wetch submits the court "cannot hear these arguments until

the Defendants exhaust their administrative remedies and obtain a ruling in their favor." Id. at p. 29 (emphasis omitted).

Mr. Wetch argues the R&R "errs by failing to apply the 'mend the hold' doctrine. The Defendants[] are now trying to change the basis for the denial, from Dr. Wojciehoski's opinions regarding cerebral palsy, to new arguments regarding a 2010 fall, in violation of the 'mend the hold' doctrine." Id. (emphasis omitted; referencing Pfeifer v. Sheehan, 216 N.W. 349, 350 (1927); Shawver v. Ewing, 1 F.2d 423, 426 (8th Cir. 1924); other references omitted).

Defendants argue "[n]othing alleged in Wetch's objections changes the uncertainty that shrouds the potential effect of the April 2010 fall on Wetch's then current condition or of the doctors' opinions of that condition." (Docket 144 at p. 29). Defendants submit the R&R "appropriately rejects Wetch's invitation to ignore the potential impact of the April 2010 fall; the court should similarly reject Wetch's objection on the same basis." Id.

The expressed reason the magistrate judge considered defendants' subsequently learned information about the 2010 fall was to determine whether it was appropriate to invoke the res judicata doctrine to grant partial summary judgment in plaintiff's favor. (Docket 131 at p. 50).

Mr. Wetch is correct that "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." Celotex Corp., 514 U.S. at 313 (internal

quotation marks and brackets omitted). The court intends to respect the decisions of the DOL but until the questions raised by defendants are resolved by the DOL, the court does not intend to invoke res judicata to bind defendants to those prior administrative admissions and decisions. It will be for the DOL to determine whether defendants are attempting to "mend [their] hold." Pfeifer, 216 N.W. at 350.

Plaintiff's twelfth objection is overruled.

19. Plaintiff's fifteenth objection asserts the R&R fails to consider the legal implications of Defendants' Motion to Dismiss the proceedings before the Circuit Court.

Mr. Wetch argues that after briefing was complete, but before issuance of the R&R, defendants "sought and obtained a dismissal of the second order to show cause before the Circuit Court." (Docket 137 at p. 32) (referencing Docket 124-2). Plaintiff asserts "[i]n seeking this dismissal, the Defendants represented [to the Circuit Court] that they would provide additional benefits." Id. (referencing Docket 122-3). Like in Hayes, Mr. Wetch contends "the Defendants should be judicially estopped from contradicting their admissions to the Circuit Court regarding compensability, which formed a basis for the dismissal." Id. (referencing Hayes, 853 N.W.2d at 882-84). Because of their representations before the Circuit Court "in order to obtain the relief they sought," Mr. Wetch argues defendants' "counter-arguments to the Motion for Summary Judgment, regarding a 2010 injury or other factual bases for

62

dispute, should be estopped[.]"  Id.  Defendants' response to plaintiff's

objections does not address plaintiff's fifteenth objection.   (Docket 144).

In fairness to the magistrate judge, the documents relating to this

objection were not specifically identified in CM/ECF as associated with

plaintiff's motion for partial summary judgment.   Instead, the documents were

attached to the parties' briefing relating to defendants' motion seeking leave to

supplement the record with authenticated expert reports.   See Dockets 113,

119 & 121-124.   The magistrate judge specifically referenced one of

defendants' experts in the R&R.   (Docket 131 at p. 52).   Two days after filing

the R&R, the magistrate judge entered an order granting defendants' motion to

supplement the record.   (Docket 132).   Against this background, the court

believes the magistrate judge should have considered the state circuit court

filings, as well as a March 2019 proceeding before the DOL, both of which were

in the record.

Defendants asked the DOL to reconsider its May 7, 2018, decision

granting Wetch's fourth motion for partial summary judgment.   (Dockets 121-

3 at p. 4).[28]   Among the grounds asserted for defendants' motion for

reconsideration was Mr. Wetch's alleged failure to disclose the 2010 fall.   Id. at

p. 6.

---

[28]Defendants filed the DOL decision and then filed the same order eight
days later.   Compare Docket 121-3 and 124-1.

On March 7, 2019, the DOL issued a letter decision and order denying defendants' motion for reconsideration or, in the alternative, for relief pursuant to SDCL 15-6-60(b).  Id. at pp. 4-5.  Because defendants paid all of Mr. Wetch's benefits claims, the DOL denied defendants' motion for reconsideration as moot.  Id.  DOL reminded defendants if Mr. Wetch's assertions for benefits were fraudulent they should "request a formal investigation under SDCL 62-4-47[,]" and if his claims for future benefits "are inaccurate [they] may allege a change in condition under SDCL 62-7-33."  Id. at p. 6.  As of March 2019, defendants had not taken either avenue of action.  Id.

Mr. Wetch filed a second motion to show cause for contempt in state court.  See Docket 122-2 ¶ 8.  Both parties filed documents with the state circuit court between February and April 2019.  See Dockets 122-1 through 3 and 124-2.  In their response, defendants represented to the state court they had paid for the two items which were the subject of the second show cause proceedings, namely, Mr. Wetch's transportation and dwelling modifications claims.  (Docket 122-1 at p. 3).  During a March 25, 2019, hearing, defendants' counsel represented to the court "Mr. Wetch needs assistance and Crum & Forster has indicated it plans to provide that assistance."  (Docket 122-3 at p. 9:11-13).  Defense counsel further represented that "Crum & Forster has committed to doing what's been recommended."  Id. at p. 10:16-17.  Based on those representations the state court judge orally granted defendants' motion to dismiss.  Id. at p.10:24-25.  On April 4, 2019, the state

court entered an order granting the defendants' motion to dismiss Mr. Wetch's second motion to show cause for contempt.   (Docket 124-2).

        Both of these post-briefing actions convince the court defendants have been avoiding returning to the DOL and seeking to reopen Mr. Wetch's earlier claims, which are the basis of his bad faith cause of action, either as fraudulent (for failing to disclose the 2010 fall) under § 62-4-47 or as neither reasonable nor necessary medical care (because of the intervening 2010 fall) under § 62-7-33.   Instead, defendants continue to pay for Mr. Wetch's care, thereby keeping themselves in good standing with the DOL and the state circuit court, but using the lack of finality before the DOL as a basis for resisting plaintiff's bad faith claim.   Defendants are barred from "pervert[ing] the judicial machinery," by arguing positions inconsistent with the DOL, the state court and this court.   Hayes, 853 N.W.2d at 882-84.

        Plaintiff's fifteenth objection is granted in part and denied in part.

**FINALITY OF THE DOL CASE**

        It is true that in a workers' compensation setting "one of the elements of the bad faith claim is a final judgment in South Dakota worker's compensation proceedings in favor of the claimant."   Harms v. Cigna Ins. Cos., 421 F. Supp. 2d 1225, 1229 (D.S.D. 2006) (referencing Zuke v. Presentation Sisters, Inc., 589 N.W.2d 925, 930 (S.D. 1999).   "Thus, the claim accrues upon entry of 'final judgment from the department of labor,' including all appeals, in the worker's compensation proceedings."   Id. (referencing Brennan v. Western

65

National Mutual Ins. Co., 125 F. Supp. 2d 1152, 1155 (D.S.D. 2001).   See also Lagler, 2012 WL 3264906, at *3 ("Only after the administrative procedures established under the workers' compensation statutes, including appellate procedures, have produced a decision on Lagler's underlying entitlement to benefits will the Court have an administrative decision it can use in adjudicating Lagler's bad faith claims.").

In order to avoid the possibility of any unfair disadvantage to Mr. Wetch, the court will stay the case until defendants obtain a final decision on Mr. Wetch's benefits from the DOL and state courts have exercised their powers of appellate review.   In the event Mr. Wetch obtains a favorable decision, the court will entertain a motion to lift the stay and proceed with plaintiff's case.

## ORDER

For the reasons given above, it is

ORDERED that defendants' objections (Docket 136) to the report and recommendation are sustained in part and overruled in part.

IT IS FURTHER ORDERED that plaintiffs' objections (Docket 137) to the report and recommendation are sustained in part and overruled in part.

IT IS FURTHER ORDERED that the report and recommendation (Docket 131) is adopted in part, rejected in part and modified in part consistent with this order.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Docket 59) is denied.

IT IS FURTHER ORDERED that this case is stayed until defendants have obtained a final determination from the South Dakota Department of Labor, Division of Labor and Management, and the courts of the State of South Dakota exercising their powers of appellate review of workers' compensation cases.

IT IS FURTHER ORDERED that defendants shall commence proceedings before the South Dakota Department of Labor, Division of Labor and Management, as required by this order on or before **March 27, 2020**.

Dated February 25, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE